**FILED**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUN - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Antoine Jones                    )
241-912                          )
1901 D St SE                     )
WDC 20003                        )

(Enter your full name, prison number
and address)

**JURY ACTION**

v.

Ms Rachel Lieber                 )
US Attorney, D.C.                )
555 Fourth St NW suite 300       )
WDC 20530                        )

(Enter the full name and address(es),
if known, of defendant(s) in this
action)

Case: 1:07-cv-01027
Assigned To : Huvelle, Ellen S.
Assign. Date : 6/8/2007
Description: Pro Se Gen. Civil

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

### Instructions for filing a Complaint by a Prisoner
### Under the Civil Rights Act 42 U.S.C. §1983

This packet contains one copy of a complaint form and one copy of an application to proceed *in forma pauperis*. To start an action, you must file an original and one copy of this complaint form.

Your complaint must be clearly handwritten or typewritten and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space to answer a question, you may use another blank page.

Your complaint can be brought in this Court only if one or more of the named defendants is located within the District of Columbia. Further, you must file a separate complaint for each claim that you have unless they are related to the same incident or problem. The law requires that you state only facts in your complaint.

You must supply a certified copy of your prison trust account, pursuant to the provisions of 28 U.S.C. §1915, effective April 26, 1996. The filing fee is $150.00.. If insufficient funds exist in your prison account at the time of filing your complaint, the court must assess, and when funds exist, collect an initial filing fee equal to 20 percent of the greater of:

    (1)    the average monthly deposits to your prison account, or
    (2)    the average monthly balance of your prison account for the prior six-month period.

**RECEIVED**

APR 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Thereafter, you are required to make monthly payments of 20% of the preceding month's income. The agency having custody over you must forward payments from your account to the clerk of the court each time the amount in the account exceeds $10.00 until the filing fees are paid.

Therefore, before an assessment can be made regarding your ability to pay, you **must** submit a certified copy of your prison account for the prior six-month period.

When this form is completed, mail it and the copies to the Clerk of United States District Court for the District of Columbia, 333 Constitution Ave., NW, Washington, D.C. 20001.

## I. SUCCESSIVE CLAIMS

Pursuant to the Prison Litigation Reform Act of 1995, unless a prisoner claims to be in "imminent danger of serious physical injury," he or she may not file a civil action or pursue a civil appeal *in forma pauperis* "if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or they failed to state a claim upon which relief could be granted."

## II. PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action?     Yes ( )        No (X)

B. Have you begun other lawsuits in state or federal court relating to your imprisonment? Yes ( )     No ( )

C. If your answer to A or B is Yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit.

   Plaintiffs:____N / A_____

   Defendants:_____

2. Court (if federal court, name the district; if state court, name the county)

   _____

3. Docket number_____N / A_____

4. Name of judge to whom case was assigned:_____N / A_____

5.  Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?) _N I A_____

6.  Approximate date of filing lawsuit: _N I A_____

7.  Approximate date of disposition: _N I A_____

## III.  PLACE OF CONFINEMENT

Central Detention Facility, (D.C. Jail) 1901
D St SE, WDC 20003

A.  Is there a prisoner grievance procedure in this institution?      Yes ( )      No ( )
    If your answer is Yes, go to Question III B.  If your answer is No, skip Question III B,C and D and go to Question III E.

B.  Did you present the facts relating to your complaint in the prisoner grievance procedure?
    Yes (X)      No ( )

C.  If your answer is Yes to Question III B;

    1.  To whom and when did you complain? _C.D.F. Warden-Dennis Harrison_
        _Deputy Director, Director, Judse Ellen Huvelle._

    2.  Did you complain in writing?  (Furnish copy of the complaint you made, if you have one.)  Yes (X)      No ( )

    3.  What, if any, response did you receive?  (Furnish copy of response, if in writing.) _See, Attachment in this package._

    4.  What happened as a result of your complaint? _I proceeded from the_
        _Warden, to the Deputy Director, the Director to the_
        _Mayor office._

D.  If your answer is No to Question III B, explain why not.  _N I A_____

E.  If there is no prison grievance procedure in the institution, did you complain to prison authorities?      Yes ( )      No ( )    NAS

F.  If your answer is Yes to Question III E;    N I A

1. To whom and when did you complain?  *N/A*

2. Did you complain in writing? (Furnish copy of the complaint you made, if you have one.)  *N/A*

3. What, if any, response did you receive? (Furnish copy of response if in writing)  *N/A*

4. What happened as a result of your complaint?  *N/A*

## IV.  PARTIES

In item A below, place your name and prison number in the first blank and your present address in the second blank. Do the same for additional plaintiffs, if any.

A.  Name of Plaintiff: *Antoine Jones #241-912*
Address: *1901 D St SE WDC 20003*

In item B below, place the full name of the defendant(s) in the first blank, their official position in the second blank, their place of employment in the third blank and their address in the fourth blank. Do the same for additional defendants, if any.

B.  Defendant: *MRS RACHEL Lieber* is employed as *Assistant U.S. Attorney* at *District of Columbia*
Address: *555 Fourth St NW, Suite 300, Washington D.C. 20530*

Defendant: *Dective NORMA Horne* is employed as *Dective, MPD* at *SAFe street TASK Force*
Address: *Metropolitan Police Department*

Defendant: *MR DENNIS HARRISON* is employed as *Acting WARDEN* at *Central Detention Facility*
Address: *1901 D St SE Washington D.C. 20003*

Defendant: _____ is employed
as _____ at _____
Address: _____

## V.   STATEMENT OF CLAIM

State here as briefly as possible the facts of your case.  Describe how each defendant is involved.  Include
the names of other persons involved, dates and places.  If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph.  Attach extra sheets if necessary. ① Dective
NORMA HORNE, Deceive, misled Judge ALAN KAY, By Fabricating
the PRobable cause in the Affidavit for search warrant for cell
search, Nov 22 2005... ② MS RACHEL Lieber, Gave the ORDER ON
NOV 23 2005 to place me in S-1, MAXimum security,
under Total seperation, she also told them to take my mail
Privilege, PHone Privilege, No social visits, This was without
the court order from the Judge... ③ MR DENNIS HARRISON WAS
the Acting WARDEN, At the time when the DC JAil Administration
Place me in S-1. DC Jail Administration upmy security level
from a minimum to maximum security, And subjected me to
segregation with out A Proper Hearing, And denies me reEntry to
Prison population without A court order from the Judge

## VI.   RELIEF

State briefly exactly what you want the Court to do for you.  I Am Asking for A Jury
Trial, So I can show and Prove my Accusation towards
each defendant. I Am Also Requesting Monetary
Damages and Punitive Damages.

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED
BEFORE ME THIS _____ DAY OF _____
_____
NOTARY PUBLIC FOR THE DISTRICT OF COLUMBIA
MY COMMISSION EXPIRES JULY 31ST 2009
My Commission
Expires 7/31/08

Signed this _____ day of ___April___, 2007

_____
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

4/10/07
(Date)

_____
(Signature of Plaintiff)

COMPLAINT:     I am filing this complaint because I, Antoine Jones, have been placed in segregation under Total Separation (T.S.) status at the District of Columbia Department of Corrections (DCDC) Jail. On December 2, 2005, the prosecutor(s) displayed prejudice behavior and acted along with the D.C. Department of Correction Administration as they together discriminated against me and violated my 1st, 8th, and 14th Constitutional Amendment rights, prison rights, as well as my pretrial detainee due process rights. The Prosecutor(s) telephoned the DCDC Jail and verbally told the Administration to remove me from general population and place me in segregation under Total Separation (T.S.) Status. The prosecutor(s) also demanded that I not be allowed social visits, telephone calls and that my mail be withheld from me.

On December 21, 2005, my son (Antoine Jones, Jr.) Came to visit me but was turned away and told I could not have any social visits. On January 11, 2006, my sister (Deborah Jones) came to visit me but was turned away and told I could not have any social visits. On January 18, 2006, my wife (Deniece Jones) came to visit me but was turned away and told I could not have any social visits. My wife asked the visiting hall officer to provide her with a copy of documentation showing why I could not have a social visit and she was told it was an order from the court but she could not have a copy of the order. She was told to call the warden. My brother (Tyrone Jones) has called DCDC Jail weekly and demanded to be told why I am in T.S. and why I am not allowed to have social visits. He has been told that the courts sent an order to the Jail Administration taking away all telephone call, social visits and incoming mail privileges.

I am a minimum security pretrial detainee with no background of violence. I have been subjected to and placed in a maximum security segregated environment around maximum security inmates. I fear for my life because I am being discriminated against, punished, violated, humiliated and degraded and I have not been provided any documentation to state why I am being subjected to this mistreatment.

ANTOINE JONES - PAGE 1

CONSTITUTIONAL LAW:     Inmate must receive notice, memo or statement of charges against him, opportunity to present his view, either in writing or in person to prison officials, and review by decision maker of charges and available evidence before being deprived of liberty or due process USCA Amendment 14.

I should have the right to call witnesses and face my accuser. I have been denied both a 60-day and 90-day review with the Unit Housing Board to update my status, voice my concerns, complaints, questions, requests and my fears. I have spoken with Associate Warden Dubois, Acting Associate Warden, Major Waldren, Captain Tyler, Lieutenant Diaz, Unit Lieutenant in Charge of S-1 Unit, Lt. Brinson on numerous occasions, Sargent Garner, Sargent Dent in charge of the Unit Housing Board. I have given complaint forms and request forms to Case Manager Simpson, Case Manager Hilcrest, Case Manager Miller, and Head of Case Management Ms. Teamoney on numerous occasions requesting an explanation and documentation showing why I have been placed in segregation under Total Separation (T.S.) Status and why all of my rights and my right to due process are being denied. Ms. Simpson, Lt. Brinson, and Sgt. Garner replied verbally that they couldn't document it on paper or show me documentation on paper but that it was a "court order" which came from the prosecutor.

COMPLAINT #1 - <u>Access to Court</u>:

During the time I have been held in segregation under T.S. Status I have been deprived of my right to properly prepare my defense for my criminal case, and therefore, deprived of the right to a fair trial. On February 23, 2006, I attempted to call my attorney but I was put out of the Unit Office and denied the right to a legal phone call by Case Manager Reece. This incident was witnessed by C.O. Root and numerous of inmates watching and listening. Being housed in Segregation S-1 Unit, I have had no access to a mini-Library in unit, no access to writing materials, no access to a typewriter, no access to law books to research or gather legal case information, and no access to a copy machine.

On January 30, 2006, I gave important Legal Material to Case Manager Simpson to be photocopied for my attorney. As of today (March 22, 2006) I have not received the original materials nor the copies back. I have not been allowed proper access to the Law Library nor adequate assistance from the administration or the Law

ANTOINE JONES - PAGE 2

Library Clerk trained in law to provide inmates with help or assistance with questions, concerns and requested cases. The Law Clerk does not come in contact or communicate verbally with the inmates or detainees housed in Segregation S-1 Unit at all. The Law Library Clerk, Ms. Thomas does not come on this particular tier to respond to any questions, complaints or concerns. It has taken her two, three weeks, or sometimes over a month to respond to my requests for legal information.

Further, being in S-1 Segregation with my rights to due process stripped, I have no proper means to communicate with my attorney, investigator, or witnesses and no ability to properly prepare an effective defense.

In conclusion, placing me in Segregation under Total Separation status is a clear violation of my 8th and 14th Constitutional Amendment rights.

COMPLAINT #2 - <u>Access to Religious Services, Religious Programs, Religious Reading Materials:</u> Since being in S-1 Segregation under T.S. Status, I have been denied my right to freely exercise my religion, to attend bible study, to attend worship services in the Chapel, access to a bible or religious reading materials, communication and inspiration from a Chaplain, minister from the community as well as contact with any religious service personnel. The Latino detainees have been given access to Spanish speaking religious personnel and Spanish religious reading materials. My complaint here therefore being twofold, first the denial of access to religious activities and materials; and second, discrimination against me because other detainees were allowed access and were treated differently than I was treated.

In conclusion, this is discrimination and a violation of my 1st Constitutional Amendment which affords me access to any religious programs or religious reading materials preventing me to strengthen my faith, provide me with inspiration and spiritual guidance and the opportunity to serve my God Almighty.

COMPLAINT #3 - <u>Denial of my Due Process</u>: Being held in S-1 Unit Segregation, under Total Separation Status, the Prosecutor and the DCDC Administration conspired and stripped me of my pretrial detainee due process privileges: (1) telephone privilege, (2) social visit privilege, and (3) mail privilege. The absence of my due process privileges caused me to lose ties with my wife, my son, my family and business associates. In addition, I was also denied legal telephone call to my lawyer. The loss of ties and the non communication with loved ones caused me and my loved

ANTOINE JONES - PAGE 3

ones to constantly worry, caused nervousness in my stomach, caused constant diarrhea, mental and emotional stress, constant headaches, and when I heard my wife was in danger of hypertension and my son was too worried and too stressed to complete his first semester of college, this caused me to worry more and become more stressed out physically, emotionally and mentally.

On December 19, 2005, I had to be transported to court for a pre-trial hearing. I was cuffed, chained and shackled and taken downstairs and placed in a holding cage at approximately 4:30 a.m. (The holding cage has no bench to sit on, so consequently I have to stand or sit on the cement floor the entire time I am in the cage.) At approximately 7:15 a.m.other inmates who were to be transported to court were brought downstairs and placed in a separate cell. All of the other inmates were transported to the courthouse at approximately 7:45 a.m., but the Marshalls told me they would come back to get me after they dropped off the other inmates. The Marshalls never came back to get me and one of the C.O.s from the jail had to transport me to the courthouse after 12:00 noon which caused me to arrive late for my court appearance. On March 17, 2006, the Marshalls transported the inmates back to the jail after the court appearance however they did not return to transport me back to the jail. A C.O. from the jail had to come to the courthouse and transport me back to the jail. On another occasion (March 24, 2006) the Marshall took the other inmates to the courthouse and did not come back to transport me to the courthouse until four hours later. These are clear examples of discrimination and an effort to humiliate and degrade me as a human being.

In conclusion, the Prosecutorial interference with the defendant's access to witness can require reversal because it denied the defendant the right to a fair trial. The improper procedure of denying me mail, intercepting my mail, copying and reading my mail without a warrant or violating and spying on my case is illegal and a violation against my prison rights and my constitutional rights. By me not being able to communicate with my wife, my family, and my business associates has cost me monetary damages from my business, physical and emotional and mental stress. My 1st, 8th, and 14th Amendment rights have been violated. I have been a victim of discrimination and prejudices from the Prosecutor and the DCDC Jail Administration.

COMPLAINT #4 - <u>Sanitation & Health Hazard Risk</u>: Being housed in S-1 Unit Segregation, I am subjected to a health hazard, to breathing, smelling and exposure to human feces and human urination in the air. The presence and the permanent smell of human feces on the bars and the walls caused me to

ANTOINE JONES - PAGE 4

have constant migraine headaches. The cell was filthy when I was placed in it. I constantly requested and was constantly denied sanitation and cleaning supplies, including cleaning rags, toilet brush and disinfectants. The only cleaning utensils afforded me were a mop which was soiled with human feces and urine and a broom which was soiled with human feces and urine as well.

The cell is riddled with food stains on the walls, feces stains, stains from dead bugs and blood from bugs and insects, globs of spit, and some substance which resembles human mucus. The cell is infested with rodents and rodent droppings. I have had to chase mice out of my cell on numerous occasions, including coming out of the air vent, running across the table in the cell, and one jumped from under my legal papers on the table and jumped on me while I was attempting to organize my papers and clean the cell.

On March 25, 2006, during the midnight shift in Cell #1 (observation cell) the inmate smeared urine and feces on the walls and floors. Sgt. Garner and Lt. Henry removed the inmate. The entire unit was still subjected to the smell of feces and urine for hours before the cleaning detail came to clean the cell. On another occasion a C.O. called for a cell door to be opened and the responding C.O. opened the wrong door. The inmate ran out of his cell and down the hall spraying urine and feces into all the cells. The constant throwing and spraying of human urine and feces throughout the S-1 Unit is a huge health risk to us all and the nonchalant attitude taken towards these acts only contributes to the health hazard conditions in the unit.

The S-1 Unit is the only unit in the entire jail that keeps bright lights on 24 hours a day everyday. The bright lights make it very difficult, if not impossible, to get sleep through the night. The temperature in the cell is unbearably cold. The unbearably cold temperatures has caused me to suffer severe sleep disorder, excruciating backaches, ear aches and neck pain, constant numbness of my fingers, elbows, knees and toes, tendinitis, arthritis, and at times the pain and agony is so severe that I cannot write, read or study but resort to taking medication and getting under multiple covers and trying to sleep through the suffering. The only medication the medical officer prescribes is acetaminophen tablets or pseudoephedrine tablets for relief from colds, flu, allergies, pain or aches of any kind. As a result of the filth and unsanitary showers and cells within the unit, I have also acquired the following medical conditions: athlete's foot, body fungus, and dandruff.

ANTOINE JONES - PAGE 5

In S-1 Unit Segregation, we do not have access to proper laundry facilities. The personal laundry goes sometimes weeks before laundry services are made available to us. When laundry pick-up service does come through it is usually after midnight and our laundry, including sheets and towels, is not returned until after 5 a.m. which means we go through the night in an unbearably cold cell without linen.

In conclusion, being housed in S-1 Unit caused me great health risks and distress both present and future. I have already acquired athlete's foot, body fungus, and dandruff. Along with living and sleeping in a filthy cell, the build-up of dirt and dust causes me to have allergic reactions and further puts me at health risk on a daily basis.

COMPLAINT #5 - <u>Discrimination and Degradation</u>: Being removed from the general population and being subjected to the segregation of being housed in S-1 Unit has been degrading and has made me a victim of discrimination by the Prosecutor and the DCDC Jail Administration and staff. Unlike the co-defendants in my case and unlike the general population, I have to be in my cell 24 hours a day 4 days a week and 23 hours a day 3 days a week. During the break three times a week, I have to fit in recreation, shower and, if granted the privilege, a phone call. I am subjected to a strip search, handcuffs, shackle and belly chain and my cell searched each time I go to the shower, or to recreation, and each time I leave the unit.

While being housed in S-1 Unit, I am surrounded by psychotic inmates and violent inmates whose level is much high than mine. This is a clear example of discrimination since I am a low level inmate with no history of violence. On one occasion, while I was getting my hair cut (cuffed, shackled and waist chained), an inmate sitting beside me was assaulted by another inmate. Because of the cuffs, chains and shackles I was unable to get myself out of harms way and was very much in danger throughout that entire incident.

In conclusion, I feel humiliated and sexually harassed and degraded on a daily basis. For recreation, I am placed alone in a cage that looks like it was built to house an animal. The constant nakedness in front of grinning C.O.'s, constant handcuffs, shackles and belly chain sexual harassment, and all of the other torture outlined here is humiliating, degrading, and cruel punishment especially since I should not be subjected to this prejudicial discrimination. I have not had any sanctions, no shots, no charges and there has been no proper investigation. T.S. status should not be used as a pretext for punishment, torture, to discriminate or for indefinite confinement of a detainee nor should it be instituted without the

ANTOINE JONES - PAGE 6

prison officials engaging in periodic review.

I have been placed in S-1 Unit Segregation under T.S. status under false pretense. In the process, I have been subjected to invasion of my privacy, prevention of a fair trial, violation of my 1st, 8th and 14th Constitutional Amendment rights by a prejudice and vindictive Prosecutor. I have been subjected to daily discrimination by the DCDC Jail administration and staff. I have suffered monetary damages and with the numerous wrong doings and actual fraud, I hereby file these five complaints. The Prosecutor is aware of and has participated in fabricating evidence throughout the investigation and has grossly violated the standard of due process resulting in loss of liberty and a denial of my constitutional rights. Also noted here, prosecutorial interference with the defendant's access to witness can require reversal because it denies the defendant (myself) a fair trial.

I am requesting the relief of, and monetary damage of $ 1,000,000 00 (___ONE___ million dollars) disbarment or suspension of the Prosecutor(s) for willfully depriving me of my Constitutional rights, therefore rendering me unable to have a fair trial, and I am also requesting the demotion or suspension of the DCDC Jail Administration responsible for carrying out the prejudice and discrimination orders towards me. On March 17, 2006, in open court, the judge stated that she never signed any order to place me in S-1 Unit Segregation under Total Separation (T.S.) Status. Therefore, the Prosecutor(s) acted outside their realm of jurisdiction in instructing the DCDC Jail Administration to place me in the T.S. Status and the DCDC Jail Administration acted outside their realm of jurisdiction by carrying out such an order without a properly signed court order from the judge.

Antoine Jones    April 10 2007
_____    _____
Antoine Jones    Date

ANTOINE JONES - PAGE 7

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF CORRECTIONS

Office of the General Counsel



September 15, 2006

Antoine Jones, DCDC # 241-912
1901 D Street, SE
Washington, D.C. 20003

**Re: Freedom of Information Act Request**

Dear Mr. Jones:

This is in response to your Freedom of Information Act request that was received in this office on August 25, 2006, in which you asked for a copy of the records of United States Attorney's Office request for your placement in total separation and segregation unit.

Your request is currently under review and a determination will be made upon completion of the review. However, the review process may not be completed before the expiration of the 15 days statutory limit due to the need to consult with a number of other units within and outside the agency. Therefore, a response will be provided within the next ten days; that is, no later than September 29, 2006.

Sincerely,

Oluwasegun Obebe
Records, Information & Privacy Officer

07 1027
**FILED**

JUN - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1923 Vermont Avenue, N.W. Washington, D.C. 20001  (202) 671-2042

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF CORRECTIONS

Office of the General Counsel



October 17, 2006

Antoine Jones, DCDC # 241-912
1901 D Street, SE
Washington, D.C. 20003

Re: FOIA Request

Dear Mr. Jones:

This is the final response to your Freedom of Information Act request that was received
in this office on August 25, 2006. The request is for a copy of records indicating that the
United States Attorney's Office asked for your placement in "segregation and total
separation" unit. We provided initial response on September 15, 2006.

Please find attached records that were determined to be responsive to your request.
These records have been redacted for the considerations of third party privacy and
security, as exempted under D.C. Code §2-534 (a) (3) (C), (D) & (F).

If you consider this response a denial, please be advised that you have the right to appeal
to the Mayor, or you may seek judicial review in the Superior Court of the District of
Columbia, pursuant to D.C. Official Code §2-537 (2001) and 1 D.C.M.R. §412. If you
elect to appeal to the Mayor, your appeal should be in writing, and include a statement of
the arguments, circumstances, or reasons in support of the information sought in your
request. You should also include a copy of this letter in your appeal.

Sincerely,

Oluwasegun Obebe
Records, Information & Privacy Officer

Enclosure

DEC 22 2005 12:42 FR UWAU                    ~~TO~~                    P.02/11

# Memorandum



*United States Attorney*
*District of Columbia*

| Subject: | Date: |
|---|---|
| Continuing Problems with Prisoner Antoine Jones, DCDC 241-912 | December 22, 2005 |

| To: | From: |
|---|---|
| Warden, District of Columbia Jail | ~~[redacted]~~  *RCC* |
|  | Assistant United States Attorney |

On November 23, 2005, the United States Attorney's Office made a written request to the D.C. Jail, that the aforementioned prisoner, Antoine Jones (DCDC 241-912) be placed in protective custody, based on growing concerns that Mr. Jones was ~~[redacted]~~ ~~[redacted]~~ in his narcotics conspiracy case being prosecuted in United States District Court for the District of Columbia. Nine days later, on December 2, 2005, it came to my attention, while ~~[redacted]~~ that he was continuing to make telephone calls from the Jail, which led me to believe that he remained in population. With the aid of members of ~~[redacted]~~ I learned that Jones did, indeed, remain in population. Thus, we renewed our request to have him transferred to protective custody, to ensure the safety of various individuals, and the integrity of the investigation.

According to Jail records investigators received last Friday, December 16, 2005, and examined this week, while Jones has been transferred to protective custody, he continues to somehow have telephone privileges. This completely undermines the purpose of his being in that placement - ~~[redacted]~~. Indeed, some of the basis for the government's concern regarding Jones's ~~[redacted]~~

I have attached copies of the most recent Department of Corrections call logs. ~~[redacted]~~

The U.S. Attorney's Office and the F.B.I. are very concerned that Antoine Jones ██████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Please consider this memorandum a formal request for an immediate investigation into this situation, to include an examination of how these clear violations occurred, and more importantly, an immediate correction of the problem.

Please feel free to contact me at (202) ████████ (office) or (202) ████████ (cell), if you have any questions.

2



 U.S. Department of Justice
United States Attorney
District of Columbia

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20530*

# FAX

To: 
DC Jail
(202)

From:
USAO/DC
(202)

Fax:

Phone:

Date:       December 2, 2005

Re:         Request for Lockdown: Antoine Jones

Page(s):    2 including cover

COMMENTS:

Please place Antoine Jones immediately in lockdown. If you have any questions, please call me on the telephone number listed above.

**Thanks**

## U.S. ATTORNEY FACSIMILE COMMUNICATION

***WARNING: Information attached to this cover sheet is U.S. Government Property. If you are not the intended recipient of this information, disclosure, reproduction, distribution, or use of this information is prohibited. Please notify the originator immediately to arrange for proper disposition.***

DEC 02 2005 15:26 FR UWAU                                 10            P.02/02

# Memorandum

*United States Attorney*
*District of Columbia*

| Subject: | | Date: |
|---|---|---|
| Request for Lockdown Antoine Jones DCDC 241912 | | December 2, 2005 |

| To: | From: |
|---|---|
| DC Jail | USAO/DC |

AUSA ▉▉▉▉▉▉▉ has indicated in a previous request, dated November 23, 2005, that inmate Antoine Jones, DCDC 241912 should placed immediately in lockdown at the DC Jail. Please ensure that Mr. Jones is lockdown until further notice.

If you have any questions, please call me at (2)▉▉▉▉▉▉ or Rachel Lieber at (2)▉▉▉▉▉▉

**Thanks**

O106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Property and Cell of Antoine Jones
District of Columbia Department of Corrections
D.C. Jail, 1901 D Street, S.E.
Washington, D.C.

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: CS-63 M

(Further described below)

I ___Norma Horne_____ being duly sworn depose and say:

I am a(n)___Detective with the Metropolitan Police Department___ and have reason to believe
            (Official Title)
that ☐ on the person of or ☒ on the property or premises known as  (name, description and or location)
Property and cell of Antoine Jones, District of Columbia Department of Corrections, D.C. Jail, 1901 D Street, S.E,
Washington, D.C.

in the District of Columbia, there is now concealed a certain person or property, namely  (describe the person or property to be searched)
Documents or records, as set forth more fully in Attachment A

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
evidence of attempted obstruction of justice, witness tampering, witness intimidation, ongoing attempts to conceal a drug
conspiracy

concerning a violation of Title _18_ United States Code, Section(s) _1510, 1512, 1513_, Title _21_ United States Code,
Sections 841 and 846 .  The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES  ☐ NO

Jack Geise
Narcotics 4th Floor USAO
(202) 616-9156                                Signature of Affiant
                                             Norma Horne, Detective
                                             Metropolitan Police Department

Sworn to before me, and subscribed in my presence

22 NOV 2005    455 pm
Date                                         at Washington, D.C.

_____            _____
Name and Title of Judicial Officer          Signature of Judicial Officer

## ATTACHMENT A

1) Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;

2) Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;

3) Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and

4) Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, photographs, personal telephone books, diaries, and identification documents.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE APPLICATION OF )
THE UNITED STATES OF AMERICA FOR AN )
ORDER AUTHORIZING THE ISSUANCE OF A )        <u>FILED UNDER SEAL</u>
SEARCH WARRANT FOR FOR THE ENTIRE )
JAIL CELL AND PERSONAL PROPERTY OF )
**ANTOINE JONES**, D.C. JAIL, 1901 D STREET )
SOUTHEAST, WASHINGTON, D.C. )

## <u>AFFIDAVIT</u>

I, Norma Horne, am a police officer of the District of Columbia Metropolitan Police

Department (MPD), having been duly sworn, state:

## <u>I. INTRODUCTION</u>

I am an investigative and law enforcement officer of the United States and District of

Columbia who is empowered by law to conduct investigations of and to make arrests for offenses

enumerated in the Comprehensive Drug Abuse Prevention and Controlled Substances Act of

1970, Title 21 of the United States Code (USC), as amended and the Uniform Controlled

Substances Act, Title 48 of the District of Columbia Code as well as Title 18 offenses.

I am an officer of the District of Columbia Metropolitan Police Department and have

been so employed for over 14 years.  I have received narcotics specialization training from the

Metropolitan Police Department Training Division, the United States Attorneys Office and gang

training from the Mid Atlantic Great Lakes Organized Crime Law Enforcement Network.  I have

attended the Expert Witness class offered by the Major Narcotics Branch, MPD.  I have also

received firearms trafficking and identifying an armed subject training from the Bureau of

Alcohol Tobacco and Firearms.  I have been personally involved in numerous narcotics and

weapons investigations throughout the District of Columbia, with concentrated efforts in the

Northeast area of the city.  I have worked in an undercover capacity during which I purchased

firearms and a controlled substance. As a result of these experiences and formal training, I am familiar with the actions, habits, traits and terminology utilized by the traffickers and abusers of controlled dangerous substances. I have prepared and participated in the preparation and execution of over two hundred search and arrest warrants. I also have testified as a witness in the Superior Court and United States District Court for the District of Columbia.

In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-term undercover operations, including reverse undercover drug operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms and other contraband.

Through instruction and participation in investigations, your affiant has become familiar with the manner in which narcotics traffickers conduct their illegal business and the methods, language, and terms that are used to disguise conversations about their narcotics activities. From experience and training, your affiant has learned, among other things, that:(a) drug traffickers virtually never expressly refer to cocaine or other illegal drugs by name; instead to conceal the true nature of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms; (b) narcotics traffickers frequently use electronic paging devices, commonly referred to as pagers or beepers, cellular telephones, digital telephones, and other communications devices to further their illegal activities by, among other

2

things, remaining in constant or ready communication with one another without restricting either party to a particular telephone or location at which they might be the subject of physical surveillance by law enforcement authorities; and (c) narcotics traffickers frequently transmit pre-arranged numerical codes to pagers or telephones to identify themselves or to otherwise communicate information, such as price or quantity of drugs, to the person in possession of the pager.

Throughout this investigation, your affiant has worked with other Special Agents (SAs) of the FBI, and members of the Washington, D.C. Metropolitan Police Department (MPD) assigned to the Safe Streets Task Force. This affidavit is based on my personal knowledge derived from my participation in this investigation, as well as speaking with other law enforcement officers assigned to this investigation, and includes, but is not limited to, the following information: (a) oral and written law enforcement reports regarding this and other related investigations; (b) physical surveillance; (c) review of dialed number recorder data (pen register records) and telephone toll records; (d) review of vehicle registration records and licenses; (e) review of criminal history records; and (f) review of wire interceptions pertaining to the target telephone authorized by United States District Court Judge Paul L. Friedman on September 2, 2005, and extended on September 30, 2005, (g) debriefings of confidential informants; and review of intercepted telephone calls placed by **ANTOINE JONES** from the D.C. Jail.

3

It is a common practice of drug traffickers who are incarcerated to reach out to associates who remain in the community to continue their illegal drug trafficking activities while incarcerated, including attempts to influence witnesses and arrange for the concealing or destruction of evidence.  Such outreach takes many forms, including telephone calls from the jail, and letters containing instructions regarding the manner in which to continue the business.  It is also common practice for individuals who receive such letters to maintain them for a period of time, and to refer to the instructions contained therein.

Your affiant also knows from prior training and experience that inmates frequently maintain letters, notebooks, phone books, family photographs and other notations in their cell and among their personal property.  Examination of this material can provide investigators with the identity of persons close to the inmate, including co-defendants and persons willing to commit criminal acts for the defendant.  Inmates will also utilize the inner-jail mail system to correspond with other family members and friends, and in this correspondence, as well as in normal correspondence, will discuss or allude to criminal activity, often using slang or code.

Additionally, the affiant knows that if an inmate write on a pad, and then mails or destroys what he has written; chemical analysis of that pad can often reveal what was written.

Finally, your affiant also knows from training and experience that the D.C. Jail will frequently move inmates and/or their possession at a moments notice, both for administrative and security reasons.  The location of any inmate and/or his property can be determined at any specific time through the Central Records Department of the D.C. Jail.

4

## LOCATION TO BE SEARCHED

The description of the following address was obtained through physical surveillance by your affiant and/or other law enforcement officers.

FOR THE ENTIRE JAIL CELL AND PERSONAL PROPERTY OF **ANTOINE JONES,** a black male, Date of Birth: February 25, 1960, SSAN: 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, FBI#: 901461KA2, D.C.D.C. # 241912, WHO IS CURRENTLY AN INMATE OF THE D.C. JAIL. LOCATED AT 1901 D STREET, SOUTHEAST, WASHINGTON, DC. THE EXACT LOCATION OF THE CELL OCCUPIED BY AND THE EXACT LOCATION OF ANY STORED PERSONAL PROPERTY WILL BE DETERMINED THROUGH THE D.C. JAIL'S RECORDS DEPARTMENT AT THE TIME OF THE EXECUTION OF THE SEARCH WARRANT.

## BACKGROUND OF THE INVESTIGATION

### A. Prior to First Interception

In late 2004, the FBI obtained information from a number of confidential sources that **ANTOINE JONES** was operating a large narcotics trafficking organization in the greater Metropolitan Washington, D.C., area and elsewhere. It was also learned that **JONES** operated almost exclusively with the assistance of his right-hand associate, **LAWRENCE MAYNARD,** one of the few people with whom he will deal directly. Further, investigation revealed that **ANTOINE JONES** was the sole proprietor of a nightclub named "LEVELS," located at 1960 Montana Avenue, N.E., Washington, D.C. Sources told Investigators that **ANTOINE JONES** used his business as a location where he often conducted his drug trafficking activities, including distributing kilogram quantities of cocaine and collecting substantial quantities of money, as well

as laundered drug trafficking proceeds through that nightclub.  According to records on file with the District of Columbia Alcoholic Beverage Regulatory Agency (ABRA), **MAYNARD** is listed as the "A.B.C. manager" of the nightclub.  Further, as set forth more fully *infra*, wire interceptions on **JONES's** cellular telephone confirm that **JONES and MAYNARD** have frequent contact on the telephone regarding **LEVELS**, much of the time confirming that they will meet at that club at some point each day.  The confidential sources all reported that **ANTOINE JONES** maintained a discreet operation, and limited his contacts to individuals known to him personally, or introduced to him by trusted, well known associates.

According to information provided by several confidential sources, who were customers of **JONES** and **MAYNARD**, and who have provided reliable information throughout the course of this investigation, resulting in the seizure of in excess of 100 kilograms of cocaine and cocaine base, and in excess of $800, 000, in related search warrants executed on October 24, 2005, **MAYNARD** undertakes many tasks on behalf of **ANTOINE JONES's** narcotics trafficking organization, including but not limited to being an intermediary and a point of contact between **ANTOINE JONES** and many of his drug suppliers and customers.  For example, these sources report that **JONES** frequently changed his cellular telephone number in an effort to avoid detection by law enforcement; however, **MAYNARD** has retained his same cellular telephone for over two years.  If these sources needed to get into contact with **JONES** to place an order for kilogram quantities of cocaine, they frequently would contact **MAYNARD** to get the current telephone number for **JONES,** who also has been known to use "burnout" or disposable cellular telephones.

6

*[handwritten: What would ... being confined in Jail?]*

Further, one of these reliable sources asserted that, based on its conversations with both JONES and MAYNARD, JONES and MAYNARD traveled out of the Metropolitan Washington, D.C., area on occasion, often near the end of each month, to obtain multiple-kilogram quantities for cocaine for redistribution. While this source did not know precisely, where JONES and MAYNARD traveled to pick up the narcotics, it recalled hearing JONES state that they were "goin' down the road" and refer to "Carolina." The source further reported that, while it was not aware of the specific identity of JONES's narcotics supplier, it recalled JONES or MAYNARD mention narcotics coming from "the Mexicans" and "Texas."

The report of MAYNARD's role in JONES's drug-trafficking operation was confirmed through various law enforcement means, including surveillance of JONES's nightclub LEVELS, which revealed MAYNARD on the premises of the nightclub nearly every day during the surveillance period, which began in January, 2005. This report regarding MAYNARD's crucial role in the JONES drug-trafficking enterprise was further confirmed by a traffic stop of MAYNARD on April 5, 2005. The Highway Interdiction Unit of the Durham, North Carolina Police Department conducted a traffic stop of a 1997 Honda Odyssey mini-van bearing Maryland tags 273M195, operated by MAYNARD and also occupied by DERRICK GORDON in the vehicle front passenger seat. Their investigation revealed that this car was registered to ANTOINE JONES, with a date of birth of February 25, 1960, and to one of his residences, 12221 Brandywine Road, Brandywine, Maryland. In the course of further investigation, the interdiction unit canine alerted on the right rear passenger area of the mini-van. A search of the mini-van revealed a hidden compartment in the van, which contained six white plastic Target shopping bags, containing a total of $67,115.00 in U.S. currency, in various denominations, held

7

together by rubber bands.  In addition, both **MAYNARD** and **GORDON** each had in their

possession well in excess of $1,000.00, which totaled just under $5,000.00, between the two of

them.  When interviewed by the Interdiction Unit, **MAYNARD** and **GORDON** both denied any

knowledge of the secret compartment and the money contained therein.  The Honda Odyssey was

impounded, the $67,115.00, was seized as evidence, **MAYNARD** and **GORDON** received a

warning ticket, and then were released without additional charges.

   **MAYNARD's** role was finally confirmed by pen register information which was

obtained by law enforcement, beginning in January, 2005, obtained through a court order issued

in the United States District Court for the District of Columbia.  Pen register data revealed

suspicious contact by **MAYNARD** with a cellular telephone listed in what investigators believe

to be a fictitious name, HENRY GARCIA, with a Texas area code, but listed to a P.O. box in

Irvine, California, which has been implicated in several narcotics trafficking investigations being

conducted by the F.B.I., the D.E.A., and other law enforcement agencies, several of which

implicate cocaine trafficking originating in Mexico and elsewhere.  Specifically, on April 5,

2005, the date of the North Carolina traffic stop, **MAYNARD's** cellular telephone received a

call at approximately 2:17 p.m. from the HENRY GARCIA cellular telephone.   In addition to

this call from GARCIA to **MAYNARD** on April 5, 2005, pen register data shows three more

calls from GARCIA to **MAYNARD**, two on March 25, 2005, and one on March 30, 2005.

Finally, pen register data pertaining to (202) 538-3946, the telephone in use by **ANTOINE**

**JONES**, reflects a telephone call from **ANTOINE JONES** to GARCIA on June 25, 2005.

Based on (a) the number of narcotics-trafficking investigations into the P.O. Box used by

GARCIA, (b) the implication of Mexico and Texas in those investigations, (c) information from

8

*Bull CRAP — Double talk*

a reliable source that **ANTOINE JONES's** source of cocaine is "Texas" and "the Mexicans," and (d) the traffic stop of **MAYNARD** which revealed $67,100 in a hidden compartment in **ANTOINE JONES's** car, your affiant believes that these telephone contacts between **MAYNARD, JONES,** and **GARCIA** relate to illegal narcotics-trafficking activities, and that **MAYNARD** was engaged in these conversations on behalf of **JONES.**

### B. Wire Interception Period

On September 2, 2005, authorization for wire interception on a cellular telephone known to be used by **ANTOINE JONES** was granted by the Honorable Paul L. Friedman, Judge, District Court for the District of Columbia. Investigators quickly identified a core group of individuals believed to be involved in **JONES'** narcotics trafficking activities. Although the conversations were generally short and the language encrypted, Investigators began to see a clear pattern of conversations clearly suspicious in nature regarding "tickets, VIP tickets, flyers and math homework." Investigators ascertained that these conversations were related to the distribution of wholesale quantities of narcotics and/or money transactions.

Conversations mirroring the aforementioned continued into the second authorized period of wire interception which began on September 30, 2005, and continued until its termination on October 25, 2005. **JONES** and his drug-trafficking colleagues continued his use of the code "tickets" to reference large wholesale quantities of cocaine – frequently speaking of their need for various numbers of "tickets, VIP tickets" and, occasionally, "little tickets." Shortly after many of these phone calls discussing the need for a certain number of tickets, surveillance revealed **JONES** meeting with the person on the aforementioned calls, and handing over a plastic bag, which is the manner in which sources have indicated that **JONES** and his colleagues

9

*While the club was close and I was incarcerated. Did anybody mention Jackeson UCF*

exchange cocaine and money.

Wire interceptions further revealed the role of Texas suppliers in **JONES'** organization. To that end, Investigators identified three separate out of area telephone numbers believed to be involved in the narcotics supply chain which confidential sources told Investigators was "Mexicans" and/or "Texas." Throughout the course of this period, **JONES** had frequent contact with a number of Hispanic sounding males, with cellular telephones registered in what Investigators believed to be fictitious names. As a result, Investigators identified a location in Ft. Washington, Maryland, believed to be a stash house. **ANTOINE JONES** was surveilled at this location on numerous occasions during the interception period, often shortly after speaking with a Hispanic-sounding male on one of these out-of-area telephone calls, and indicating that he would meet with that individual within a designated period of time, for example "20 minutes." On numerous occasions, shortly after one of **JONES's** visits to the stash house in Ft. Washington, Maryland, **JONES** would arrange to meet with many of his suspected customers, in rapid succession.   *Bull C∧∇∅*

Finally, wire interceptions revealed **JONES** on occasion telling other known drug-trafficking associates to get in touch with "Lawrence" to pick something up, or simply to "see Lawrence," who would take care of matters. While these conversations were encrypted, as were most of **JONES's** conversations that did not involve details of his legitimate nightclub business, based on the fact that such calls were frequently made with individuals who had no known connection to **LEVELS**, investigators believe that these calls referenced drug trafficking activity by **JONES, MAYNARD,** and their customers.

*Why wasnt Lawrence pickup on Oct 24 2005?*

10

*All Bull CRAP*

## C. October 24, 2005 Take Down

On this date, a number of sealed search warrants were executed at various locations throughout the greater Washington, D.C. area. A total of nine individuals were arrested, but **MAYNARD** was not among them. Of particular significance, recovered at the "stash location"at 9508 Potomac Drive in Ft. Washington, Maryland, Investigators recovered ninety-seven (97) kilograms of cocaine powder, three (3) kilograms of crack cocaine and $834,520.00 in US currency. Three Hispanic males were arrested at this location, two of whom were Mexican Nationals, and one of whom was identified seated in the passenger seat of **JONES**'s Jeep Grand Cherokee in a photograph that was taken by a surveillance team. At other locations searched that day, smaller quantities of cocaine were found, for example, half-kilogram quantities, along with smaller quantities of cash, for example, $12,000.00, along with firearms, and narcotics packaging materials at several houses. Further, a gun was recovered from the office of **JONES**'s nightclub **LEVELS,** and in excess of $69,000.00, in cash was ~~NEVER MENTION SOURCE FOR INFORMAT~~ep Grand Cherokee.

## D. Intercepted Jail Telephone Calls

Over the course of his incarceration at the District of Columbia Jail, **JONES** has made numerous telephone calls, which were recorded by the Jail. Among those calls were several to **DEBORAH O'NEAL,** who has been identified both in calls intercepted on the wiretap and in calls intercepted from the Jail, as a romantic interest of **JONES**. In one such telephone call, on November 3, 2005, at approximately 9:16 p.m., **JONES** told **O'NEAL** that he had sent her a few letters from the Jail. In particular, he mentioned that when she gets letters with another name on them, that she should hold onto the letters and give them to "Lawrence" because "Lawrence"

11

*#1*

*whats illegal about that? Dont have Lawrence address.*

*my JAIL CALLS? These calls never mention obstruction of justices, or tampering with witness,*

knows what to do with them. Later in this approximately 15 minute telephone call, JONES reminds O'NEAL that when she gets letters without her name on them, that she should just hold

**#2** them. In a later call to O'NEAL, on November 6, 2005, at approximately 11:57 a.m., JONES and O'NEAL discuss "Lawrence" at some length. JONES told O'NEAL to tell "Lawrence," to *Talking about club business* write to him and let him know what was going on, because he doesn't want to be "in the blind." Investigators believe that since he has been incarcerated, JONES has written letters to other *who - Prejudice* members of his illegal narcotics-trafficking operation, but has sent them to O'NEAL's house, *Lies Brian* *Prejudice statement* who in turn will give them to MAYNARD, in an effort to conceal his communications with those individuals. Specifically, investigators believe that JONES has sent letters to MAYNARD *false statement never sent letter through club to give to Lawrence* via O'NEAL, which speak of the details of ongoing narcotics trafficking, including the possible concealment of evidence, and the continuation of the business, and that MAYNARD has kept these letters in his possession, as is common in the illegal narcotics trade.

**#3** Further, in numerous conversations with his wife, Deniece Jones, ANTOINE JONES is heard urging her to get into contact with MAYNARD, to tell him that JONES needs to speak *club business* with him. On a few occasions, JONES asks his wife to call MAYNARD on her cellular **#4** telephone, while JONES's call from the Jail is underway on the landline. JONES repeatedly *Talk about club business* tells his wife to tell MAYNARD to come out to the Jail to visit him. Based on these calls, and on MAYNARD's identified role in JONES's narcotics-trafficking operation, investigators believe that MAYNARD has evidence pertaining to narcotics-trafficking in his possession, to include letters from ANTOINE JONES.

*Lock Lawrence up November 23, 2005*
*same day the prosecutor got an indictment*
*same day they got a search warrant for my cell*
*(Didn't mention Beverly at all) or Pep-Boldness*

12

## PROBABLE CAUSE FOR INDIVIDUAL LOCATION

1. **Jail Cell and personal property of ANTOINE JONES** (a black male, Date of Birth: February 25, 1960, SSAN: 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, FBI#: 901461KA2)

**ANTOINE JONES** is currently an inmate of the D.C. Jail located at 1901 D Street, Southeast, Washington, D.C. The exact location of the cell occupied by and the exact location of any stored personal property will be determined through the D.C. Jail's Records Department at the time of the execution of the search warrant.

## OFFENSES

Attempted obstruction of justice and witness tampering, in violation of 18 U.S.C. § § 1510, 1512, and 1513, and violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et seq., including: (a) the possession with intent to distribute and distribution of controlled substances, in violation of Title 21 United States Code (USC) § 841(a)(1); and (b) conspiracy to commit such offenses, in violation of 21 U.S.C. § 846.

## CONCLUSION

Wherefore, based upon the facts and circumstances related above and my experience as a Special Agent of the FBI, I believe that there is probable cause to believe that the following articles are present at the subject premises:

1) Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;

2) Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;

3) Personal books and papers reflecting names, addresses, telephone numbers, and

13

other contact or identification data relating to the distribution of controlled

substances; and    *FALSE*

4) Items of personal property that tend to identify the person(s) in residence,

occupancy, control, or ownership of the premises that is the subject of this

warrant, including but not limited to canceled mail, photographs, personal

telephone books, diaries, and identification documents.    *Spying on the Defense*

I swear and subscribe to the information contained in the Affidavit:

*Dont see return to the Judge*

NORMA HORNE
Detective
Metropolitan Police Department

*455 PM*

Sworn to and subscribed before me
this ____ day of _____ 2005 in
the _____ 2 2 NOV 2005

UNITED STATES MAGISTRATE JUDGE

*All the Rest of the Affidavit is Double talk, Bull crap and the same as the old Affidavit. From Pg #1 to this page Its misstatements, False Statement, Deceiving and Misleading. And once again Just like a rubber stamp the Judge stamp there name on any thing the Government or FBI say.*

*I went to the Hole for 5 month in maximum security, Because of this Affidavit "Pg #1 to this Pg. All Bull crap. "Civil Suit"*

*In the CONCLUSION, from # 1, 2, 3, 4, it speaks on Drugs, distribution; controlled substances And conspiracy. NO mention of obstruction of Justices, Witness Tampering, And whats suppose to be the main objective " Those guys from levels is looking for some one to Hunt.*

14

**VOLUNTARY STATEMENT**
**(WITNESS)**

Antoine Jones

I, Brian Wuddell , voluntarily give this statement without threat, promise or coercion. The events contained herein are true and correct to the best of my knowledge and belief. Without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will, for whatever purpose it may serve.

I am 48 years of age, and I permanently reside at 3920 Brooklyn Ave Brooklyn MD
My resort address is SAME for the period of 2 yrs

At the end of November 2005 I got a call from a woman named Deborah. Deborah said that Antoine sent her a letter for me. I went to Bowie town center and meet with Deborah and got the letter. The Envolope had Deborahs name on the front and my name on the back. The letter explained that the police arrested Antoine, they got some money out of his Jeep, the police went in his house and didn't find anything. He needed money for his defense lawyer, wanted me to check with the club promoters, Bo and Ivy, to see if they wanted to take over the club. he was sad that guys were out of jobs from the club, and to tell my family hello. The letter never contained any threats. Antoine never sent me any letters to give to anyone else, or to hold for someone to pick up.

have read each page of this statement consisting of __1__ page(s), written by me (for me) each page of which ears my signature, and corrections, if any, bear my initials.

aled at 6:30 pm , this 18 day of April 2006

ITNESS:

**VOLUNTARY STATEMENT**
(WITNESS)

Antoine Jones

I, _Deborah O'Neal_ , voluntarily give this statement without threat, promise or coercion. The events contained herein are true and correct to the best of my knowledge and belief. Without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will, for whatever purpose it may serve.

I am __44__ years of age, and I permanently reside at __3904 Eldbridge terr Bowie MD__
My resort address is _____SAME_____ for the period of __1 Year__

Antoine called me one day and said he
may send me some letters. With someone
else's name on them, to hold the letters
or give them to Lawrance or Lawrance would
get them. He never said give a letter to
someone or do this or do that. Shortly
after the conversation I got a letter addressed
to me with Bryant's name on it. Also
included was Bryants phone number. I
called Bryant and he met me and picked
up the letter. I never got any other
letters addressed to anyone else or to
hold for anyone. None of the letters
Antoine sent me contained any threats
I never known Antoine to threaten anyone.
I never opened or Read the letter
addressed to Bryant, and that letter had
Bryants name on it.

I have read each page of this statement consisting of ___1___ page(s), written by me (for me) each page of which bears my signature, and corrections, if any, bear my initials.

ted at __12:30 pm__ , this __12__ day of __April__ __2006__

**VOLUNTARY STATEMENT**
**(WITNESS)**

*Antoine Jones*

I, _Beverly Johnson_, voluntarily give this statement without threat, promise or coercion. The events contained herein are true and correct to the best of my knowledge and belief. Without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will, for whatever purpose it may serve.

I am _41_ years of age, and I permanently reside at _1918 Village Green Dr. Hyattsville M_
My resort address is _SAME_ for the period of _2 yrs._

I got a call from Antoine from the jail. Antoine asked me if Donald Hunter is O.K. and where he was. I told him I'd try to find out. Antoine and I were introduced by Donald Hunter and were mutual friends. Antoine also asked if I knew Kevin Ray AKA Bald Head, and I said I do know him. About a week later I wrote Antoine a letter. In the letter I told Antoine that Donald Hunter was in the jail and he was O.K. I also told Antoine that Kevin Ray was hot. That the word in the barbershop was that Kevin Ray was talking. I also wrote that I loved him, and that I'd be writing soon.

I have read each page of this statement consisting of _1_ page(s), written by me (for me) each page of which bears my signature, and corrections, if any, bear my initials.

Dated at _2:15 pm_, this _24_ day of _April_ _2006_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LAWRENCE MAYNARD,<br>Defendant. | Criminal No.  05-417 (ESH) |

## DETENTION MEMORANDUM

The Defendant, Lawrence Maynard, has been charged by indictment with conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, narcotics crimes carrying a penalty in excess of ten years. Specifically, the Defendant is charged with conspiracy to distribute cocaine and cocaine base.  The government requested a detention hearing which was held on November 29, 2005.  This memorandum is submitted to comply with the statutory obligation that "the judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### **Findings of Fact**

At the detention hearing, the government proceeded by oral proffer. According to the government, the Defendant was one of at least nine individuals involved in a large scale crack cocaine and powder cocaine distribution operation. The government alleges that Antoine Jones, a defendant indicted separately, was a major distributor in this drug ring, based in the District of Columbia. The government further alleges that Maynard conspired with Jones to distribute large quantities of cocaine throughout the D.C. area. Specifically, the government alleges that Maynard was Jones' right-hand man and an intermediary between Jones and Jones' distributors.

Over a period of approximately two months, from Sept. 2, 2005 to Oct. 24, 2005, law enforcement agents had a wiretap on Jones' phone. Through the wiretap, the FBI intercepted numerous calls between Jones and other individuals whom the government alleges were Jones' suppliers and distributors.

Prior to and during this time, Jones also operated a nightclub called "Levels." The Government and Defendant agree that Levels was a legitimate business. Mr. Maynard worked as the manager of Levels and was registered with the Alcohol & Beverage Commission as such. The Government conceded that the wiretapped conversations between Jones and the Defendant, which occurred on a daily basis due to the nature of Mr. Maynard's job, were legitimate. However, the government proffered that in some of the intercepted conversations between Jones and other Defendants indicted in the conspiracy, Jones told one or more of these individuals "I left that with Maynard" or "Talk to Maynard about that" and similar such statements.

The Government also alleged that since his arrest, Jones has attempted to contact Maynard from jail in a suspicious manner. According to the Government, Maynard told his girlfriend that if

- 2 -

she received any letters from him (Jones) without her name on them, she should give them to ~~Les~~

Maynard. The Government offered no evidence as to the contents of any of these letters, or whether

any such letters in fact exist. *Bull crap* *Lies* *Illigal search*

The government also proffered that in April of 2005, the Defendant was stopped for speeding *Warning ticket*

while driving south on I-85 through Durham, N.C. The van that Defendant was driving was owned

by and registered to Jones. According to the government, a search of the van revealed over $67,000

in a hidden, second gas tank. Defendant asserted that he consented to the search. The government *After insistance of police about drug and or guns*

proffered that the search was ordered after the Defendant and another passenger gave conflicting *Search started before the drug dog arrived*

stories regarding their destination. According to the Government, a drug dog conducted a sniff of *From front to back*

the minivan and alerted to the presence of narcotics. At that point, according to the government, the *and content of our poci*

search of the van took place.

Finally, the Government proffered that it had placed a pen register on Defendant's phone.

According to the Government, the pen register showed that immediately after the April 2005 traffic

stop, Defendant phoned a number in McAllen, Texas frequently called by Jones. The Government

believes that this number belongs to one of Jones' drug suppliers.

## Discussion

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in

pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or

combination of conditions will reasonably assure . . . the safety of any other person and the

community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C.

§ 3142(e). Thus, danger to the community alone is a sufficient basis upon which to order pretrial

detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100,

113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

A grand jury returned an indictment charging the Defendant with conspiracy to distribute narcotics, a violations of the Controlled Substances Act. When probable cause exists to believe that a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

In determining whether there are conditions of release which will reasonably assure the Defendant's future presence in court or assure the safety of any other person and the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. § 3142(g).

The first factor, the nature and circumstances of the offense, favors detention. The Defendant was allegedly an active participant in a major drug distribution conspiracy involving sales of cocaine, a particularly destructive and dangerous narcotic.

The second factor, the weight of the evidence, favors detention. A grand jury has found probable cause to believe that the Defendant participated in the drug conspiracy. Furthermore, the Court is convinced that the circumstances surrounding the April 2005 traffic stop and search of the minivan establishes sufficient evidence of Defendant's involvement in the drug conspiracy such that

- 4 -

the statutory presumption is not overcome.

The third factor, the history and characteristics of the Defendant, does not favor detention. Defendant is 44 years old and has no criminal record. He is married, with two teenage daughters. The Defendant is a lifelong resident of the District. He and his wife own their own home. After Jones' arrest, Levels was closed and the Defendant immediately went out and found another job with a delivery company. Nevertheless, the Court finds, based on the other factors discussed herein, that the Defendant has not overcome the presumption that he poses a danger to the community.

The fourth factor, the nature and seriousness of the danger to the community should the Defendants be released, also favors detention. The Government alleges that Maynard operated as a key point person in a large scale drug conspiracy. The possibility that a drug network could continue to function while the defendant awaits trial "is an 'especially significant' consideration in determining danger to the community." *United States v. Ramirez*, 843 F.2d 256, 257-58 (7th Cir. 1988) (*citing United States v. Portez*, 786 F.2d 758, 765 (7th Cir. 1985)). The fact that Jones has, according to the Government, attempted to contact Maynard in a surreptitious manner leads this Court to believe that Jones may be attempting to use the Defendant to continue his narcotics operation.

## Conclusion

This particular case presents a close call. However, based upon consideration of all the evidence and the factors set forth in § 3142(g), this Court concludes that the evidence clearly and convincingly establishes that the Defendants' pretrial release would constitute an unreasonable risk of danger to the community. The presumption in favor of detention established by the statute has not been overcome by the Defendant in this case. Moreover, upon consideration of the release conditions set out in 18 U.S.C. § 3142(c), this Court concludes that no condition or combination of

conditions can be imposed to reasonably assure the safety of the community.   Therefore, the

government's motion for pretrial detention is granted.


Dated: November _30th_, 2005                        _____/s/_____
                                                     ALAN KAY
                                                     UNITED STATES MAGISTRATE JUDGE

LAW OFFICE OF

# A. EDUARDO BALAREZO

400 FIFTH STREET, NW
SUITE 300
WASHINGTON, DC 20001

(202) 639-0999 (TEL)
(202) 783-5407 (FAX)

ADMITTED IN DC, MD & NY
LAWOFFICE@BALAREZO.NET

December 19, 2005

Antoine Jones
c/o Central Detention Facility
1901 D Street, SE
Washington, DC 20003

> Re:    United States v. Antoine Jones
>        Criminal No. 05-386 (ESH)

Dear Mr. Jones:

    Enclosed for your review are copies of motions filed in your case: 1) Government's motion for exclusion of time under the Speedy Trial Act; 2) Jones' Motion for Modification of Order for Pre-Trial Detention; and 3) Jones' Motion for Law Library Access.

    If you have any questions, you can call me toll-free at (877) 567-4591.

    Sincerely,

    A. Eduardo Balarezo

- Also included is the defention memorandum.

LAW OFFICE OF

# A. EDUARDO BALAREZO

400 FIFTH STREET, NW
SUITE 300
WASHINGTON, DC 20001

(202) 639-0999 (TEL)
(202) 783-5407 (FAX)

ADMITTED IN DC, MD & NY
LAWOFFICE@BALAREZO.NET

January 3, 2006

Antoine Jones
c/o Central Detention Facility
1901 D Street, SE
Washington, DC 20003

Re:     United States v. Antoine Jones
        Criminal No. 05-386 (ESH)

Dear Mr. Jones:

Enclosed for your file are copies of: 1) Defendant's Motion to Prevent Transfer to Detention Facility Outside the District of Columbia; 2) Search Warrant and Affidavit in Support of Search Warrant of various cell phones; 3) Search Warrants and Affidavit in Support of Search Warrant for various vehicles; and 4) Search Warrants and Affidavit in Support of Search Warrant for both your homes.

I will have my investigator, Mark Glick, visit you soon to begin reviewing the various wiretaps with you. If you have any questions, you can call me toll-free at (877) 567-4591 or locally at (202) 639-0999.

Sincerely,

A. Eduardo Balarezo

# D.C.

**Prisoners' Legal Services Project**

2639 Connecticut Avenue, NW, Suite 225
Washington, D.C. 20008
202-775-0323
www.dcprisonerhelp.org

January 24, 2006

**Officers:**

Theodore A. Howard
President

Michael Michaelson, M.D.
Vice President

Thomas L. Johnson
Treasurer

Caryl Pines Curry
Secretary

**Members:**

Stephen M. Block

Peter Buscemi

David D. Cole

Richard Gilbert

Fritz Mulhauser

Alan A. Pemberton

Douglas G. Robinson

Richard Seligman

Jonathan Smith

Elizabeth Symonds

Nkechi Taifa

**Executive Director**

Philip Fornaci

**LEGAL MAIL**
**SPECIAL MAIL: Do Not Open Except in Inmate's Presence**
Antoine Jones #241-912
DC (Central Detention Facility)
1901 D Street S.E.
Washington, DC 20003

Dear Mr. Jones,

We have received information from Ms. Johnson that you would like assistance regarding your current situation. In order to research your problem, we are going to need more information. We are wondering what your concern is and why you think you might be on lockdown? We encourage you to fill out grievances. A grievance guide is attached for you. Please write if we can be of any help, or if you are able, you may call us collect at 202-775-0323.

Sincerely,

Colleen Fleming
Legal Intern to
Ivy A. Lange
Staff Attorney

Enclosure: grievance guide

# DISTRICT of COLUMBIA
## DEPARTMENT of CORRECTIONS
### CENTRAL DETENTION FACILITY
#### INMATE REQUEST SLIPS

MAR 29 AM 11:02

JAN 18 AM 9:4

DATE _Feb 27 06_

NAME _Antoine Jones_    DCDC __241912__    UNIT _5-1_    CELL _17_

## PLEASE CHECK [X] WHICH OFFICE YOU WISH TO CONTACT

[ ] CHAPLIN'S OFFICE

[ ] CLASSIFICATION & PAROLE

[ ] CLOTHING ISSUE (PLEASE INDICATE YOUR SIZE) _____

[ ] INMATE PROPERTY

[ ] OTHER ( SPECIFY) _Housing Board_

_Inmate Copy_

## PLEASE EXPLAIN THE NATURE of YOUR REQUEST BELOW

I AM Requesting A copy of the Prosecutor court order stating why I am on T.S. statics and why my Due Process Privileges have been taken (1) No mail privileges (2) No social visits, (3) No phone privileges (4) legal call denied

Done @ cc 3/29/06

Need to ask his Attorney
- Provide 8-1 copy of 2 pgs. leg/doc.
* return original to OIC & Inmate

OFFICIAL SIGNATURE _____    DATE _2/17/06_

P3



Office of the Warden

## MEMORANDUM

TO:        Jones, Antoine
           DCDC# 241-912
           Unit SO-1/Cell 17

FROM:      Dennis Harrison
           Acting Warden

DATE:      March 1, 2006

SUBJECT:   Inmate Grievance Procedures

RE:        DET# 1780-06

---

In response to your grievance the Housing Board conducted a housing hearing on December 15, 2005 to determine your housing status. Per the U.S. Attorney's Office request you are to be placed on Total Separation from the general population, also phone restriction and mail privileges. Therefore, you were placed on status total separation, which was explained during your initial review and the unit case manager conducted all follow-up reviews. Your case was shared with chief unit case manager, Ms. Leona Bennett for further resolution.

Therefore, this matter is considered resolved.



**Office of the Warden**

## <u>MEMORANDUM</u>

**TO:**      Jones, Antoine
         DCDC# 241-912
         SO-1/17

**FROM:**    Robert E. Clay *Robert E Clay 3-24-06*
         A/Warden *Interim Warden*

**DATE:**    March 23, 2006

**SUBJECT:** Inmate Grievance Procedures

**RE:**      DET# 1803-06

---

This is in response to your grievance dated 1/20/06 regarding allegations of receiving inadequate services. Our investigation reveals you never filed a level one grievance, but submitted a complaint on 2/10/06 to the Office of the Deputy Director. On 2/27/06 while the supervisor (Lieutenant) was making his unit inspection you had an extensive conversation regarding your concerns. On 3/02/06 contact was made with the Housing/Adjustment Board that your privileges had been restored and a new housing hearing was forthcoming. This information was past on to Captain Talley, the Number Three Shift Commander.

On 3/03/06 Captain Talley entered the unit and informed you that your housing privileges had been restored (telephone, canteen, visits, and etc.) and as soon as Case Management is notified, you would be receiving a new housing hearing. On 3/20/06, you were escorted to the Major's Office on the second floor, where a follow-up interview took place and during that interview, you informed Lieutenant Brinson that on Friday March 3, 2006, that Captain Talley did inform you that your privileges had been restored.

*Receive on Tue March 28 2006*
*By Sgt Garner.*

---

1901 D Street, S.E., Washington, D.C. 20003  (202) 673-8202



# DISTRICT OF COLUMBIA GOVERNMENT
## OFFICE OF RISK MANAGEMENT
### Risk Financing Division

Kelly Valentine
Interim Chief Risk Officer

May 3, 2006

Antoine Jones
1901 D Street, S.E.
Washington, DC 20003

Claim Date: 3/29/2006
Claim Number: DMPSJ009027

Dear Mr. Jones:

This will acknowledge receipt of your letter notifying the Mayor of a claim against the District of Columbia. Your letter was received in the D.C. Office of Risk Management on 4/7/2006. Your claim has bee assigned to me, Emmanuel Oghogho, a staff member in the DC Office of Risk Management, Claims Bureau. Telephone number is (202)724-2428.

If you have not already done so, please send the following information to expedite the claims process; your social security and or business tax identification number; telephone number; and any documents showing ownership; cost, damage repair estimates; medical bills and/or other documents which bear on the validity or amount of your claim.

When sending additional documents/information, please refer to the claim number identified above and address it to:

Office of Risk Management
Claims Bureau
441 4th Street N. W.
Suite 800 South
Washington, D.C. 20001

This letter does not waive the District of Columbia's right to timely and complete notice within six months of the incident as required by D.C. Code Section 12-309.

Very truly yours,


Claims Specialist

DO 4160.4 A
13 November 1987
EIAS

librarian or law clerk shall indicate on the form when the
requested material was received and when the inmate was giv-
en notice of its arrival.

m.   Inmates in Restrictive Custody.   The inmates in
restrictive custody shall obtain legal materials from the
law libraries by submitting a completed request form or a
written request to their cellblock officers.   The cellblock
officers shall submit the requests to the law librarian,
library clerk or Principal the same work day when the re-
quest is received by the cellblock officer prior to 12:00
noon, and by noon the following work day when the request is
received after noon.

The requested material will be hand-delivered to the
restrictive custody inmates in their locked cellblock/dor-
mitories by the cellblock officer within 24 hours (exclusive
of non-work days) of the inmates' request.   Any inmate in
restrictive custody shall be permitted to maintain the vol-
umes in his cellblock/dormitory for 48 hours (exclusive of
non-work days) after which they shall be returned to the
library.   An inmate in restrictive custody who is not sub-
ject to a court deadline may request up to 5 volumes per
request for a total of 5 requests per week.   However, an
inmate in restrictive custody may not have in his possession
more than five volumes at a time.   Those inmates in restric-
tive custody who have court deadlines within 72 hours and
who are not represented by counsel in that matter shall not
be subject to these limitations.   However, in instances
where it appears that the privilege is being abused, the
librarian may require justification for each request for
materials.   Inmates in restrictive custody shall have access
to legal paper, writing utensils and carbon paper for the
purpose of preparing legal pleadings.   Unless D.C. Depart-
ment of Corrections rules provide otherwise, inmates in re-
strictive custody shall also have access to a typewriter,
paper clips and staples for the purpose of preparing legal
pleadings.   The rules for requesting materials not available
in the facility's law library shall apply to inmates in re-
strictive custody, as well as to inmates in the general pop-
ulation.   Penalties for mutilation of library materials
shall also apply to inmates in restrictive custody.   All
rules regarding the copying and mailing of legal pleadings
shall be the same for those in restrictive custody as for
those in the general population.

n.   Trained Inmate Clerks.   The District of Columbia
Department of Corrections shall provide trained inmate
clerks (legal assistants) to assist inmates in the research
of their cases, legal writing, and analysis.   At least one

**WASHINGTON DC. - DOC**

TO PAY FOR COMMISSARY ORDERS.  ID'S MUST BE VERIFIED.  ORDERS MUST BE SIGNED.

NOTE: TEMPORARY ITEMS ARE ON OFFER TILL INVENTORY LASTS

## MENU LIST FOR SOUTH 1 UNIT ONLY
THERE IS A SPENDING LIMIT OF $50.00

| Code | ITEM DESCRIPTION | Price | Limit | Code | ITEM DESCRIPTION | Price | Limit |
|---|---|---|---|---|---|---|---|
| | PERSONAL HYGIENE (13 ITEMS ON OFFER) | | | | BEVERAGE & SODA (0 ITEMS ON OFFER) | | |
| 9001 | IRISH SPRING DEODORANT SOAP 3.2oz | $0.75 | 2 | | | | |
| | | | | | | | |
| 9004 | DOVE SOAP BAR 3.17oz BARS | $0.75 | 2 | | | | |
| | | | | | | | |
| 9007 | SUAVE SHAMPOO 15oz | $2.90 | 2 | | | | |
| | | | | | | | |
| 9011 | EFFERDENT DENTURE CLEANER 90TABLET | $6.75 | 1 | | | | |
| 9012 | NOXZEMA MEDICATED SKIN CREAM 2.5oz | $2.10 | 1 | | | | |
| 9013 | COCOCARE 100% COCOA BUTTER STICK | $1.40 | 2 | | | | |
| 9017 | MAGIC REG. STRENGTH CREAM SHAVE | $5.85 | 2 | Code | SNACKS, PASTRY & SPECIAL (0 ITEMS ON OFFER) | Price | Limit |
| | | | | | | | |
| 9025 | CHAPSTICK REGULAR FLAVOR, 0.15oz | $0.75 | 2 | | | | |
| | | | | | | | |
| 9135 | LANDER ROLL-ON 1.5oz | $2.10 | 1 | | | | |
| 9136 | EXCEL DEODORANT 2.25oz | $5.25 | 1 | | | | |
| 9137 | COLGATE REGULAR TOOTHPASTE 1.5oz | $1.50 | 2 | | | | |
| 9138 | COLGATE TARTAR CONTROL TOOTHPASTE 2.7oz | $1.90 | 2 | | | | |
| Code | CANDIES (0 ITEMS ON OFFER) | Price | Limit | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Code | CLOTHING (13 ITEMS ON OFFER) | Price | Limit | | | | |
| 9108 | COTTON TUBE SOCKS WHITE ONLY | $0.80 | 3 | | | | |
| 9109 | HANDKERCHIEF SINGLE (Temporary) | $1.35 | 3 | | | | |
| 9110 | TERRYCLOTH WASHCLOTHS 12"X12" | $0.60 | 3 | | | | |
| 9111 | MEN'S UNDERPANTS BOXER L WHITE | $3.30 | 1 | | | | |
| 9112 | MEN'S UNDERPANTS BOXER XL WHITE | $3.20 | 1 | | | | |
| 9113 | MEN'S UNDERPANTS BOXER XXL WHITE | $3.20 | 1 | | | | |
| 9114 | MEN'S UNDERSHIRTS XXL WHITE | $4.40 | 1 | | | | |
| | | | | | | | |
| | | | | | | | |
| 9119 | SHOWER SHOES, CROSS STRAP, MED. | $1.40 | 1 | | | | |
| 9120 | SHOWER SHOES, CROSS STRAP, L | $1.35 | 1 | | | | |
| 9121 | SHOWER SHOES, CROSS STRAP, XL | $1.35 | 1 | Code | MISCELLANEOUS (5 ITEMS ON OFFER) | Price | Limit |
| | | | | 9102 | WRITING TABLET WHITE LINED 8.5"x11" | $0.95 | 2 |
| | | | | 9103 | ENVELOPES, GUM SEALING STD. MAILING #10  (Temporary) | $0.05 | 1 |
| | | | | 9105 | PLASTIC SOAP DISH PLASTIC 5oz SIZE | $0.05 | 1 |
| 9128 | MEN'S UNDERPANTS BOXER 4XL WHITE | $4.20 | 1 | 9106 | 2 PIECE TOOTHBRUSH HOLDER | $0.25 | 1 |
| 9129 | MEN'S UNDERSHIRTS 4XL  WHITE | $4.20 | 1 | | | | |
| 9130 | MEN'S UNDERSHIRTS 6XL WHITE | $4.40 | 1 | 9134 | POSTAGE STAMP 1st CLASS | $0.39 | 20 |

Revised 02/15/06 - S1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA        :
                                :

        v.                           :          Criminal No. 05-386(1) (ESH)
                                  :

ANTOINE JONES                  :

---

## DEFENDANT JONES' MOTION FOR LAW LIBRARY ACCESS

        DEFENDANT Antoine Jones ("Jones"), by and through undersigned counsel,

respectfully moves the Honorable Court to issue an Order providing him reasonable access to the

law library so that he may assist counsel with his defense. In support of this motion, Mr. Jones

states as follows:

## BACKGROUND

        1.      Mr. Jones has been ordered held without bond pending resolution of this

case. A trial date has not yet been set but it is anticipated that a trial will take place at the earliest

in the fall of 2006.[1]

        2.      Mr. Jones is currently in total lockdown at the D.C. Jail. He does not have

any privileges – no calls, no regular showers, no commissary, no social visits, no religious *no Phone privileg*

*Denied Legal call*

services. Relevant to this motion, he also does not have any access to the law library.

        3.      As best as can be determined, Mr. Jones is in lockdown not because of any

wrongdoing by him or any administrative sanction by the Department of Corrections, but rather

because the government requested it.

        4.      As an alternative to obtaining access to a law library at the D.C. Jail, by

Court Order, Mr. Jones requests that the Court consider ordering him placed at the Community

---

[1] This is especially so since the government has already moved to exclude a period of 180 from the calculation of
time within which this case must be tried and the Court is likely to grant the government's motion.

*Defendant*

Correctional Facility ("CTF") to avoid the government's separation orders so as to allow him general population status.

        5.     In any event, should the Court not consider movement to CTF, and in light of the seriousness of the charges brought against Mr. Jones, he must have meaningful regular access to the law library to fully participate in and prepare in his defense and to assist counsel.

## ARGUMENT

        6.     The Sixth Amendment to the U.S. Constitution as well as the Equal Protection Clause guarantees a criminal defendant the assistance of counsel in the preparation of his defense. The Supreme Court has held also that a defendant enjoys a constitutionally protected right to meaningful access to the courts, which includes reasonable law library access, paper and pens at government expense. See Bounds v. Smith, 430 U.S. 817 (1977). The Bounds decision made it quite clear that the government must shoulder affirmative obligations in order to assure meaningful access to the courts.

        7.     Further, as held in Lindquist v. Idaho State Bd. Of Corrections, 776 F, 2d 851, 858 (9th Cir. 1985), the existence of an adequate law library does not provide for meaningful access to the Courts if the inmates are not allowed a reasonable amount of time to use the library.

        8.     There can be no doubt that Mr. Jones, without any justification from the government, has already been damaged and will continued to be damaged if he is not able to assist his defense counsel and adequately prepare for trial. As courts have noted, "access" must be "meaningful access." Alston v. Debruyn, 13 F. 3d 1036, 1041 (7th Cir. 1994). See also Bounds, 430 U.S. at 823.

Dated: Washington, DC
  December 18, 2005     Respectfully submitted,

         **LAW OFFICE OF A. EDUARDO BALAREZO**


       By: _____
         A. Eduardo Balarezo (Bar # 462659)
         400 Fifth Street, NW
         Suite 300
         Washington, DC  20001
         (202) 639-0999

         *Attorney for Defendant Antoine Jones*

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of December 2005, I caused a true and correct copy of the foregoing Defendant Jones' Motion for Law Library Access to be delivered to the parties in this matter via Electronic Case Filing (ECF).

_____

A. Eduardo Balarezo

4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                                    :

       v.                          :     Criminal No. 05-386(1) (ESH)
                                      :

ANTOINE JONES                 :

---

## DEFENDANT JONES' MOTION FOR ORDER PROHIBITING GOVERNMENT FROM TRANSFERRING DEFENDANT TO A DETENTION FACILITY OUTSIDE THE DISTRICT OF COLUMBIA

      Defendant Antoine Jones ("Jones"), by and though undersigned counsel, and

pursuant to the Sixth Amendment to United States Constitution hereby respectfully moves this

Court for an Order prohibiting the government from requesting his transfer to a detention facility

outside the District of Columbia. In support of this Motion, Mr. Jones states as follows:

      1.     Mr. Jones is currently held without bond pending trial in this case. He is

currently detained at the District of Columbia Jail and is under total "lock down" at the request

of the government.

      2.     As a result of the lockdown, Mr. Jones previously moved the Court to

order that he have regular access to the Jail's law library. At the last status hearing, the

government orally opposed this request and the Court did not rule on the motion. However, after

the hearing, the government proffered to counsel additional reasons why it opposed the motion

and why it may seek to have Mr. Jones moved from the Jail to a facility outside the District of

Columbia.

      3.     As the Court is aware, this is a complex case in which there is a vast

amount of discovery – including approximately 6000 recorded calls from Mr. Jones' cell phone.

*This the real reason*
*Date Jan 3, 2006*

*Defendant*

It is imperative that Mr. Jones be able to consult with counsel and review the discovery so that he can assist counsel in preparing for trial.

       4.     As a basic matter, the Sixth Amendment to the United States Constitution guarantees Mr. Jones the right to have the assistance of counsel for his defense. Having Mr. Jones held at the District of Columbia Jail is essential in this regard. Counsel has had other experiences where the government has requested that inmates be moved and they have been sent as far as Orange, Virginia, a two-hour drive each way. Such a situation would needlessly prejudice Mr. Jones and place a great strain on his ability to consult with counsel.

       5.     Mr. Jones is not aware an actual government request to have him moved, and the issue may not be ripe. Nevertheless, Mr. Jones files this motion prophylactically in the event the government does seek to have him moved to a facility outside the District of Columbia.

       **WHEREFORE** for the foregoing reasons, and any others that may appear to the Court, Mr. Jones respectfully requests that this Motion be **GRANTED**.

Dated: Washington, DC
      January 3, 2006               Respectfully submitted,

                           **LAW OFFICE OF A. EDUARDO BALAREZO**

By: _____
          A. Eduardo Balarezo (Bar # 462659)
          400 Fifth Street, NW
          Suite 300
          Washington, DC  20001
          (202) 639-0999

          *Attorney for Defendant Antoine Jones*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of January 2006, I caused a true and correct copy of the foregoing  Defendant Jones' Motion for Order Prohibiting Government from Transferring Defendant to a Detention Facility Outside the District of Columbia to be delivered to the parties in this matter via Electronic Case Filing (ECF).


_____
A. Eduardo Balarezo

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 05-386(1) (ESH) |
| | : | |
| ANTOINE JONES | : | |

## ORDER

Upon consideration of Defendant Jones' Motion for Order Prohibiting

Government from Transferring Defendant to a Detention Facility Outside the District of

Columbia, and any opposition thereto, it is this _____ day of _____ 2006, it is hereby

      **ORDERED**, that this Motion is **GRANTED**; and it is further

      **ORDERED**, that the United States is hereby Ordered not to have Defendant

Antoine Jones transferred from the District of Columbia Jail to any detention facility outside of

the District of Columbia.


                                           _____
                                           **ELLEN SEGAL HUVELLE**
                                           **UNITED STATES DISTRICT JUDGE**

cc:

A. Eduardo Balarezo, Esq.
Law Office of A. Eduardo Balarezo
400 Fifth Street, N.W.
Suite 300
Washington, D.C. 20001

U.S. Attorney's Office
555 4th Street, NW
Washington, DC 20530

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                 :
     v.              :      Case No. 05-CR-386(1) (ESH)
                 :
ANTOINE JONES          :

## DEFENDANT JONES' MOTION FOR MODIFICATION
## OF CONDITIONS OF DETENTION

     Defendant Antoine Jones ("Jones"), by and through undersigned counsel, respectfully moves the Honorable Court to issue an Order directing the Warden, Central Detention Facility to restore Mr. Jones' privileges and to modify his harsh conditions of confinement. In support of this motion, Mr. Jones states as follows:

### BACKGROUND

     1.      The Court has ordered Mr. Jones held without bond since his presentment on October 25, 2005. A trial date has not yet been set but it is anticipated that a trial will take place at the earliest in the fall of 2006.

     2.      Mr. Jones has been on total lockdown at the D.C. Jail since December 1, 2005. This means that his privileges are severely restricted: no telephone calls, no regular showers, no social visits, no religious services; no meaningful access to the law library. *No Mail Privilege* Additionally, Mr. Jones is locked down in his cell 23 hours per day and when he is allowed to leave his cell, it can be only when all other inmates in his unit are in their cells. Additionally, Mr. Jones is housed in a jail unit that holds individuals accused of violent crimes such as rape and murder. This information was gathered from case managers at the facility.

     3.      As best as can be determined, Mr. Jones is in lockdown not because of any wrongdoing by him or any administrative sanction by the Department of Corrections, but rather

*Date Feb 26 2006*
*important notes p 62*

*Defendant*

because the government requested it. When counsel communicated with the case managers he requested information regarding why Mr. Jones was being held under such harsh conditions. None of the case managers would provide that information. However, Mr. Jones has been told that the government directed the Department of Corrections to impose such conditions although no one at the jail will give him that information in writing.

      4.     Although "prison officials are entitled to impose upon a detainee whatever restrictions or disabilities are reasonably necessary to ensure the internal security of the institution and to effect his eventual presence at trial; restrictions or conditions that are intended as punishment, however, or that are not 'reasonably related to a legitimate governmental objective' violate due process." Brogsdale v. Barry, 926 F.2d 1184, 1190 (D.C. Cir. 1991) (quoting Bell v. Wolfish, 441 U.S. 520, 536-40 (1979)).

      5.     The harsh conditions under which Mr. Jones is being held are infringing upon his Constitutional rights to assist counsel with his defense because he is being prevented from contacting counsel (he is denied legal calls); from contacting possible witnesses (he is denied social calls); from researching his case (has very limited access to the law library, and then can only request books that are rarely delivered to him). Additionally, at the beginning of this case, counsel asked Mr. Jones to make a list of all the individuals who may have information regarding this case. Mr. Jones did so, but before he could provide the list to counsel, the government searched his cell and seized the list. Since that time, counsel has advised Mr. Jones to not write anything down for fear that the government will again enter his cell and seize privileged material. Clearly, such governmental intrusions have a chilling effect on the attorney-client relationship. *Important*

2

6.      Mr. Jones' conditions of confinement do not appear reasonably necessary to ensure internal security at the jail nor to effect his presence at trial, and there is no evidence that they are reasonably related to a legitimate governmental objective. The conditions appear to be solely punitive in nature and thus violate his due process rights.

4.      Notwithstanding his current bond condition, Mr. Jones is presumed innocent and his harsh conditions of pretrial detention are unjust, unwarranted and are solely designed to punish him.

WHEREFORE, for the foregoing reasons Mr. Jones respectfully moves the Honorable Court to issue an Order directing the Warden, Central Detention Facility to restore Mr. Jones' privileges and to modify his harsh conditions of confinement to the least restrictive conditions.

A HEARING ON THIS MOTION IS REQUESTED.

Dated: Washington, DC
        February 26, 2006                   Respectfully submitted,

                              **LAW OFFICE OF A. EDUARDO BALAREZO**


By: _____
        A. Eduardo Balarezo (Bar # 462659)
        400 Fifth Street, NW
        Suite 300
        Washington, DC 20001
        (202) 639-0999

        *Counsel for Antoine Jones*

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of February 2006, I caused a true and

correct copy of the foregoing Defendant Jones' Motion for Modification of Conditions of

Confinement to the parties in this matter via Electronic Case Filing (ECF).


_____

A. Eduardo Balarezo

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA     :     **Criminal No.:** 05-386-1(ESH)

                         : 

             v.                  : 

                         : 

ANTOINE JONES                : 

                         : 

      Defendant.         : 

## GOVERNMENT'S SUPPLEMENTAL FILING CONCERNING CONDITIONS OF CONFINEMENT

The United States, by its counsel, the United States Attorney for the District of Columbia,

supplements its opposition to the defendant's motion for modification of conditions of

confinement as follows:

A hearing on the defendant's motion to modify conditions of confinement is set for

Friday, March 24, 2006. In anticipation of that hearing the United States wishes to provide the

Court and counsel with both a summary of the evidence it intends to present at the hearing or

under seal  and a proposal.

### I. OUTLINE OF EVIDENCE

**A. Affidavit Under Seal**

An affidavit under seal has been provided to the clerk's office concerning information

derived from or about confidential sources.

**B. Jail Calls**

Over the course of his incarceration at the District of Columbia Jail, Jones has made

numerous telephone calls, which were recorded by the Jail.  Among those calls were several to

Beverly Johnson, who has been identified both in calls intercepted on the wiretap and in calls

MARCH 24 2006

THIS ONE!!!

intercepted from the jail, as a romantic interest of Jones. In one call at 10:10 p.m on November 3,

2005 Jones asks Johnson to try and located a co-conspirator. Johnson indicates she know

someone in the warden's office who can help. ← *misstatement*

### C. Johnson's Letter

When Jones' jail cell was searched on November 23, 2005, a letter from Johnson to

Jones was located. The last paragraph provides the location in jail for an unindicted co- *Defense witness*

conspirator. In the same paragraph Johnson reports that another unindicted co-conspirator is "on

the street last they know." Johnson also states that this second co-conspirator has reportedly

"been snitching". This letter is attached at A.

*Where is the obstruction of justice? I was looking for potential witness on my behalf, on the direction from my lawyer.*

---

[1] Although not specifically mentioning possible witnesses there were several jail calls to Deborah O'Neal, who has been identified both in calls intercepted on the wiretap and in calls intercepted from the jail, as another romantic interest of Jones. In one such telephone call, on November 3, 2005 at approximately 9:16 p.m., Jones told O'Neal that he had sent her a few letters from the jail. In particular, he mentioned that when she gets letters with another name on them, she should hold onto the letters and give them to "Lawrence" because "Lawrence" knows what to do with them. At this time Lawrence Maynard had not been arrested or indicted. Later in this approximately 15 minute telephone call, Jones reminds O'Neal that when she gets letters without her name on them, she should just hold them. In a later call to O'Neal, on November 6, 2005, at approximately 11:57 a.m., Jones and O'Neal discuss "Lawrence" at some length. Jones told O'Neal to tell "Lawrence" to write to him and let him know what was going on, because he doesn't want to be "in the blind." *Gather information on the case and the club business.*

In numerous conversations with his wife, Deniece Jones, Jones is heard urging her to get in contact with Maynard to tell him that Jones needs to speak with him. On a few occasions, Jones asks his wife to call Maynard on her cellular telephone, while Jones' call from the jail is underway on the landline. Jones repeatedly tells his wife to tell Maynard to come out to the jail to visit him. *He's a friend, my operational manager.*

When interviewed by agents of the FBI Johnson acknowledged that she had obtained this information at Jones' request. Johnson indicated she was unaware of what Jones intended to do with the information.

### D. List of possible witnesses

Also seized from Jones' cell was a list which seemed to outline individuals Jones considered as potential witnesses. The page is attached as Tab B-1. Another seized page has enteries including a numbered list that appears to have the names os suspected cooperators. That page is attached as Tab B-2.

## II. ALTERNATE CONDITIONS OF CONFINEMENT

The office of the United States Attorney has spoken with the Marshall's Office concerning the possibility of an alternative to Jones' present conditions of confinement which would alleviate the government's security concerns while providing the defendant with a less restrictive environment. The Marshall's Office has suggested the possibility of housing the defendant in the general population at a facility outside of the District, most probably Orange or Northern Neck. There would be additional conditions which would not restrict the defendant's movements beyond that of other general population inmates, but would give some further comfort to the government. That would be acceptable to the United States.

Respectfully submitted,

Kenneth L. Wainstein
United States Attorney
D.C. Bar No. 451058

3

By:_____

John V. Geise
Assistant United States Attorney
D.C. Bar No. 358267
Organized Crime and Narcotics Trafficking
555 4th Street, N.W., Room 4126
Washington, D.C.  20530
(202) 616-9156; Fax: 514-8707

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing by ECF upon counsel for the defendant, this    day of March, 2006.

_____
John V. Geise

4







Hey,

It's me Beverly. Miss You. I guess things didn't work out like I wanted them too. I recieve your letter Tuesday 20th I wanted all night hoping you where going to knock on my door Wednesday night But coming home Thursday after seven and see that you call. I know you didn't make it home. I miss you. Right now I'm crying because I'm going through a little stress. And my son is not making it any better with getting me trouble with the police. I already have one son in jail and keep telling him, it's not a good place to be.

I wish you where here holding me just holding me close to you, oh I miss you! You must think I crazy keep saying I miss you, but I do. Could you tell me what's doing on. I wanted to come to court but I know your wife was going to be there, and I did not

NOV 25 2005

unwanted to look strange. But
I don't. I see you calling me
but a good time to call is after
seven P.M Monday thru Saturday
and starting December after 8:00
pm because of x-mas. You know
my job its finish until all the
mail is deliver.

The information on Donald
Hunter. He is in NE 2. Yes he's
over there and Kevin Ray is
bald head and hes on the
street last they know. Something
else. I remember when he had
a big case and they or the
word was going around that
he's been snitching because
he seem to come home on them
Now I'm sitting here hoping
you call before your phone
time is up



Take Care
Because I Care
B___y

Receive letter on Nov 23



Important
information to
prepare for case



B-2

Post notes

Information to prepare for
my case

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                          :
         v.                   :      Case No. 05-CR-386(1) (ESH)
                          :

ANTOINE JONES                :

## DEFENDANT JONES' REPLY TO GOVERNMENT'S SUPPLEMENTAL FILING CONCERNING CONDITIONS OF CONFINEMENT

Defendant Antoine Jones ("Jones"), by and through undersigned counsel, respectfully replies to the government's Supplemental Filing Concerning Conditions of Confinement.

## FACTS

1. On February 26, 2006, Mr. Jones filed his Motion for Modification of Conditions of Confinement seeking to undo the government's unwarranted imposition of harsh conditions of confinement.

2. The government filed an opposition on March 16, 2006, citing nebulous and unsupported "rumors" reported by a confidential source that the "guys from Levels" wanted to harm a suspected cooperator. The government also cited a letter from a friend of Mr. Jones informing him of the whereabouts of a suspected cooperator. Finally, the government pointed to a list of names found in Mr. Jones' cell during a search to suggest that Mr. Jones may pose a danger to government witnesses.

3. As counsel has represented to the Court previously, as part of his investigation of this case, counsel asked Mr. Jones to provide him with information concerning possible witnesses, informants, cooperators and adverse witnesses. This is standard procedure and there is nothing illegal or unethical about the request.

*Feb 26 2006*

*Defendant*

4.   On the eve of the hearing on Mr. Jones' motion, the government submitted a supplemental filing re-alleging its anemic assertions and suggesting alternative conditions of confinement for Mr. Jones.

## ARGUMENT

5.   The government outlines four items of evidence that it alleges supports its imposition of harsh conditions of detention on Mr. Jones:

     a.   <u>Affidavit Under Seal</u> – apparently this affidavit deals with information derived from confidential sources.  Clearly, Mr. Jones cannot respond to the affidavit.  However, if the affidavit does nothing more than allege unfounded "rumors" it is not sufficient to justify the conditions imposed on Mr. Jones.

     b.   <u>Jail Calls</u> – the government specifically cites a November 3, 2005, intercepted jail communication by Mr. Jones to a friend.  In that call, Mr. Jones supposedly asks the friend to locate an alleged co-conspirator.  The government fails to articulate any set of facts that indicate that Mr. Jones sought to harm the alleged co-conspirator.  Additionally, the government spends half a page describing how Mr. Jones went about trying to communicate with "Lawrence."  This is in no way unusual given that "Lawrence" was Mr. Jones' club manager who could maintain club operations while Mr. Jones was incarcerated.

     c.   <u>Johnson's Letter</u> – the government cites a seized letter from a friend of Mr. Jones telling him the location of an unindicted coconspirator and informing Mr. Jones that the unindicted coconspirator may be

2

cooperating with the government. Again, the government utterly fails

to state any set of facts that indicate Mr. Jones sought to do harm to the

individual.

    d.   List of Possible Witnesses – the government cites to two lists seized

from Mr. Jones' cell apparently containing the names of possible

witnesses and suspected cooperators. As is noted, *supra*, counsel

specifically asked Mr. Jones to provide him with this information so

that counsel could properly investigate this matter and prepare for trial.

Again, the government fails to articulate any set of facts that indicate

Mr. Jones was seeking to harm anyone. All the government succeeds

in doing is disrupting and intruding upon the attorney-client

relationship.

6.    Seemingly aware of its failure to offer any support its imposition of harsh

conditions of detention upon Mr. Jones, the government suggests alternative conditions of

confinement that "would alleviate the government's security concerns while providing the

defendant with a less restrictive environment." This is a strange statement given that the

government has failed to articulate any legitimate security concerns in the first place.

7.    Mr. Jones adamantly opposes the government's suggestion that he be

transferred to detention facilities in Orange or Northern Neck in Virginia. The Central Virginia

Regional Jail (Orange, VA) is approximately 90 miles and almost two hours driving time from

counsel's office. The Northern Neck Regional Jail (Warsaw, VA) is over 100 miles and over

two hours driving time from counsel's office. (see attached "Mapquest" printouts). These are

one-way distances. If Mr. Jones were to be transferred to either facility, counsel would have to

3

drive approximately 200 miles and four hours merely to meet with Mr. Jones. A normal visit with Mr. Jones would turn into a day-long affair. Such a situation would clearly impinge upon Mr. Jones' ability to consult with and assist counsel and would impose an undue burden on counsel. Additionally, it would impose an undue burden on any friends or family of Mr. Jones that may wish to visit him.

       8.    The government's concern apparently stems from Mr. Jones' communications with persons outside the jail, not with any persons inside the jail. Thus, transferring Mr. Jones would not alleviate the government's illusory concerns because he would presumably still be able to communicate with the outside world. The only thing that would be different is that he would be 200 miles away.

       WHEREFORE, for the foregoing reasons and any that may become apparent to the Court, Mr. Jones respectfully moves the Honorable Court to issue an Order directing the Warden, Central Detention Facility (D.C. Jail) to restore Mr. Jones' privileges and to modify his harsh conditions of confinement to the least restrictive conditions of confinement. Alternatively, Mr. Jones requests that he be transferred to the Correctional Treatment Facility (CTF).

Dated: Washington, DC
     March 23, 2006              Respectfully submitted,

                      **LAW OFFICE OF A. EDUARDO BALAREZO**

           By: _____
               A. Eduardo Balarezo (Bar # 462659)
               400 Fifth Street, NW
               Suite 300
               Washington, DC 20001
               (202) 639-0999

               *Counsel for Antoine Jones*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March 2006, I caused a true and correct copy of the foregoing Defendant Jones' Reply to Government's Supplemental Filing Concerning Conditions of Confinement to the parties in this matter via Electronic Case Filing (ECF).

_____

A. Eduardo Balarezo

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March 2006, I caused a true and correct copy of the foregoing Defendant Jones' Reply to Government's Supplemental Filing Concerning Conditions of Confinement to the parties in this matter via Electronic Case Filing (ECF).

_____

A. Eduardo Balarezo

5

Driving Directions from 400 5th St Nw, Washington, DC to 3908 R...    http://www.yellowpages.com/directions/main.adp?do=prt&mo=ma&2s..
Case 1:05-cv-00566-ESH    Document 94    Filed 03/23/2006    Page 1 of 2

# - MAPQUEST -

**Start:** **400 5th St Nw**
Washington, DC 20001-2719,
US

**End:** **3908 Richmond Rd**
Warsaw, VA 22572, US

**Notes:**
NORTHERN NECK REGIONAL JAIL



| Directions | Distance |
|---|---|
| **Total Est. Time:** 2 hours, 5 minutes 108.96 miles | **Total Est. Distance:** |
| **1:** Start out going SOUTH on 5TH ST NW toward D ST NW. | <0.1 miles |
| **2:** Turn LEFT onto D ST NW. | 0.2 miles |
| **3:** Merge onto I-395 S. | 12.8 miles |
| **4:** I-395 S becomes I-95 S. | 43.8 miles |
| **5:** Take the US-1 / US-17 S exit- EXIT 126- toward MASSAPONAX. | 0.3 miles |
| **6:** Turn RIGHT onto JEFFERSON DAVIS HWY / US-17 S / US-1 S. | 0.5 miles |
| **7:** Turn LEFT onto MILLS DR / US-17. Continue to follow US-17 S. | 46.3 miles |
| **8:** Turn LEFT onto US-360 / QUEEN ST. Continue to follow US-360 E. | 4.7 miles |
| **9:** End at **3908 Richmond Rd** Warsaw, VA 22572, US | |
| **Total Est. Time:** 2 hours, 5 minutes 108.96 miles | **Total Est. Distance:** |

3/23/2006 10:27 PM

Driving Directions from 400 5th St Nw Washington DC 20001 ... http://www.mapquest.com/directions/main.adp?do=prt&mc=ma&2s...
Case 1:05-cv-0096-EGH Document 94 Filed 03/23/06 Page 2 of 2

## MAPQUEST

**Home Loans** — **LoanWeb**
Start Here

- Pre-Qualify For a Loan
- How Much Can I Borrow?
- What Will My Payments Be?
- 15 or 30 Year Term

Loan Type: Refinance
Loan Amount: $150,000
Area Code: 310   Find

- Refinance
- Home Equity
- Consolidate Debts
- Home Improvement

**Start:** **400 5th St Nw**
Washington, DC 20001-2719, US

**End:** **13021 James Madison Hwy**
Orange, VA 22960-2807, US

**Notes:**
CENTRAL VIRGINIA REGIONAL JAIL
(ORANGE)

| Directions | Distance |
|---|---|
| **Total Est. Time: 1 hour, 42 minutes** **Total Est. Distance:** 89.17 miles | |
| **1:** Start out going SOUTH on 5TH ST NW toward D ST NW. | <0.1 miles |
| **2:** Turn LEFT onto D ST NW. | 0.2 miles |
| **3:** Merge onto I-395 S. | 12.8 miles |
| **4:** I-395 S becomes I-95 S. | 39.5 miles |
| **5:** Merge onto VA-3 W via EXIT 130B toward CULPEPER. | 12.8 miles |
| **6:** Turn LEFT onto VA-20 / CONSTITUTION HWY. Continue to follow VA-20. | 22.2 miles |
| **7:** Turn LEFT onto US-15 / CAROLINE ST. Continue to follow US-15 S. | 1.2 miles |
| **8:** Make a U-TURN onto JAMES MADISON HWY / US-15 N. | <0.1 miles |
| **9:** End at **13021 James Madison Hwy** Orange, VA 22960-2807, US | |
| **Total Est. Time: 1 hour, 42 minutes** | **Total Est. Distance:** 89.17 miles |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **Criminal No. 05-386(1) (ESH)** |
| | : | |
| v. | : | |
| | : | |
| ANTOINE JONES | : | |
| Defendant. | : | |

## SUPPLEMENTAL INFORMATION CONCERNING CONDITIONS OF DETENTION

Comes now the United States of America by its counsel, Kenneth L. Wainstein, United States Attorney for the District of Columbia, John V. Geise, Assistant United States Attorney, and says as follows:

At a hearing on March 24, 2006 concerning the conditions of detention of defendant Jones the Court asked counsel for the United States to obtain additional information from the Office of the United States Marshall concerning the availability of alternate facilities for housing the defendant and the conditions that those institutions are able to impose. Counsel has spoken with the prisoner operations section of the Marshal's office which has told counsel as follows.

The facilities in Alexandria and Arlington are presently not accepting more federal prisoners from the District of Columbia. Also, those facilities are generally reluctant to take any federal inmates who require special treatment or additional levels of supervision.

The District of Columbia Jail has no intermediate level of isolation between general population and the defendant's present lock down status. The jail would probably be unable to make copies of the defendant's incoming and outgoing mail. The jail could provide visitor logs but does not record meetings with visitors. The jail does record phone calls.

Government

The facilities at Orange and Northern Neck would house the defendant in the general population. They would copy ingoing and outgoing envelopes if requested to do so. They would provide visitor logs and record phone calls.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar No.: 451058

BY: _____

JOHN V. GEISE
ASSISTANT UNITED STATES ATTORNEY
D.C. Bar No. 358267
Organized Crime and Narcotics Trafficking
555 4th Street, N.W., Room 4126
Washington, D.C. 20530
(202) 616-9156; Fax: 514-8707

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing by ECF upon counsel for the defendant, this 29th day of March, 2006.

_____

JOHN V. GEISE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 2 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | )     Criminal No. 05-0386 (ESH) |
| | ) |
| ANTOINE JONES, *et al.*, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Upon consideration of Defendant Jones' Motion for Modification of Conditions of Detention [# 76], the government's response thereto [# 85] and supplemental filings [# 93, 96], and defendant's Reply [# 94], as well as oral argument from both parties, it is hereby

**ORDERED** that the motion is **GRANTED** insofar as defendant should no longer be in total lockdown, but the following conditions shall be imposed: the D.C. jail is to record defendant's phone calls and monitor his incoming mail (with the exception of calls and mail from his attorney, Eduardo Balarezo, and his investigator, Mark Glick); and defendant's social visits shall be limited to his attorney, Eduardo Balarezo; his investigator, Mark Glick; and his wife, Deniece Jones.

It is further **ORDERED** that defendant's Motion for Law Library Access [# 50], is **DENIED** as moot.

*Ellen S Huvelle*

ELLEN SEGAL HUVELLE
United States District Judge

April 24, 2006

CC:   D.C. Jail

F
07-1027
ESH

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I. (a) PLAINTIFFS

ANTOINE JONES

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___11001___
(EXCEPT IN U.S. PLAINTIFF CASES)

, PRO SE (PR)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

### DEFENDANTS

RACHEL LIEBER, ET AL

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Case: 1:07-cv-01027
Assigned To : Huvelle, Ellen S.
Assign. Date : 6/8/2007
Description: Pro Se Gen. Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☑ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

### Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

### Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

### Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

<table>
<tr><td>

☐ G. *Habeas Corpus 2255*

☐ 530 Habeas Corpus-General
☐ 510 Motion/Vacate Sentence

</td><td>

☐ H. *Employment Discrimination*

☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)

*(If pro se, select this deck)*

</td><td>

☐ I. *FOIA/PRIVACY ACT*

☐ 895 Freedom of Information Act
☐ 890 Other Statutory Actions (if Privacy Act)

*(If pro se, select this deck)*

</td><td>

☐ J. *Student Loan*

☐ 152 Recovery of Defaulted Student Loans (excluding veterans)

</td></tr>
<tr><td>

☐ K. *Labor/ERISA (non-employment)*

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Labor Railway Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

</td><td>

☐ L. *Other Civil Rights (non-employment)*

☐ 441 Voting (if not Voting Rights Act)
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights
☐ 445 American w/Disabilities-Employment
☐ 446 Americans w/Disabilities-Other

</td><td>

☐ M. *Contract*

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholder's Suits
☐ 190 Other Contracts
☐ 195 Contract Product Liability
☐ 196 Franchise

</td><td>

☐ N. *Three-Judge Court*

☐ 441 Civil Rights-Voting (if Voting Rights Act)

</td></tr>
</table>

**V. ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES   ☐ NO   If yes, please complete related case form.

DATE _JuNE 8, 2007_   SIGNATURE OF ATTORNEY OF RECORD _NeW_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd