UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOINE JONES, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 07-1027 (RJL) |
| | ) |
| v. | ) |
| | ) |
| RACHEL LIEBER, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## FEDERAL DEFENDANT'S MOTION TO DISMISS PLAINTIFF COMPLAINT

The Federal Defendant, by and through their attorney, the United States Attorney for the

District of Columbia, hereby moves to dismiss this case for Failure to State a Claim under Fed.

R. Civ. P. 12(b)(6). This motion is accompanied by Memorandum and Proposed Order

consistent with LcvR 7(a) and (c).

*Pro se* Plaintiff will take note that if he fails to respond to this motion to dismiss, the

Court may grant this motion and dismiss his case because of his failure to respond. *See Fox v.*

*Strickland*, 837 F.2d 507 (D.C. Cir. 1988).

October 5, 2007                          Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4210
Washington, D.C. 20530
(202) 514-7157

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANTOINE JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 07-1027 (RJL)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RACHEL LIEBER, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Antoine Jones, Register Number, DCDC 241-912, *pro se* in this action ("Plaintiff"), is a pretrial detainee incarcerated at the District of Columbia Jail in Washington, D.C. On or about June 8, 2007, Plaintiff commenced this action against Rachel Lieber ("Federal Defendant"), one of two Assistant United States Attorneys prosecuting Plaintiff for Conspiracy to Distribute and Possess with Intent to Distribute Controlled Dangerous Substances.[1] Using a form captioned Complaint for Violation of Civil Rights under 42 U.S.C. 1983 with an attached document titled "complaint," Plaintiff alleges that Federal Defendant violated his First, Eighth and Fourteenth amendment constitutional rights by "giv[ing] the order...to place [him] in S-1, maximum security, under total separation" with no mail, phone or visiting privileges. *Pl. Compl.* at 5.

---

[1]    In another matter captioned *Jones v. Yanta*, 07-1172 (HHK), Plaintiff alleges civil rights violations against John Giese, the other United States Attorney prosecuting him. Federal Defendant is also named in that matter along with Federal Bureau of Investigation Special Agent, Stephanie E. Yanta. In the *Yanta* matter, Plaintiff raises claims that have twice been rejected in his criminal prosecution. The issues raised in the *Yanta* matter are related but not identical to those raised here.

Specifically, Plaintiff alleges that his placement in total separation violated his due process rights because he was not permitted a hearing beforehand. Furthermore, he alleges vaguely that "prosecutorial interference" has affected his ability to prepare for his upcoming trial and prevented access to religious services. Although Plaintiff appears to allege a violation of his Eighth amendment rights arising from his alleged placement in a holding cell for four hours, he makes no specific allegations against the Federal Defendant. Also named as defendants in this matter are Norma Horne, a Narcotics Detective with the District of Columbia Police Department and Dennis Harrison, who is sued in his capacity as the Acting Warden of the District of Columbia Jail. Plaintiff alleges without factual support that Detective Horne's affidavit, dated November 22, 2005, in support of a search warrant of his cell was fabricated and that Warden Harrison was in charge when he was put in protective custody. *Id.*

Plaintiff is requesting relief in the form of a jury trial and money damages in the sum of $1,000,000. He does not specify from whom he seeks monetary damages nor does he specify that he is suing defendants in their individual capacities. *Id.* The only specific relief Plaintiff seeks against Federal Defendant is "disbarment or suspension."

## I. FACTUAL BACKGROUND

### A.     Investigation Into Plaintiff's Illicit Activities

In late 2004, Investigators obtained information from confidential sources that Plaintiff was operating a narcotics trafficking organization in the greater Metropolitan Washington, D.C. area and elsewhere with his trusted associate Lawrence Maynard. *See* attached to Pl. Compl. Affidavit of Norma Horne in Support of Application for Search Warrant, dated November 22, 2005 ("Horne Aff."). Plaintiff is the sole proprietor of "LEVELS," a nightclub located at 1960

2

Montana Avenue, N.E., Washington, D.C. *Id.* Sources told Investigators that Plaintiff used the nightclub as a location where he often conducted his drug-trafficking activities, distributing kilogram quantities of cocaine and collecting substantial amounts of money, as well as that he laundered drug trafficking proceeds through the nightclub.[2] *Horne Aff. at 5.* The sources also revealed that Plaintiff maintained a discreet operation, and limited his contacts to individuals known to him personally, or introduced to him by trusted, well known associates. *Id.* at 6.

Accordingly, Law Enforcement commenced an investigation into Plaintiff's illicit activities. As part of the investigation, on September 2, 2005, Investigators obtained an order to intercept Plaintiff's cellular telephone conversations authorized by the Honorable Paul L. Friedman. *Id.* at 9. As a result of the intercepts, Investigators were able to identify a core group of individuals including Plaintiff who engaged in short encrypted conversations of a suspicious nature involving "tickets, VIP tickets, flyers and math homework." *Id.* Shortly after many such calls, surveillance revealed Plaintiff meeting with individuals to exchange suspicious packages believed to be money and drugs. *Id.* at 9-10. Also, after many such telephone calls, surveillance revealed Plaintiff meeting individuals in, Fort Washington, Maryland exchanging suspicious packages and then meeting other individuals believed to be Plaintiff's customers in rapid succession immediately thereafter. *Id.* at 10.

During the investigation, on or about April 5, 2005, a Highway Interdiction Unit of Durham, North Carolina Police Department conducted a traffic stop of a 1997 Honda Odyssey mini-van operated by Maynard. *Id.* at 7 A check revealed the vehicle was registered to the

---

[2]     According to records on file with the District of Columbia Alcoholic Beverage Regulatory Agency (ABRA), Lawrence Maynard is listed as the "A.B.C. Manager" of the nightclub. *Horne Aff.* at 5-6.

Plaintiff, with a birth date of February 25, 1960, and to one of his two residences, 12221 Brandywine Road, Brandywine, Maryland. *Id.* The interdiction canine unit alerted to the right rear passenger area of the mini-van which revealed a hidden compartment containing six white Target shopping bags containing a total of $67,115.00 in U.S. currency. *Id.* at 7-8. Maynard and a passenger in the vehicle possessed approximately $5,000.00 between them. *Id.*

On October 24, 2005, a number of sealed search warrants were executed at various locations throughout the Washington, D.C. area. *Id.* at 11. As a result, nine individuals were arrested including one individual who was photographed in Plaintiff's vehicle. *Id.* Investigators recovered from the Fort Washington stash house where Plaintiff was often seen, ninety-seven kilograms of cocaine powder, three kilograms of crack cocaine and $834,520. *Id.* Additionally, investigators recovered a gun from Plaintiff's nightclub and $69,000 was recovered from the Plaintiff's vehicle. *Id.*

### B.    Plaintiff's Prohibited Conduct Since Incarceration

Since his arrest, Investigators have uncovered Plaintiff's attempts to remain in contact with associates in the community. *Id.* On November 3, 2005, Plaintiff called Deborah O'Neal, one of his many romantic interests, to inform her that he had sent her letters with other peoples' names on them and to give same to Maynard upon receipt or hold them pending further instructions. *Id.* On November 6, 2005, Plaintiff again called Deborah O'Neal to tell her to notify "[Maynard] to write to him and let him know what was going on because he doesn't want to be "in the blind." Also, Plaintiff was overheard telling his wife, Deniece, to contact Maynard on his behalf or to call Maynard on her cell phone while Plaintiff was on the land line with her. *Id.* at 12. Investigators believed that these were efforts to conceal his communications with

4

members of his illegal narcotics-trafficking operation. *Id.*

When Plaintiff's cell was searched on November 23, 2005, Investigators uncovered letters from Beverly Johnson, another romantic interest, indicating the whereabouts of an unindicted co-conspirator and that another unindicted co-conspirator had reportedly "been snitching." *See* attached to Plaintiff's complaint, Government's Supplemental Filing Concerning Conditions of Confinement at 2. A list of suspected cooperators with the Government was also discovered. *Id.* Based on the results of the search, Federal Defendant immediately contacted the Warden to request that Plaintiff be placed in protective custody in order to protect the integrity of the Government's investigation and to prevent any possible harm to innocent witnesses. *See* attached to Plaintiff's Complaint, Memorandum Request dated December 22, 2005. Nine days later, on December 2, 2005, Federal Defendant learned that Plaintiff continued to make telephone calls and confirmed that Plaintiff somehow had not been placed in protective custody. *Id.* Federal Defendant therefore renewed her request. *Id.* Even after Plaintiff was placed in protective custody, he continued to have telephone privileges. *Id.* Therefore, on December 22, 2005, the Warden was notified to ensure that the purpose of being in protective custody was not undermined. *See* Attached to Plaintiff's Complaint, Memorandum dated December 22, 2005. On April 24, 2006, the Court entered an order returning Plaintiff to population but with the caveat that Plaintiff's mail and telephone calls should be monitored and that his visits be limited to his attorney, investigator and wife, Deniece. *See* attached to Plaintiff's Complaint, Order entered April 24, 2006.

## II. STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the

factual allegations in the complaint in the light most favorable to plaintiff, but need not accept

the legal conclusions or allegations without factual support in the allegations made. *Bell Atl.*

*Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts

alleged in the complaint, any documents attached to or incorporated in the complaint, matter of

which the court may take judicial notice, and matters of public record. *EEOC v. St. Francis*

*Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).[3] Here, Plaintiff has pled no facts in

support of this action that would entitle him to relief.

## III. ARGUMENT

### A. Plaintiff Cannot Maintain a 42 U.S.C. 1983 Action Against Federal Defendant

Plaintiff's complaint is on a form captioned "...Complaint by a Prisoner Under the Civil

Rights Act, 42 U.S.C. §1983," with documents attached. To the extent he raises claims under

§1983 against Federal Defendant, Plaintiff fails to state a claim. Although Plaintiff seeks relief

in the form of $1,000,000, he does not state specifically against which of the named defendants

---

[3]     Generally speaking, the Court should not consider matters beyond the pleadings without converting the motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6). Nonetheless, there are important exceptions to this general principle. The Court may properly take judicial notice of court records without converting a motion to dismiss into a motion for summary judgment. *Baker v. Henderson*, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001)("in determining whether a complaint fails to state a claim, the court may. . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); *Himmelman v. MCI Communications,*104 F. Supp. 2d 1, 3 (D.D.C. 2000)("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.")

he seeks such damages. Regardless, because section 1983 does not apply to federal officials acting under federal, rather than state authority, the Circuit's law is clear, Plaintiff fails to state a 1983 claim against Federal Defendant. *Williams v. U.S.A.*, 396 F.3d 412 (D.C. Cir. 2005) (upholding the lower court's refusal to construe a 1983 claim as a *Bivens* claim).

### B.  Plaintiff's Claim is Barred by the Heck Rule

Plaintiff's claims is barred by the rule pronounced in *Heck*.[4]  Since Plaintiff's claim is based on an alleged illegal placement in protective custody, he must first invalidate the legality of that placement before bringing a constitutional claim against Federal Defendant. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). Alternatively, the court could grant a stay of this action pending conclusion of Plaintiff's upcoming trial. *Wallace v. Cato*, 127 S. Ct. 1091, 1098 (2007).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a prisoner may not bring a civil rights action for money damages alleging unconstitutional conviction or imprisonment unless the conviction had first been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court applied *Heck* to a prisoner's civil rights suit attacking an internal prison disciplinary sanction that affected the overall length of confinement, where good time had been taken from the inmate, holding that a claim for damages, based on procedural defects in the prison disciplinary hearing, necessarily implied the invalidity of the punishment imposed and was therefore not cognizable under § 1983. *Id.* at 647 (reiterating

---

[4]    No rule requires Plaintiff to wait until the conclusion of his trial to bring a civil challenge to any alleged unlawful conduct. However, the *Heck* rule also bars such actions until the alleged unlawful conduct has been invalidated. *See Wilson v. Barcella*, 2007 U.S. Dist. 22934, 2-23 (S.D. Tex. 2007)(applying the *Heck* bar to plaintiff's challenge to alleged unlawful conduct prior to trial).

7

*Heck's* holding as applicable to other harms caused by actions whose unlawfulness could render a conviction or sentence invalid). In *Williams v. Hill*, this Court extended the holding of these cases to *Bivens* actions brought against federal officials. 74 F.3d 1339, 1340 (D.C. Cir.1996).

Since Plaintiff's placement in protective custody concluded with an order that validated Federal Defendant's concerns, it is unlikely that a challenge to the legality of Plaintiff's placement in protective custody will be successful. Therefore, since Plaintiff's placement in protective custody has not been successfully challenged, this constitutional challenge is barred under the *Heck* rule. In addition to the *Heck* rationale, it is noteworthy that Plaintiff has several *Bivens* actions pending against individuals who are investigating or are prosecuting him. Arguably, Plaintiff is attempting to use these constitutional claims to intimidate the prosecutors, FBI Special Agents, ICE Agents, MPD Detectives etc. Application of the *Heck* Rule here to prevent *Bivens* abuse will prevent Plaintiff from achieving his objective.

### C.  Plaintiff's First and Sixth Amendment Claims Fail[5]

Plaintiff fails to state a claim for a First and Sixth Amendment violation of his rights of access to court and religious services. Plaintiff has not pled any facts that establish that he was denied access any more than other inmates in protective custody. On the contrary, the facts show that Plaintiff was represented by counsel during his placement in protective custody.

The Sixth Amendment states:

---

[5]        Plaintiff's Eighth Amendment Claim fails also because the Eighth Amendment does not apply to pretrial detainees. *Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C. Cir. 1991)(noting that a pretrial detainees recourse is under the Fifth Amendment while a convict's is under the Eighth). Plaintiff's Fourteenth Amendment claims against Federal Defendant are clearly barred, as the Fourteenth Amendment applies only to states and not to the federal government. *Bolling v. Sharpe*, 397 U.S. 497, 499 (1954).

> In all criminal prosecutions, the accused shall enjoy the right to a
> speedy and public trial, by an impartial jury of the State and district
> wherein the crime shall have been committed, which district shall
> have been previously ascertained by law, and to be informed of the
> nature and cause of the accusation; to be confronted with the
> witnesses against him; to have compulsory process for obtaining
> witnesses in his favor, and to have the Assistance of Counsel for
> his defense.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that the right of access

to the courts requires that inmates are assisted in preparing and filing meaningful legal papers by

providing inmates with adequate libraries and assistance. *Id*. at 828. Bounds did not confer

inmates with any specific means of access to the courts. Lewis v. Casey, 518 U.S. 343 (1996)

(holding that inmates alleging a *Bounds* violation must show that the inadequacy of the right of

access provided impaired his or her ability to vindicate their rights). In *Lewis*, the Court

dissolved an injunction that required prison authorities to provide specific means of access

because, inter alia, it failed to accord adequate deference to the judgment of prison officials about

inmates' access to courts including inmates on lockdown. *Id*. at 361-62. Furthermore, the Court

noted that, as long as an inmate is placed on lockdown for legitimate penological reasons, delays

in receiving mail were not unconstitutional. *Id*. at 362.

The same principle applies with regard to Plaintiff's First Amendment claims. "A

prisoner's First Amendment right to free exercise of his religion may be circumscribed to some

extent when the restriction is reasonably related to a legitimate penological interest." *Caldwell v.

Caesar*, 150 F.Supp.2d 50, 56 (D.D.C. 2001)(citing *O'Lone v. State of Shabazz*, 482 U.S. 342,

348 (1987)). Plaintiff was placed in protective custody because of concern that he was

attempting to identify potential witnesses against him and possibly do harm to them as well as

9

that he was attempting to contact his associate, Maynard, to destroy evidence. Therefore,

Plaintiff was placed in protective custody for legitimate penological reason. Plaintiff has not

pled any facts that establish that he was denied access to court or religious services any more than

any other inmate in protective custody. Plaintiff's access corresponded to his status as a high risk

inmate with the resources to attempt to influence the outcome of his trial through illegal means.

Accordingly, Plaintiff fails to state a claim for violation of his First or Sixth Amendment rights.

### D.  Plaintiff's Placement In Protective Custody was Related to Legitimate Government Goals

Due process requires that a pretrial detainee not be punished prior to lawful conviction.

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the government may detain individuals to

ensure their presence at trial and may subject them to the conditions and restrictions of the

detention facility as long as those conditions and restriction do not amount to punishment. *Id.* at

536-37. The determination of whether a condition of pretrial detention amounts to punishment

turns on whether the condition is imposed for the purpose of punishment or whether it is incident

to some legitimate government purpose. *Id.* at 538. Further, "if a restriction or condition is not

reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may

infer that the purpose of the governmental action is punishment[.]" *Id.* at 539.

Based on the *Wolfish* test, because Federal Defendant acted solely to effect a legitimate

government interest, Plaintiff's claims should be dismissed. At the time of his placement in

protective custody, Plaintiff was awaiting trial for conspiracy to distribute drugs and the use of

electronic means to further the conspiracy. Plaintiff is accused of being the leader of said

conspiracy involving individuals who were not incarcerated at the time of Plaintiff's transfer to

protective custody, including Plaintiff's trusted associate, Maynard. It is undisputed and Plaintiff

has not alleged any facts to contradict the fact he made several illicit attempts to contact Maynard

from jail including attempting to contact Maynard by sending letters to other people in the

community and asking his wife to call Maynard on her cell phone at the same time that he was on

the phone with her. In addition, the search conducted of Plaintiff's cell revealed that Plaintiff

was compiling a list of possible witnesses against him, including some that he labeled snitches

and "hot."[6]

Accordingly, based on the collective experience of those involved in Plaintiff's

investigation, Federal Defendant requested that the Warden place Plaintiff in protective custody

in order to protect the judicial process and innocent witnesses. Memorandum from Federal

Defendant to the Warden, dated December 22, 2005 attached to complaint. Plaintiff has since

been returned to general prison population with restrictions on visits and telephone calls.

Plaintiff fails to present sufficient facts to withstand Federal Defendant's motion because he was

placed in protective custody for legitimate government reasons. Accordingly, there is no due

process violation.

**E.    Federal Defendant is Entitled to Immunity**

<u>Absolute Immunity</u>

Although it does not appear from his complaint, to the extent that Plaintiff may be

attempting to sue Federal Defendant personally, she would be protected by immunity. Few areas

of the law draw a brighter line than the doctrine of absolute immunity for prosecutors and their

---

[6]      Hot means working with law enforcement. *United States v. White*, 116 F.3d 903,
909 (D.C. Cir. 1997)(permitting out of court statements by a cooperating witness who was
murdered by the defendant).

actions within the prosecutorial function. *Epps v. Howe*, 2007 U.S. Dist. 55093 at 6-7 (D.D.C.

2007) (citing *Sloan v. HUD*, 231 F.3d 10, 19 (D.D.C. Cir. 2000)).[7]  When prosecutors act in their

roles as advocates, absolute immunity applies. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (noting

that a prosecutor is absolutely immune from liability for presenting false statements in a probable

cause hearing); *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (noting that a prosecutor is

absolutely immune from liability for using false testimony at trial).  Absolute immunity applies

even when the plaintiff establishes that the prosecutor acted intentionally, in bad faith, or with

malice. *Kalina v. Fletcher*, 522 U.S. 118 (1997).  The rationale for absolute immunity is the

need to protect prosecutors from frivolous and unfounded claims and keep them focused on

serving the public trust. *Imbler, supra*, 424 U.S. at 424-28. (affirming dismissal of a complaint

on immunity grounds where the prosecutor knowingly used false evidence and suppressed

exculpatory evidence); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993) (concluding that

qualified rather than absolute immunity applied where the alleged misconduct occurred before

probably cause was established and anyone was arrested).

      Under the functional approach, absolute immunity shields adversary functions such as

"initiating judicial proceedings, evaluating evidence, and preparing presentations before a grand

jury or trial." *Buckley, supra*, 509 U.S. at 272-73.  Here, Federal Defendant is entitled to

absolute immunity because she was performing her advocatory duties when she requested that

Plaintiff be placed in protective custody in order to preserve the integrity of preparations for trial.

Indeed, the search of his cell confirmed that Plaintiff was attempting to gather the names of

---

[7]    Plaintiff also requests relief in the form of disbarment or suspension.  This court
lacks the authority to grant that relief.  Authority to grant that relief is conferred upon the
Disciplinary Panel.  LCvR 57.24.

possible cooperating witnesses possibly to harm them. Plaintiff was also actively attempting to

contact his associate Maynard for reasons that could have included the destruction of evidence

that could be used against them at trial. Plaintiff has not pled any facts that refute the fact that

Federal Defendant was functioning in her role as an advocate when the decision was made to

place him in protective custody. The documents attached to Plaintiff's complaint actually

support the fact that Federal Defendant was functioning as the peoples' advocate. Accordingly,

these claims should be dismissed.

### Qualified Immunity

Alternatively, Federal Defendant is entitled to qualified immunity because, taking

Plaintiff's allegations as true, they do not state a constitutional violation and, even if they did, her

actions did not violate any clearly established statutory constitutional rights of which a

reasonable persons should have been aware . *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather

than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is

erroneously permitted to go to trial." *Id.* The D.C. Circuit, in *Farmer v. Moritsugu*, 163 F.3d

610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on
> qualified immunity grounds] unless '[t]he contours of the right
> [were] sufficiently clear that a reasonable official would [have]
> underst[ood] that what he [was] doing violate [d] that right.' "
> *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *aff'd*
> 922 F.2d 443 (8th Cir. 1990)).

13

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages," *Anderson*, 483 U.S. at 646, the doctrine of qualified immunity strikes a balance between compensating those injured by official conduct and protecting the Government's basic ability to function. *See Harlow*, 457 U.S. at 813-14. In other words, qualified immunity is designed to mitigate the social costs of exposing government officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 816; *see also Harris*, 932 F.2d at 13. To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Court found that defendant's conduct in handcuffing plaintiff, a prisoner, to a hitching post, with his arms above his head, shirtless, in the blazing sun, without water or bathroom breaks for seven hours violated clearly established constitutional rights of which defendant should have been aware. The plaintiff pled sufficient facts to preclude qualified immunity because there was precedent condemning the hitching post practice beyond what was necessary to quell a threat or restore order and there had already been a Department of Justice report condemning the hitching post practice as improper corporal punishment. 536 U.S. at 736-37. These same facts established that a reasonable person should have been aware that the hitching post practice particularly in the circumstance plaintiff was placed was a violation of his rights. *Id.* at 741. Plaintiff has not pled anything remotely

14

resembling the pleading in *Hope*.

By contrast, in this case, Plaintiff fails to allege facts that could defeat a valid defense of qualified immunity. Plaintiff does not have any liberty interest to remain in general population that is protected by due process. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). A pretrial detainee may be placed in protective custody as long as there is a legitimate government goal and the conditions are not atypical in relation to harsh conditions prison officials typically impose. *Sandin* at 472.    Therefore, Plaintiff did not have a clearly established right to a hearing. Regardless, Plaintiff did receive a post-placement hearing resulting in an order restricting his mail, telephone and visitation privileges.

Notably, though, Federal Defendant received information that Plaintiff was attempting to continue to run his illicit drug enterprise from jail and attempting to find potential witnesses against him. Specifically, Plaintiff used his wife's cell phone to contact his trusted associate, Maynard and used his various love interests to try and communicate with his associates outside the prison. The search of Plaintiff's cell turned up notes with certain individuals noted as "hot." These are the legitimate government concerns that resulted in Plaintiff's placement in protective custody in the first place.

Assuming arguendo the complaint could be interpreted to sufficiently state that Federal Defendant committed unconstitutional acts, as discussed above, plaintiff failed to articulate how his constitutional rights were clearly established. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Accordingly, even under the facts as alleged in the complaint, Federal Defendant is entitled to qualified immunity, and should be dismissed from this lawsuit.

## CONCLUSION

Upon the foregoing, Federal Defendant respectfully requests that Plaintiff's complaint be dismissed or, in the alternative, stayed pending the conclusion of the upcoming trial.

October 5, 2007                    Respectfully submitted,

                                /s/

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

                                /s/

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

                                /s/

KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4210
Washington, D.C. 20530
(202) 514-7157

16

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTOINE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RACHEL LIEBER, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No.: 07-1027 (RJL)

## ORDER

UPON CONSIDERATION of the Federal Defendant's Motion To Dismiss Plaintiff's

Complaint, support thereof, the grounds stated therefore and the entire record in this matter, it is

by the Court this _____ day of _____, 2007, hereby

ORDERED that the said motion be and hereby is granted, and

FURTHER ORDERED that this case is dismissed with prejudice.

This is a final and appealable order.

_____
HON. RICHARD J. LEON, U.S.D.J.

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
555 4th Street, N.W
Washington, D.C. 20530

Antoine Jones
Register Number, DCDC 241-912
1901 D Street, S.E.
Washington, D.C. 20003

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Federal Defendant's Motion to Dismiss was mailed by

depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Antoine Jones
Register Number, DCDC 241-912
1901 D Street, S.E.
Washington, D.C. 20003

on this 5th day of October, 2007

_____/s/_____
KENNETH ADEBONOJO