# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

OCT 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| **ANTOINE JONES** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | Civil Action No: 07-1027 (RJL) |
| | ) | |
| **RACHEL LIEBER, et al.** | ) | |
| | ) | |
| **Defendant** | ) | |

### RESPONSE TO FEDERAL DEFENDANT'S MEMORANDUM
### SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The Plaintiff argues that the government's fifteen page Motion to Dismiss is not only off target, it lacks the point. The point isn't the factual background why the Plaintiff was accused or why the probable cause of the arrest of the Plaintiff, or why the Plaintiff's prohibited conduct since incarceration, nor why the Plaintiff cannot maintain a 412 U.S.C. 1983 Action Civil suit against federal defendants, or whatever the heck    rule is? [This is all an illusion to take the focus off the point and Rachel Lieber's action from the facts.]

The facts and point is that Rachel Lieber stepped out of her capacity of a U.S. Attorney, into the role of an over zealous, vindictive investigator, without the authority and protection from the courts. The facts and point, John Adams lied to the government and told the government, Mr. Jones was telling his co-defendants we could beat this case [which we did, the three co-defendants received acquittals and Mr. Jones received not guilty on the majority of his counts, two dismissals and the rest deadlocked].

I like to also add that Mr. Jones also saw Donald Hunter, a government witness, and a close friend, whom I spoke to at the law library. (At this time I didn't know that he was a government witness.)

The facts and the point, with these chains of events, Rachel Lieber took it upon herself, without the authority of the courts to send a memorandum on November 23, 2005 for Mr. Jones to be placed in total separation from the inmate population and separation from his co-defendants. Also on November 23, 2005, the government was busy, Mr. Jones D.C. jail cell search was searched by the FBI, AN O approximately 6:00 a.m.      the FBI and Safe Street Task Force searched and seized Lawrence Maynard resident and arrested him.

The government, Rachel Lieber, John Geise and Norma Horne goal and objective was to fabricate a story to get a search warrant, listen to Mr. Jones, with the hope to hear anything they can use to support their fabrication, hope to find something in the cell search by the FBI that will support their case which was spying on my defense and violating attorney-client privilege. Yes this entire plot was a "divide and conquer" strategy, lock up Lawrence Maynard and prevent him from helping me and opening up the club, get Mr. Jones away from potential government witnesses and find some supporting evidence to send Mr. Jones far away from his co-defendants, family, friends, loved ones, business associates, attorney, investigator and anybody who was willing to give him support and help. This is the government's traditional procedures in getting a technical advantage over the defense. I refer the court to Mr. Lawrence Maynard Grand Jury testimony of Stephanie Yanta on November 22, 2005, the Application and Affidavit for Search Warrant of Mr. Jones' D.C. jail cell, U.S. Attorney Office memorandum by Rachel Lieber to the warden of DC jail to be placed in total separation, the subpoena of all Mr. Jones' DC jail recorded phone calls, the government of the District of Columbia Department of Corrections

2

Alert Form – Separation Between Co-Defendants, Lawrence Maynard Detention Hearing, November 30, 2005 – Document #4, Document 50-1, filed December 19, 2005, Document 61-1 filed January 3, 2006, Document 76, filed February 26, 2006, Document 111filed April 24, 2006, DC Department Office of the Warden memorandum  - subject Inmate Grievance Procedures, Document 85 filed March 16, 2006, Document 93 filed March 23, 2006, Document 94 filed March 23, 2006, Document 96 filed March 19, 2006 all relating to Mr. Jones criminal case and has been submitted to this court.

I want to specifically refer the court to Mr. Jones "Government's Response to Defendant Jones Motion for Modification of Condition of Detention," Factual Background, the government states "After Jones arrest and detention, a confidential source unrelated to this investigation reported that it was "rumored" that the guys from Levels thought they figured out that a particular person was cooperating and that they were trying to find "someone" to "kill" the suspected cooperator witness.

The fact is the government went on hearsay and rumors, no facts at all.  The fact the government stated "guys from Levels" they never mention the name of these guys, they only selected me to be placed in total separation and punish me by subjecting me to the mental and physical abuse of the maximum security segregation unit.

I want to conclude my point, by referring to Mr. Jones' Modification of Condition Hearing on April 24, 2006 where the government tried to deceive the courts to transfer Mr. Jones out of his jurisdiction to once again get a technical advantage on the defense and separate Mr. Jones from his co-defendants and potential government witnesses.  In this hearing the government's main objective was to place me back into total separation, this time, its hundreds of miles away from my attorney, my investigator, my loved ones, business associates and anyone

3

who will support or help me. Rachel Lieber admitted that there goals were to keep me away from potential government witnesses. Rachel Lieber also went ex-parte with Judge Huvelle on this matter. <u>I am requesting the courts to provide the Plaintiff with the April 24, 2006 hearing transcript and Rachel Lieber's ex-parte conference with Judge Huvelle. I am also requesting the November 23, 2005 US Attorney memorandum when Rachel Lieber requested to place me in segregation.</u> Plaintiff is also requesting all information and affidavit on the government search of Mr. Jones cell on December 2, 2005 the day Mr. Jones got place in total separation.

Mr. Jones wants to admit to the courts that he can't go blow to blow with the government's high powered attorneys who have all the resources, have access to high tech case law, have the legal knowledge and legal experience in the law. [This is my second request for the courts to appoint me a civil attorney who can help me prepare and argue these civil matters.] To further respond to the Defendant Motion to Dismiss, I refer the courts to criminal case no. US-386(i) (ESH) Defendant's Motion to Suppress Tangible Evidence from Mr. Jones Jail Cell... The Plaintiff doesn't have the resources to look up all the Defendant's case law, my criminal attorney in this motion, <u>took the words out of my mouth,</u> can the court please accept this Motion and case law as part of my response.

To the response on the government statement about the $1,000,000.00 in monetary damage, the Plaintiff is seeking $5,000,000.00 in monetary damages for relief. The Plaintiff is suing the Defendants in their individual capacities and their employers (United States Attorney Office and D.C. Government). The $5,000,000.00 can be divided by whomever the jury or courts finds liable, as long as Mr. Jones receives compensation and relief from his mental anguish, depressing long nights of stress, mental and physical abuse. I refer you back to Mr, Jones' complaint while in S-1, maximum security on total separation with all his due process

stripped away for no reason. If possible, I am requesting the courts to place a lien on all the Defendant's financial assets (bank accounts and property) until this matter is resolved.

_____
Antoine Jones
Plaintiff


_____
Date

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify and declare that a true and accurate copy of the foregoing Civil Suit Response (Response to Federal Defendant's Memorandum Support of Motion to Dismiss Plaintiff's Complaint) was placed into this institution's mail receptacle on this __ day of _____, 2007.


_____

Antoine Jones

241912
DC Department of Corrections
1901 D Street, SE
Washington, DC  20003

Metropolitan Police Detective Norma Horne swore out an Application and Affidavit for Search Warrant. (*See* Exh. 1). Detective Horne sought a warrant to search the "entire jail cell and personal property of Antoine Jones, D.C. Jail, 1901 D. Street, Southeast, Washington, D.C." (*Id.*). Magistrate Judge Kay issued the warrant that same date. Agent Horne and other agents carried out the search on November 23, 2005, and seized several items from Jones' cell. (*See* Exh. 2). The inventory list of the search indicates that the items seized were "Miscellaneous documents to include – Washington Post article, 9 [10 is crossed out and initialed JCB] pieces of paper with names and/or numbers + 3 envelopes that each contain a letter." (*Id.*) The government has informed Jones that it intends to introduce several of the items recovered from Jones' cell at trial.

## ARGUMENT

### I.    JONES HAD AN EXPECTATION OF PRIVACY IN HIS JAIL CELL

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized ..." U.S. Const. amend. IV. Prisoners do not have an expectation of privacy with respect to searches motivated by institutional security concerns and performed by prison officials. *See Hudson v. Palmer,* 468 U.S. 517, 527 (1984); *United States v. Cohen,* 796 F.2d 20, 22-23 (2d Cir.1986). However, when a search is performed or initiated by law enforcement officials other than those in charge of a prison and is unrelated to institutional security concerns, a prisoner has a reasonable expectation of privacy with respect to that search. *Cohen,* 796 F.2d at 23-24.

In this case, it is clear that the search of his cell was motivated not by institutional

2

concerns of the D.C. Jail, but rather initiated by law enforcement officers. Thus, Jones had an

expectation of privacy pursuant to the Fourth Amendment.

## II.    THE AFFIDAVIT IS UTTERLY LACKING IN INDICIA OF PROBABLE CAUSE

It is established law, see *Nathanson v. United States*, 290 U.S. 41, 47(1933);

*Giordenello v. United States*, 357 U.S. 480, 485-86 (1958); *Aguilar v. Texas*, 378 U.S. 108, 114-

115 (1964), that a warrant affidavit must set forth particular facts and circumstances underlying

the existence of probable cause, so as to allow the magistrate to make an independent evaluation

of the matter.   If the warrant is "facially deficient," for example, in failing to particularize the

place to be searched or the things to be seized, suppression is appropriate despite a magistrate's

stamp of approval. *See United States v. Leon,* 468 U.S.897, 923 (1984).   Or, if the warrant is

based on an affidavit "so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable," suppression is available. *Id.* (citing *Brown v. Illinois,* 422 U.S.

590, 610-11 (1975).

If a magistrate abandons his neutral and detached role, good faith reliance on the

warrant will not prevent suppression. *See Leon,* 468 U.S. at 923.   Furthermore, "if the magistrate

or judge in issuing the warrant was misled by information in an affidavit that the affiant knew

was false or would have known was false except for his disregard of the truth," suppression is

appropriate. *See Id.* at 923 (citing *Franks v. Delaware,* 438 U.S. 154 (1978)).   And finally, if "it

is plainly evident that a magistrate or judge had no business issuing a warrant," the exclusionary

rule will still be applicable. *See Massachusetts v. Sheppard, supra,* 468 U.S. at 990 n. 7, 104

S.Ct. at 3429 n. 7 (quoting *Illinois v. Gates,* 462 U.S. 213, 264, 103 S.Ct. 2317, 2346, 76 L.Ed.2d

527 (1983) (White, J., concurring in judgment)).

3

The government will likely argue that Magistrate Judge Kay issued a proper warrant and that the law enforcements agents who carried out the search of the cell did so in good faith reliance of the warrant. Explicit in *Leon*, however, is the view that not every act of reliance on the intervention of a judge or magistrate will automatically eliminate exclusion as the appropriate remedy for constitutional or statutory violations.

In this case, Detective Horne's Application for the search warrant indicates that the items to be seized as:

## ATTACHMENT A

1.     Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;
2.     Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;
3.     Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and
4.     Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, photographs, personal telephone books, diaries, and identification documents.

(*See* Exh. 1 at 2).

Her fourteen page Affidavit contains the following:

a.    four pages of a boilerplate and non-specific description of her experience, training and education;

b.    eight pages of the allegations made against Jones, including evidence obtained prior to the wiretap, during the wiretap, during the takedown, and through the use of intercepted jail calls. An overwhelming part of these eight pages is devoted to Lawrence Maynard allegedly being Jones' "right hand man." ████████████████████
████████████████████████████████████████

4

Horne avers, "Specifically, <u>investigators believe that JONES has sent letters to MAYNARD via O'NEAL</u>, which speak of the details of ongoing narcotics trafficking, including the possible concealment of evidence, and the continuation of the business, and <u>that MAYNARD has kept these letters in his possession</u>, as is common in the illegal narcotics trade." Further, Horne avers that, "Based on these calls, and on MAYNARD's identified role in JONES's [sic] narcotics' trafficking operation, <u>investigators believe that MAYNARD has evidence pertaining to narcotics-trafficking in his possession</u>, to include letters from ANTOINE JONES." (See Exh. 1 at 12)(emphasis added).

c.      one paragraph with the heading "Probable Cause for Individual Location," which states nothing more than the location to be searched and a description of Jones as an inmate at the D.C. Jail. (See Exh. 1 at 13).

d.      one paragraph with the heading "Offenses," which lists "Attempted obstruction of justice and witness tampering, in violation of 18 U.S.C. §§ 1510, 1512, and 1513, and violations of the Controlled Substances Act, Title 21, United States Code, Section 801, <u>et seq.</u>, including: (a) the possession with intent to distribute and distribution of controlled substances, in violation of Title 21 United States Code (USC) § 841(a)(1); and (b) conspiracy to commit such offense, in violation of 21 U.S.C. § 846." (See Exh. 1 at 13).

On its face, the Affidavit fails to allege any set of facts that Jones in any manner attempted to obstruct justice or tamper with witnesses or engage in narcotics-related activities from his jail cell. In fact, the entire factual portion of the affidavit focuses on Maynard and notes that investigators believe that Maynard, <u>not</u> Jones, had kept letters from Jones in his possession and that Maynard, <u>not</u> Jones, had evidence pertaining to narcotics-trafficking in his possession.

5

The government may also argue that it had source information that Jones, through communications from his cell, was attempting to tamper with witnesses. For example, via letter dated December 5, 2005, AUSA Lieber informed counsel that

> As I mentioned, in early November, we received information through various channels, including from agents wholly unrelated to this investigation, that [Jones] was attempting to identify witnesses against him and 'take care of them.' Based on this information, we obtained copies of all calls your client made from the D.C. Jail.[1] Then, based on some of the discussions he was having with individuals in the community, in conjunction with this source information, we obtained a search warrant for your client's cell . . . .

(*See* Exh. 2 at 2). Although the government may have had this source information about Jones' alleged attempts to locate or intimidate witnesses, Horne failed to include this information on the Affidavit.

On the facts of this case, the underlying affidavit is entirely lacking in indicia of probable cause. *Leon* clearly and unequivocally states that when the affidavit itself is entirely lacking in indicia of probable cause, it cannot be said that the officer acted in good faith in relying on a warrant that issues. That is the precise situation we have in this case.

"All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde,* 440 F.3d 1065, 1067 (9th Cir.2006) (en banc) (quoting *United States v. Anderson,* 453 F.2d 174, 175 (9th Cir.1971) (internal quotation marks omitted)). Where the affidavit itself lacks *all* indicia of probable cause, it would unduly undermine the foregoing rule to permit extrinsic indicia of probable cause to be presented through an unsworn, unrecorded oral colloquy. Related to the foregoing, the Constitution also requires that probable cause be established "by Oath or affirmation." If unsworn, unrecorded oral colloquies, which may not be

---

[1] Jones also moves to suppress these calls because, upon information and belief, the government did not obtain these calls pursuant to a lawfully authorized subpoena or warrant.

6

used to establish probable cause, *are* admissible to establish good faith, the constitutional and prudential standards for showing probable cause will be undermined. In effect, the good faith exception would swallow the Fourth Amendment rule. *See United States v. Luong*, 470 F.3d 898, 905 (9th Cir. 2006).

### III.    THE SEARCH VIOLATED THE ATTORNEY-CLIENT PRIVILEGE

Federal courts recognize the attorney-client and work product privileges as doctrines that serve to protect confidential communications between attorneys and their clients, as well as the mental impressions and legal strategies developed by attorneys in anticipation of litigation. *See Fisher v. United States,* 425 U.S. 391, 403 (1976); *Upjohn Company v. United States,* 449 U.S. 383, 389 (1981); (noting that the attorney-client privilege covers a wide range of communications with a purpose of encouraging "clients to make full disclosure to their attorneys."). While both privileges are virtually inviolable, this is only true if the proponent of the privilege can establish that the privilege exists in the first instance, and that it has not been waived. *See United States v. Bump,* 605 F.2d 548, 551 (10th Cir.1979).

To determine the existence of either an attorney-client or work product privilege, courts focuses on whether the client who communicates the information or the attorney who creates the work product has a "justifiable expectation" that the information will remain secret. *In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007 , 1015-16 (1st Cir.1988). A waiver can be express or implied by conduct. "Implied waiver occurs when a party claiming the privilege has *voluntarily* disclosed confidential information on a given subject matter *to a party not covered by the privilege.*" *Hanson v. U.S. Agency for International Development,* 372 F.3d 286, 293-94 (4th Cir. 2004). A client waives the privilege "by deliberately injecting into the case

7

the advice which he received from his attorney." *Smith v. Alyeska Pipeline Service Co.,* 538 F. Supp. 977, 979 (D. Del. 1982).

Materials may be covered under both the attorney-client privilege and work product doctrine. *Upjohn Company v. United States,* 499 U.S. at 398. Thus, documents prepared with the purpose of being sent to counsel for legal advice, legal opinions, legal services, or assistance in a legal proceeding are held to be privileged. *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800 (Fed. Cir.2000).

The government has informed Jones that it intends to use at trial several pages seized from Jones' cell that contain lists of names. These pages (*See* Exh. 2 at 10 & 17), were made by Jones at the direction of counsel. At the beginning of this case, counsel asked Jones to make a list of all the individuals who may have information regarding this case (possible witnesses) and all the individuals who may be in a position to testify against him (cooperators). Jones did so, but before he could provide the lists to counsel, the government searched his cell and seized the lists. The government cannot seriously argue that Jones somehow waived the privilege. When documents are secured through the execution of a search warrant, the production cannot be said to be voluntary. *See Transamerica Computer v. International Business Machines,* 573 F.2d 646, 651 (9th Cir.1978).

Additionally, upon information and belief, the items seized from Jones' cell were not kept by a "taint team." Rather, they were kept by the very prosecutors and law enforcement officers that are part of this case. Counsel concludes this by the fact that AUSA Lieber faxed to counsel copies of the seized documents. Accordingly, Jones requests that the Court conduct an evidentiary hearing to explore whether the government improperly intruded on Jones' attorney-

8

client privilege through the abuse of its "taint team" procedures, and, if so, to determine the

extent to which sanctions should be imposed against the government or its counsel.



DEC 02 2005 16:26 FR UWAU          2023534898 TO ███████          P.01/02



U.S. Department of Justice
United States Attorney
District of Columbia

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20530*

# FAX



| To: | ███████ | From: | ███████ |
|-----|---------|-------|---------|
| | DC Jail | | USAO/DC |
| | (202) ███ | | (202) ███ |
| Fax: | | Phone: | |
| Date: | December 2, 2005 | | |
| Re: | Request for Lockdown: Antoine Jones | | |
| Page(s): | 2 including cover | | |

**COMMENTS:**

Please ~~███████████~~ immediately ~~███████~~ If you have any questions, please call me on the telephone number listed above.

Thanks.

---

## U.S. ATTORNEY FACSIMILE COMMUNICATION

***WARNING: Information attached to this cover sheet is U.S. Government Property. If you are not the intended recipient of this information, disclosure, reproduction, distribution, or use of this information is prohibited. Please notify the originator immediately to arrange for proper disposition.***

DEC 02 2005 16:26 FR UWAU                                    TO

# Memorandum

*United States Attorney*
*District of Columbia*

| Subject | Date |
|---|---|
| Request for Lockdown Antoine Jones DCDC 241912 | December 2, 2005 |

| To | From |
|---|---|
| DC Jail | USAO/DC |

AUSA ████████ has indicated in a previous request, dated November 23, 2005, that inmate Antoine Jones, DCDC 241912, should ████████ ████████ in lockdown at the DC Jail. Please ████████ that Mr. Jones is ████████ until ████████.

If you have any questions, please call me at (2)████████ or ████████ Pat (2)████████.

Thanks

DEC-02-2005 04:27PM  From: ████████                    ID:

DEC 22 2005 12:42 FR VWAU ███████ TO ██████            P.02/11

# Memorandum

United States Attorney
District of Columbia

| Subject: | | Date: |
|---|---|---|
| Continuing Problems with Prisoner Antoine Jones, DCDC 241-912 | | December 22, 2005 |

| To: | From: |
|---|---|
| Warden, District of Columbia Jail | ██████████ Assistant United States Attorney |

On ████████████, the United States Attorney's Office made ██████████ ██████, that the aforementioned prisoner, Antoine Jones (DCDC 241-912) ██████ ████ly, based on growing concerns that Mr. Jones was ███████████████ ███████████████████ in his narcotics conspiracy case being prosecuted in United States District Court for the District of Columbia. ███████████, on ███████████ █████ ███████████ while ███████████████████████████ that he was ██████████ ████ ████████████████ally which led ██████████████████████ding ████ with the aid of members of ██████████████████ I learned that Jones did, indeed, remain in population. Thus, ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

███████████████████████████████████████ healthy, ██████████████ and ███████████████████████████ completely undermine the purpose of the being in that ████████ ███████████████████████████ Indeed, some of the basis for the government's concern regarding Jones' ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

I have attached copies of the most recent Department of Corrections call logs. ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████

DEC 22 2005 12:42 FR UWAU                                    TO                    P.03/11

The U.S. Attorney's Office and the F.B.I. are very concerned that Antoine Jones ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Please consider this memorandum a formal request for an immediate investigation into this situation, to include an examination of how these clear violations occurred, and more importantly, an immediate correction of the problem.

Please feel free to contact me at (202) ▓▓▓▓▓▓▓ (office) or (202) ▓▓▓▓▓▓▓ (cell), if you have any questions.

2

**COMPLAINT:**  I am filing this complaint because I, Antoine Jones, have been placed in segregation under Total Separation (T.S.) status at the District of Columbia Department of Corrections (DCDC) Jail. On December 2, 2005, the prosecutor(s) displayed prejudice behavior and acted along with the D.C. Department of Correction Administration as they together discriminated against me and violated my 1st, 8th, and 14th Constitutional Amendment rights, prison rights, as well as my pretrial detainee due process rights. The Prosecutor(s) telephoned the DCDC Jail and verbally told the Administration to remove me from general population and place me in segregation under Total Separation (T.S.) Status. The prosecutor(s) also demanded that I not be allowed social visits, telephone calls and that my mail be withheld from me.

On December 21, 2005, my son (Antoine Jones, Jr.) Came to visit me but was turned away and told I could not have any social visits. On January 11, 2006, my sister (Deborah Jones) came to visit me but was turned away and told I could not have any social visits. On January 18, 2006, my wife (Deniece Jones) came to visit me but was turned away and told I could not have any social visits. My wife asked the visiting hall officer to provide her with a copy of documentation showing why I could not have a social visit and she was told it was an order from the court but she could not have a copy of the order. She was told to call the warden. My brother (Tyrone Jones) has called DCDC Jail weekly and demanded to be told why I am in T.S. and why I am not allowed to have social visits. He has been told that the courts sent an order to the Jail Administration taking away all telephone call, social visits and incoming mail privileges.

I am a minimum security pretrial detainee with no background of violence. I have been subjected to and placed in a maximum security segregated environment around maximum security inmates. I fear for my life because I am being discriminated against, punished, violated, humiliated and degraded and I have not been provided any documentation to state why I am being subjected to this mistreatment.

**CONSTITUTIONAL LAW:** «Inmate must receive notice, memo or statement of charges against him, opportunity to present his view, either in writing or in person to prison officials, and review by decision maker of charges and available evidence before being deprived of liberty or due process » USCA Amendment 14.

ANTOINE JONES - PAGE 1

I should have the right to call witnesses and face my accuser. I have been denied both a 60-day and 90-day review with the Unit Housing Board to update my status, voice my concerns, complaints, questions, requests and my fears. I have spoken with Associate Warden Dubois, Acting Associate Warden, Major Waldren, Captain Tyler, Lieutenant Diaz, Unit Lieutenant in Charge of S-1 Unit, Lt. Brinson on numerous occasions, Sargent Garner, Sargent Dent in charge of the Unit Housing Board. I have given complaint forms and request forms to Case Manager Simpson, Case Manager Hilcrest, Case Manager Miller, and Head of Case Management Ms. Teamoney on numerous occasions requesting an explanation and documentation showing why I have been placed in segregation under Total Separation (T.S.) Status and why all of my rights and my right to due process are being denied. Ms. Simpson, Lt. Brinson, and Sgt. Garner replied verbally that they couldn't document it on paper or show me documentation on paper but that it was a "court order" which came from the prosecutor.

**COMPLAINT #1 - <u>Access to Court</u>:**

During the time I have been held in segregation under T.S. Status I have been deprived of my right to properly prepare my defense for my criminal case, and therefore, deprived of the right to a fair trial. On February 23, 2006, I attempted to call my attorney but I was put out of the Unit Office and denied the right to a legal phone call by Case Manager Reece. This incident was witnessed by C.O. Root and numerous of inmates watching and listening. Being housed in Segregation S-1 Unit, I have had no access to a mini-Library in unit, no access to writing materials, no access to a typewriter, no access to law books to research or gather legal case information, and no access to a copy machine.

On January 30, 2006, I gave important Legal Material to Case Manager Simpson to be photocopied for my attorney. As of today (March 22, 2006) I have not received the original materials nor the copies back. I have not been allowed proper access to the Law Library nor adequate assistance from the administration or the Law Library Clerk trained in law to provide inmates with help or assistance with questions, concerns and requested cases. The Law Clerk does not come in contact or communicate verbally with the inmates or detainees housed in Segregation S-1 Unit at all. The Law Library Clerk, Ms. Thomas does not come on this particular tier to respond to any questions, complaints or concerns. It has

ANTOINE JONES - PAGE 2

taken her two, three weeks, or sometimes over a month to respond to my requests for legal information.

Further, being in S-1 Segregation with my rights to due process stripped, I have no proper means to communicate with my attorney, investigator, or witnesses and no ability to properly prepare an effective defense.

In conclusion, placing me in Segregation under Total Separation status is a clear violation of my 8th and 14th Constitutional Amendment rights.

**COMPLAINT #2 - <u>Access to Religious Services, Religious Programs, Religious Reading</u>**
**<u>Materials</u>:**          Since being in S-1 Segregation under T.S. Status, I have been denied my right to freely exercise my religion, to attend bible study, to attend worship services in the Chapel, access to a bible or religious reading materials, communication and inspiration from a Chaplain, minister from the community as well as contact with any religious service personnel. The Latino detainees have been given access to Spanish speaking religious personnel and Spanish religious reading materials. My complaint here therefore being twofold, first the denial of access to religious activities and materials; and second, discrimination against me because other detainees were allowed access and were treated differently than I was treated.

In conclusion, this is discrimination and a violation of my 1st Constitutional Amendment which affords me access to any religious programs or religious reading materials preventing me to strengthen my faith, provide me with inspiration and spiritual guidance and the opportunity to serve my God Almighty.

**COMPLAINT #3 - <u>Denial of my Due Process</u>:** Being held in S-1 Unit Segregation, under Total Separation Status, the Prosecutor and the DCDC Administration conspired and stripped me of my pretrial detainee due process privileges: (1) telephone privilege, (2) social visit privilege, and (3) mail privilege. The absence of my due process privileges caused me to lose ties with my wife, my son, my family and business associates. In addition, I was also denied legal telephone call to my lawyer. The loss of ties and the non communication with loved ones caused me and my loved ones to constantly worry, caused nervousness in my stomach, caused constant diarrhea, mental and emotional stress, constant headaches, and when I heard my wife was in danger of hypertension and my son was too worried and too stressed to complete his first semester of college, this caused me to worry more and become more stressed out physically, emotionally and mentally.

ANTOINE JONES - PAGE 3

In conclusion, the Prosecutorial interference with the defendant's access to witness can require reversal because it denied the defendant the right to a fair trial. The improper procedure of denying me mail, intercepting my mail, copying and reading my mail without a warrant or violating and spying on my case is illegal and a violation against my prison rights and my constitutional rights. By me not being able to communicate with my wife, my family, and my business associates has cost me monetary damages from my business, physical and emotional and mental stress. My 1st, 8th, and 14th Amendment rights have been violated. I have been a victim of discrimination and prejudices from the Prosecutor and the DCDC Jail Administration.

COMPLAINT #4 - <u>Sanitation & Health Hazard Risk</u>: Being housed in S-1 Unit Segregation, I am subjected to a health hazard, to breathing, smelling and exposure to human feces and human urination in the air. The presence and the permanent smell of human feces on the bars and the walls caused me to have constant migraine headaches. The cell was filthy when I was placed in it. I constantly requested and was constantly denied sanitation and cleaning supplies, including cleaning rags, toilet brush and disinfectants. The only cleaning utensils afforded me were a mop which was soiled with human feces and urine and a broom which was soiled with human feces and urine as well. The cell is riddled with food stains on the walls, feces stains, stains from dead bugs and blood from bugs and insects, globs of spit, and some substance which resembles human mucus. The cell is infested with rodents and rodent droppings. I have had to chase mice out of my cell on numerous occasions, including coming out of the air vent, running across the table in the cell, and one jumped from under my legal papers on the table and jumped on me while I was attempting to organize my papers and clean the cell. The temperature in the cell is unbearably cold. The unbearably cold temperatures has caused me to suffer severe sleep disorder, excruciating backaches, ear aches and neck pain, constant numbness of my fingers, elbows, knees and toes, tendinitis, arthritis, and at times the pain and agony is so severe that I cannot write, read or study but resort to taking medication and getting under multiple covers and trying to sleep through the suffering. The only medication the medical officer prescribes is acetaminophen tablets or pseudoephedrine tablets for relief from colds, flu, allergies, pain or aches of any kind. As a result of the filth and unsanitary showers and cells within the unit, I have also acquired the following medical conditions: athlete's foot, body fungus, and dandruff.

In S-1 Unit Segregation, we do not have access to proper laundry facilities. The personal laundry goes sometimes weeks before laundry services are made available to us. When laundry pick-up service does come through it

is usually after midnight and our laundry, including sheets and towels, is not returned until after 5 a.m. which means we go through the night in an unbearably cold cell without linen.

In conclusion, being housed in S-1 Unit caused me great health risks and distress both present and future. I have already acquired athlete's foot, body fungus, and dandruff. Along with living and sleeping in a filthy cell, the build-up of dirt and dust causes me to have allergic reactions and further puts me at health risk on a daily basis.

COMPLAINT #5 - Discrimination and Degradation: Being removed from the general population and being subjected to the segregation of being housed in S-1 Unit has been degrading and has made me a victim of discrimination by the Prosecutor and the DCDC Jail Administration and staff. Unlike the co-defendants in my case and unlike the general population, I have to be in my cell 24 hours a day 4 days a week and 23 hours a day 3 days a week. During the break three times a week, I have to fit in recreation, shower and, if granted the privilege, a phone call. I am subjected to a strip search, handcuffs, shackle and belly chain and my cell searched each time I go to the shower, or to recreation, and each time I leave the unit.

In conclusion, I feel humiliated and sexually harassed and degraded on a daily basis. For recreation, I am placed alone in a cage that looks like it was built to house an animal. The constant nakedness in front of grinning C.O.'s, constant handcuffs, shackles and belly chain sexual harassment, and all of the other torture outlined here is humiliating, degrading, and cruel punishment especially since I should not be subjected to this prejudicial discrimination. I have not had any sanctions, no shots, no charges and there has been no proper investigation. T.S. status should not be used as a pretext for punishment, torture, to discriminate or for indefinite confinement of a detainee nor should it be instituted without the prison officials engaging in periodic review.

I have been placed in S-1 Unit Segregation under T.S. status under false pretense. In the process, I have been subjected to invasion of my privacy, prevention of a fair trial, violation of my 1st, 8th and 14th Constitutional Amendment rights by a prejudice and vindictive Prosecutor. I have been subjected to daily discrimination by the DCDC Jail administration and staff. I have suffered monetary damages and with the numerous wrong doings and actual fraud, I hereby file these five complaints. The Prosecutor is aware of and has participated in fabricating evidence throughout the investigation and has grossly violated the standard of due process resulting in loss of liberty and a denial of my constitutional rights.

ANTOINE JONES - PAGE 5

Also noted here, prosecutorial interference with the defendant's access to witness can require reversal because it **denies the defendant (myself) a fair** trial.

I am asking to obtain the relief and **monetary damage of $5,000,000.00** (five million dollars) disbarment or **suspension of the Prosecutor(s) for** willfully depriving me of my Constitutional **rights, therefore rendering me** unable to have a fair trial, and I am also **requesting the demotion or** suspension of the DCDC Jail Administration **responsible for carrying out** the prejudice and discrimination orders **towards me. On March 17, 2006,** in open court, the judge stated that **she never signed any order to place me** in S-1 Unit Segregation under Total **Separation (T.S.) Status. Therefore,** the Prosecutor(s) acted outside their **realm of jurisdiction in instructing the** DCDC Jail Administration to place **me in the T.S. Status and the DCDC** Jail Administration acted outside their **realm of jurisdiction by carrying out** such an order without a properly signed **court order from the judge.**

_____          _____
Antoine Jones                          Date

ANTOINE JONES - PAGE 6

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOINE JONES, | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No.: 07-1027 (RJL) |
| v. | ) |
| | ) |
| RACHEL LIEBER, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Antoine Jones, Register Number, DCDC 241-912, *pro se* in this action ("Plaintiff"), is a

pretrial detainee incarcerated at the District of Columbia Jail in Washington, D.C.  On or about

June 8, 2007, Plaintiff commenced this action against Rachel Lieber ("Federal Defendant"), one

of two Assistant United States Attorneys prosecuting Plaintiff for Conspiracy to Distribute and

Possess with Intent to Distribute Controlled Dangerous Substances.[1]  Using a form captioned

Complaint for Violation of Civil Rights under 42 U.S.C. 1983 with an attached document titled

"complaint," Plaintiff alleges that Federal Defendant violated his First, Eighth and Fourteenth

amendment constitutional rights by "giv[ing] the order...to place [him] in S-1, maximum

security, under total separation" with no mail, phone or visiting privileges.  *Pl. Compl.* at 5.

---

[1]       In another matter captioned *Jones v. Yanta*, 07-1172 (HHK), Plaintiff alleges civil
rights violations against John Giese, the other United States Attorney prosecuting him.  Federal
Defendant is also named in that matter along with Federal Bureau of Investigation Special Agent,
Stephanie E. Yanta.  In the *Yanta* matter, Plaintiff raises claims that have twice been rejected in
his criminal prosecution.  The issues raised in the *Yanta* matter are related but not identical to
those raised here.

Specifically, Plaintiff alleges that his placement in total separation violated his due process rights because he was not permitted a hearing beforehand. Furthermore, he alleges vaguely that "prosecutorial interference" has affected his ability to prepare for his upcoming trial and prevented access to religious services. Although Plaintiff appears to allege a violation of his Eighth amendment rights arising from his alleged placement in a holding cell for four hours, he makes no specific allegations against the Federal Defendant. Also named as defendants in this matter are Norma Horne, a Narcotics Detective with the District of Columbia Police Department and Dennis Harrison, who is sued in his capacity as the Acting Warden of the District of Columbia Jail. Plaintiff alleges without factual support that Detective Horne's affidavit, dated November 22, 2005, in support of a search warrant of his cell was fabricated and that Warden Harrison was in charge when he was put in protective custody. *Id.*

Plaintiff is requesting relief in the form of a jury trial and money damages in the sum of $1,000,000. He does not specify from whom he seeks monetary damages nor does he specify that he is suing defendants in their individual capacities. *Id.* The only specific relief Plaintiff seeks against Federal Defendant is "disbarment or suspension."

## I. FACTUAL BACKGROUND

### A. Investigation Into Plaintiff's Illicit Activities

In late 2004, investigators obtained information from confidential sources that Plaintiff was operating a narcotics trafficking organization in the greater Metropolitan Washington, D.C. area and elsewhere with his trusted associate Lawrence Maynard. *See* attached to Pl. Compl. Affidavit of Norma Horne in Support of Application for Search Warrant, dated November 22, 2005 ("Horne Aff."). Plaintiff is the sole proprietor of "LEVELS," a nightclub located at 1960

2

Montana Avenue, N.E., Washington, D.C. *Id.* Sources told Investigators that Plaintiff used the nightclub as a location where he often conducted his drug-trafficking activities, distributing kilogram quantities of cocaine and collecting substantial amounts of money, as well as that he laundered drug trafficking proceeds through the nightclub.[2] *Horne Aff. at 5.* The sources also revealed that Plaintiff maintained a discreet operation, and limited his contacts to individuals known to him personally, or introduced to him by trusted, well known associates. *Id.* at 6.

Accordingly, Law Enforcement commenced an investigation into Plaintiff's illicit activities. As part of the investigation, on September 2, 2005, Investigators obtained an order to intercept Plaintiff's cellular telephone conversations authorized by the Honorable Paul L. Friedman. *Id.* at 9. As a result of the intercepts, Investigators were able to identify a core group of individuals including Plaintiff who engaged in short encrypted conversations of a suspicious nature involving "tickets, VIP tickets, flyers and math homework." *Id.* Shortly after many such calls, surveillance revealed Plaintiff meeting with individuals to exchange suspicious packages believed to be money and drugs. *Id.* at 9-10. Also, after many such telephone calls, surveillance revealed Plaintiff meeting individuals in, Fort Washington, Maryland exchanging suspicious packages and then meeting other individuals believed to be Plaintiff's customers in rapid succession immediately thereafter. *Id.* at 10.

During the investigation, on or about April 5, 2005, a Highway Interdiction Unit of Durham, North Carolina Police Department conducted a traffic stop of a 1997 Honda Odyssey mini-van operated by Maynard. *Id.* at 7  A check revealed the vehicle was registered to the

---

[2]     According to records on file with the District of Columbia Alcoholic Beverage Regulatory Agency (ABRA), Lawrence Maynard is listed as the "A.B.C. Manager" of the nightclub. *Horne Aff.* at 5-6.

Plaintiff, with a birth date of February 25, 1960, and to one of his two residences, 12221

Brandywine Road, Brandywine, Maryland. *Id.* The interdiction canine unit alerted to the right

rear passenger area of the mini-van which revealed a hidden compartment containing six white

Target shopping bags containing a total of $67,115.00 in U.S. currency. *Id.* at 7-8. Maynard and

a passenger in the vehicle possessed approximately $5,000.00 between them. *Id.*

On October 24, 2005, a number of sealed search warrants were executed at various

locations throughout the Washington, D.C. area. *Id.* at 11. As a result, nine individuals were

arrested including one individual who was photographed in Plaintiff's vehicle. *Id.* Investigators

recovered from the Fort Washington stash house where Plaintiff was often seen, ninety-seven

kilograms of cocaine powder, three kilograms of crack cocaine and $834,520. *Id.* Additionally,

investigators recovered a gun from Plaintiff's nightclub and $69,000 was recovered from the

Plaintiff's vehicle. *Id.*

**B.    Plaintiff's Prohibited Conduct Since Incarceration**

Since his arrest, Investigators have uncovered Plaintiff's attempts to remain in contact

with associates in the community. *Id.* On November 3, 2005, Plaintiff called Deborah O'Neal,

one of his many romantic interests, to inform her that he had sent her letters with other peoples'

names on them and to give same to Maynard upon receipt or hold them pending further

instructions. *Id.* On November 6, 2005, Plaintiff again called Deborah O'Neal to tell her to

notify "[Maynard] to write to him and let him know what was going on because he doesn't want

to be "in the blind." Also, Plaintiff was overheard telling his wife, Deniece, to contact Maynard

on his behalf or to call Maynard on her cell phone while Plaintiff was on the land line with her.

*Id.* at 12. Investigators believed that these were efforts to conceal his communications with

4

members of his illegal narcotics-trafficking operation. *Id.*

When Plaintiff's cell was searched on November 23, 2005, Investigators uncovered

letters from Beverly Johnson, another romantic interest, indicating the whereabouts of an

unindicted co-conspirator and that another unindicted co-conspirator had reportedly "been

snitching." *See* attached to Plaintiff's complaint, Government's Supplemental Filing Concerning

Conditions of Confinement at 2. A list of suspected cooperators with the Government was also

discovered. *Id.* ~~the Warden to request that Plaintiff be placed in protective custody in order to protect the integrity of the Government's investigation and to prevent any possible harm to innocent witnesses~~. *See*

attached to Plaintiff's Complaint, Memorandum Request dated December 22, 2005. Nine days

later, on December 2, 2005, Federal Defendant learned that Plaintiff continued to make telephone

calls and confirmed that Plaintiff somehow had not been placed in protective custody. *Id.*

Federal Defendant therefore renewed her request. *Id.* Even after Plaintiff was placed in

protective custody, he continued to have telephone privileges. *Id.* Therefore, ~~on December 22, 2005, the Warden was notified to ensure that the purpose of being in protective custody was not undermined~~. *See* Attached to Plaintiff's Complaint, Memorandum dated December 22, 2005.

On ~~April 24, 2006~~, the Court entered an order returning Plaintiff to population but with the

caveat that Plaintiff's ~~email and telephone calls should be monitored and that his visits be limited to his attorney~~, investigator and wife, Deniece. *See* attached to Plaintiff's Complaint, ~~Order~~

entered April 24, 2006.

5

## II. STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matter of which the court may take judicial notice, and matters of public record. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).[3] Here, Plaintiff has pled no facts in support of this action that would entitle him to relief.

## III. ARGUMENT

### A. Plaintiff Cannot Maintain a 42 U.S.C. 1983 Action Against Federal Defendant

Plaintiff's complaint is on a form captioned "...Complaint by a Prisoner Under the Civil Rights Act, 42 U.S.C. §1983," with documents attached. To the extent he raises claims under §1983 against Federal Defendant, Plaintiff fails to state a claim. Although Plaintiff seeks relief in the form of $1,000,000, he does not state specifically against which of the named defendants

---

[3]    Generally speaking, the Court should not consider matters beyond the pleadings without converting the motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6). Nonetheless, there are important exceptions to this general principle. The Court may properly take judicial notice of court records without converting a motion to dismiss into a motion for summary judgment. *Baker v. Henderson*, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001)("in determining whether a complaint fails to state a claim, the court may. . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); *Himmelman v. MCI Communications*, 104 F. Supp. 2d 1, 3 (D.D.C. 2000)("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.")

6



he seeks such damages. Regardless, because section 1983 does not apply to federal officials

acting under federal, rather than state authority, the Circuit's law is clear, Plaintiff fails to state a

1983 claim against Federal Defendant. *Williams v. U.S.A.*, 396 F.3d 412 (D.C. Cir. 2005)

(upholding the lower court's refusal to construe a 1983 claim as a *Bivens* claim).

**B.  Plaintiff's Claim is Barred by the Heck Rule**

Plaintiff's claims is barred by the rule pronounced in *Heck*.[4]  Since Plaintiff's claim is

based on an alleged illegal placement in protective custody, he must first invalidate the legality of

that placement before bringing a constitutional claim against Federal Defendant. *Edwards v.*

*Balisok*, 520 U.S. 641, 646 (1997).  Alternatively, the court could grant a stay of this action

pending conclusion of Plaintiff's upcoming trial. *Wallace v. Cato*, 127 S. Ct. 1091, 1098 (2007).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a prisoner may

not bring a civil rights action for money damages alleging unconstitutional conviction or

imprisonment unless the conviction had first been reversed, expunged, invalidated, or called into

question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87.  In *Edwards v.*

*Balisok*, 520 U.S. 641 (1997), the Supreme Court applied *Heck* to a prisoner's civil rights suit

attacking an internal prison disciplinary sanction that affected the overall length of confinement,

where good time had been taken from the inmate, holding that a claim for damages, based on

procedural defects in the prison disciplinary hearing, necessarily implied the invalidity of the

punishment imposed and was therefore not cognizable under § 1983. *Id.* at 647 (reiterating

---

[4]     ~~No rule requires Plaintiff to wait until the conclusion of his trial to bring a civil~~ ~~challenge to any alleged unlawful conduct.~~  However, the *Heck* rule also bars such actions until the alleged unlawful conduct has been invalidated. *See Wilson v. Barcella*, 2007 U.S. Dist. 22934, 2-23 (S.D. Tex. 2007)(applying the *Heck* bar to plaintiff's challenge to alleged unlawful conduct prior to trial).

*Heck's* holding as applicable to other harms caused by actions whose unlawfulness could render a conviction or sentence invalid). In *Williams v. Hill*, this Court extended the holding of these cases to *Bivens* actions brought against federal officials. 74 F.3d 1339, 1340 (D.C. Cir.1996).

~~████████████████████████████████████████████~~ Therefore, since Plaintiff's placement in protective custody has not been successfully challenged, this constitutional challenge is barred under the *Heck* rule. In addition to the *Heck* rationale, it is noteworthy that Plaintiff has several *Bivens* actions pending against individuals who are investigating or are prosecuting him. Arguably, Plaintiff is attempting to use these constitutional claims to intimidate the prosecutors, FBI Special Agents, ICE Agents, MPD Detectives etc. Application of the *Heck* Rule here to prevent *Bivens* abuse will prevent Plaintiff from achieving his objective.

## C.  Plaintiff's First and Sixth Amendment Claims Fail[5]

Plaintiff fails to state a claim for a First and Sixth Amendment violation of his rights of access to court and religious services. ~~████████████████████████████~~. On the contrary, the facts show that Plaintiff was represented by counsel during his placement in protective custody.

The Sixth Amendment states:

---

[5]     Plaintiff's Eighth Amendment Claim fails also because the Eighth Amendment does not apply to pretrial detainees. *Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C. Cir. 1991)(noting that a pretrial detainees recourse is under the Fifth Amendment while a convict's is under the Eighth). Plaintiff's Fourteenth Amendment claims against Federal Defendant are clearly barred, as the Fourteenth Amendment applies only to states and not to the federal government. *Bolling v. Sharpe*, 397 U.S. 497, 499 (1954).

> In all criminal prosecutions, the accused shall enjoy the right to a
> speedy and public trial, by an impartial jury of the State and district
> wherein the crime shall have been committed, which district shall
> have been previously ascertained by law, and to be informed of the
> nature and cause of the accusation; to be confronted with the
> witnesses against him; to have compulsory process for obtaining
> witnesses in his favor, and to have the Assistance of Counsel for
> his defense.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that the right of access

to the courts requires that inmates are assisted in preparing and filing meaningful legal papers by

providing inmates with adequate libraries and assistance. *Id.* at 828. Bounds did not confer

inmates with any specific means of access to the courts. Lewis v. Casey, 518 U.S. 343 (1996)

(holding that inmates alleging a *Bounds* violation must show that the inadequacy of the right of

access provided impaired his or her ability to vindicate their rights). In *Lewis*, the Court

dissolved an injunction that required prison authorities to provide specific means of access

because, inter alia, it failed to accord adequate deference to the judgment of prison officials about

inmates' access to courts including inmates on lockdown. *Id.* at 361-62. Furthermore, the Court

noted that, as long as an inmate is placed on lockdown for legitimate penological reasons, delays

in receiving mail were not unconstitutional. *Id.* at 362.

The same principle applies with regard to Plaintiff's First Amendment claims. "A

prisoner's First Amendment right to free exercise of his religion may be circumscribed to some

extent when the restriction is reasonably related to a legitimate penological interest." *Caldwell v.

Caesar*, 150 F.Supp.2d 50, 56 (D.D.C. 2001)(citing *O'Lone v. State of Shabazz*, 482 U.S. 342,

348 (1987)). Plaintiff was placed in protective custody because of concern that he was

attempting to identify potential witnesses against him and possibly do harm to them as well as

9

~~his~~ associate, ~~Maynard, to destroy evidence~~. Therefore,

~~Plaintiff was placed in protective custody for legitimate~~ penological reason. Plaintiff has not

pled any facts that establish that he was denied access to court or religious services any more than

any other inmate in protective custody. Plaintiff's access corresponded to his status as a high risk

inmate with the resources to attempt to influence the outcome of his trial through illegal means.

Accordingly, Plaintiff fails to state a claim for violation of his First or Sixth Amendment rights.

### D. Plaintiff's Placement In Protective Custody was Related to Legitimate Government Goals

~~Due process requires that a pretrial detainee not be punished prior to lawful conviction~~.

*~~Bell v. Wolfish~~*, 441 U.S. 520, 535 (1979). However, the government may detain individuals to

ensure their presence at trial and may subject them to the conditions and restrictions of the

detention facility as long as those conditions and restriction do not amount to punishment. *Id.* at

536-37. The determination of whether a condition of pretrial detention amounts to punishment

turns on whether the condition is imposed for the purpose of punishment or whether it is incident

to some legitimate government purpose. *Id.* at 538. Further, "if a restriction or condition is not

reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may

infer that the purpose of the governmental action is punishment[.]" *Id.* at 539.

Based on the *Wolfish* test, because Federal Defendant acted ~~solely to effect a legitimate~~

~~government interest~~, Plaintiff's claims should be dismissed. At the time of his placement in

protective custody, Plaintiff was awaiting trial for conspiracy to distribute drugs and the use of

electronic means to further the conspiracy. Plaintiff is accused of being the leader of said

conspiracy involving individuals who were not incarcerated at the time of Plaintiff's transfer to

10

protective custody, including Plaintiff's trusted associate, Maynard.  It is undisputed and Plaintiff

has not alleged any facts to contradict the ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████.  In addition, ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████snitches

████.[6]

 Accordingly, based on the collective experience of those involved in Plaintiff's

investigation, Federal Defendant requested that the Warden place Plaintiff in protective custody

in order to protect the judicial process and██████████████.  Memorandum from Federal

Defendant to the Warden, dated December 22, 2005 attached to complaint.  Plaintiff has since

been returned to general prison population with restrictions on visits and telephone calls.

Plaintiff fails to present sufficient facts to withstand Federal Defendant's motion because he was

placed in protective custody for legitimate government reasons.  Accordingly, █████████████

██████████.

### E. Federal Defendant is Entitled to Immunity

<u>Absolute Immunity</u>

 Although it does not appear from his complaint, to the extent that Plaintiff may be

attempting to sue Federal Defendant personally, ████████████████████.  Few areas

of the law draw a brighter line than the doctrine of absolute immunity for prosecutors and their

---

  [6] Hot means working with law enforcement.  *United States v. White*, 116 F.3d 903,
909 (D.C. Cir. 1997)(permitting out of court statements by a cooperating witness who was
murdered by the defendant).

actions within the prosecutorial function. *Epps v. Howe*, 2007 U.S. Dist. 55093 at 6-7 (D.D.C.

2007) (citing *Sloan v. HUD*, 231 F.3d 10, 19 (D.D.C. Cir. 2000)).[7] When prosecutors act in their

roles as advocates, absolute immunity applies. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (noting

that a prosecutor is absolutely immune from liability for presenting false statements in a probable

cause hearing); *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (noting that a prosecutor is

absolutely immune from liability for using false testimony at trial). Absolute immunity applies

even when the plaintiff establishes that the ████████████████████, █████████, or ████

█████. *Kalina v. Fletcher*, 522 U.S. 118 (1997). The rationale for absolute immunity is the

need to protect prosecutors from frivolous and unfounded claims and keep them focused on

serving the public trust. *Imbler*, *supra*, 424 U.S. at 424-28. (affirming dismissal of a complaint

on immunity grounds where the prosecutor knowingly used false evidence and suppressed

exculpatory evidence); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993) (concluding that

qualified rather than absolute immunity applied where the alleged misconduct occurred before

probably cause was established and anyone was arrested).

Under the functional approach, absolute immunity shields adversary functions such as

"initiating judicial proceedings, evaluating evidence, and preparing presentations before a grand

jury or trial." *Buckley*, *supra*, 509 U.S. at 272-73. Here, Federal Defendant is entitled to

absolute immunity because she was performing her a██████████████ when she requested that

Plaintiff be placed in protective custody in order to preserve the integrity of preparations for trial.

Indeed, the search of his cell confirmed that Plaintiff was attempting to gather the names of

---

[7]      Plaintiff also requests relief in the form of disbarment or suspension. This court
lacks the authority to grant that relief. Authority to grant that relief is conferred upon the
Disciplinary Panel. LCvR 57.24.

possible cooperating witnesses possibly to harm them. Plaintiff was also actively attempting to

contact his associate Maynard for reasons that could have included the ~~destruction of evidence~~

~~that could be used against them at trial~~. Plaintiff has not pled any facts that refute the fact that

Federal Defendant was ~~functioning in her role as an advocate when the decision was made to~~

~~place him in protective custody~~. The documents attached to Plaintiff's complaint actually

support the fact that Federal Defendant was functioning as the peoples' advocate. Accordingly,

these claims should be dismissed.

### Qualified Immunity

Alternatively, Federal Defendant is entitled to qualified immunity because, taking

Plaintiff's allegations as true, they do not state a constitutional violation and, even if they did, her

actions did not violate any ~~clearly~~ established statutory constitutional rights of which a

reasonable persons should have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather

than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is

erroneously permitted to go to trial." *Id.* The D.C. Circuit, in *Farmer v. Moritsugu*, 163 F.3d

610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on
> qualified immunity grounds] unless '[t]he contours of the right
> [were] sufficiently clear that a reasonable official would [have]
> underst[ood] that what he [was] doing violate[d] that right.' "
> *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *aff'd*
> 922 F.2d 443 (8th Cir. 1990)).

13

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages," *Anderson*, 483 U.S. at 646, the doctrine of qualified immunity strikes a balance between compensating those injured by official conduct and protecting the Government's basic ability to function. *See Harlow*, 457 U.S. at 813-14. In other words, qualified immunity is designed to mitigate the social costs of exposing government officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 816; *see also Harris*, 932 F.2d at 13. To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Court found that defendant's conduct in handcuffing plaintiff, a prisoner, to a hitching post, with his arms above his head, shirtless, in the blazing sun, without water or bathroom breaks for seven hours violated clearly established constitutional rights of which defendant should have been aware. The plaintiff pled sufficient facts to preclude qualified immunity because there was precedent condemning the hitching post practice beyond what was necessary to quell a threat or restore order and there had already been a Department of Justice report condemning the hitching post practice as improper corporal punishment. 536 U.S. at 736-37. These same facts established that a reasonable person should have been aware that the hitching post practice particularly in the circumstance plaintiff was placed was a violation of his rights. *Id.* at 741. Plaintiff has not pled anything remotely

14

resembling the pleading in *Hope*.

By contrast, in this case, Plaintiff fails to allege facts that could defeat a valid defense of qualified immunity. Plaintiff does not have any liberty interest to remain in general population that is protected by due process. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Sandin* at 472.   Therefore, Plaintiff did not have a clearly established right to a hearing. Regardless, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ placement hearing resulting in an order restricting his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ privileges.

Notably, though, ▮▮▮▮▮▮▮▮▮ received information that Plaintiff was attempting to ▮▮▮▮▮▮▮▮▮ his illicit drug enterprise from jail and attempting to find potential witnesses against him. Specifically, Plaintiff used his wife's cell phone to contact his trusted associate, Maynard and used his various love interests to try and communicate with his associates outside the prison. The search of Plaintiff's cell turned up notes with certain individuals noted as "hot." These are the legitimate government concerns that resulted in Plaintiff's placement in protective custody in the first place.

Assuming arguendo the complaint could be interpreted to sufficiently state that Federal Defendant committed unconstitutional acts, as discussed above, plaintiff failed to articulate how his constitutional rights were clearly established. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Accordingly, even under the facts as alleged in the complaint, Federal Defendant is entitled to qualified immunity, and should be dismissed from this lawsuit.

15

## CONCLUSION

Upon the foregoing, Federal Defendant respectfully requests that Plaintiff's complaint be

dismissed or, in the alternative, stayed pending the conclusion of the upcoming trial.

October 5, 2007                              Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4210
Washington, D.C. 20530
(202) 514-7157

16

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANTOINE JONES,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 07-1027 (RJL)** |
| ) | |
| **v.** ) | |
| ) | |
| **RACHEL LIEBER, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

UPON CONSIDERATION of the Federal Defendant's Motion To Dismiss Plaintiff's

Complaint, support thereof, the grounds stated therefore and the entire record in this matter, it is

by the Court this _____ day of _____, 2007, hereby

ORDERED that the said motion be and hereby is granted, and

FURTHER ORDERED that this case is dismissed with prejudice.

This is a final and appealable order.

_____
HON. RICHARD J. LEON, U.S.D.J.

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
555 4th Street, N.W
Washington, D.C. 20530

Antoine Jones
Register Number, DCDC 241-912
1901 D Street, S.E.
Washington, D.C. 20003

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Federal Defendant's Motion to Dismiss was mailed by

depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Antoine Jones
Register Number, DCDC 241-912
1901 D Street, S.E.
Washington, D.C. 20003

on this 5th day of October, 2007

_____/s/_____
KENNETH ADEBONOJO

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ANTOINE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 07-1027 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL LIEBER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FEDERAL DEFENDANT'S MOTION TO DISMISS PLAINTIFF COMPLAINT

The Federal Defendant, by and through their attorney, the United States Attorney for the

District of Columbia, hereby moves to dismiss this case for Failure to State a Claim under Fed.

R. Civ. P. 12(b)(6). This motion is accompanied by Memorandum and Proposed Order

consistent with LcvR 7(a) and (c).

*Pro se* Plaintiff will take note that if he fails to respond to this motion to dismiss, the

Court may grant this motion and dismiss his case because of his failure to respond. *See Fox v.

Strickland*, 837 F.2d 507 (D.C. Cir. 1988).

October 5, 2007                    Respectfully submitted,

                                     _____/s/_____
                                     JEFFREY A. TAYLOR, D.C. BAR # 498610
                                     United States Attorney


                                     _____/s/_____
                                     RUDOLPH CONTRERAS, D.C. BAR # 434122
                                     Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Antoine Jones                                           Jury Trial
241912
1901 D Street, SE
Washington, DC  20003
Plaintif


-V-                                                     Civil Action  1:07-CV-01027RJL

Defendants
Rachel Lieber, Norma Horne, and Dennis Harrison


Motion to Notify Defendants and attorneys of correct address of Plaintiff

Plaintiff, Antoine Jones, is in receipt of "Defendant Norma Horne's Motion to Dismiss"
on this 15th Day of October, 2007.  Defendant's attorney mailed this information on or
about August 27, 2007, to Rivers Correctional Institution in Winton, NC.  Since Plaintiff
Jones received the information on October 15, 2007, Plaintiff has not had an opportunity
to respond to this motion.  Plaintiff requests time to respond to the request since it is no
fault of his own that the defendant's attorney mailed the information to the wrong
address.  Further, Plaintiff Jones requests the courts to proceed to trial with this case as
the information in plaintiff's original filing has substantiated an abundance of evidence
supporting multiple allegations of legal violations by the defendants.

Plaintiff Antoine Jones is currently housed at DC Jail in Washington, DC.  As noted in
Plaintiff's original filing, the correct mailing address for Plaintiff Antoine Jones is:

Antoine Jones
DCDC #241-912
1901 D Street, SE
Washington, DC  20003

Plaintiff Jones requests the Defendant's counsel make the mailing address correction.

cc:
Rachel R. Hranitzky
Assistant Attorney General
441 Fourth Street, NW, Sixth Floor North
Washington, DC  20001

GOVERNMENT OF THE DISTRICT OF COLUMBIA

OFFICE OF THE ATTORNEY GENERAL

FOR THE DISTRICT OF COLUMBIA

OFFICIAL BUSINESS

PENALTY FOR MISUSE

Mr. Antoine Jones
DC #241-912
Rivers Correctional Institute
Inmate Mail/Parcels
P.O. Box 630
Winton, NC 27986,

OFFICE OF THE ATTORNEY GENERAL
SUITE 600S
441 FOURTH STREET, N.W.
WASHINGTON, D.C. 20001

ANTOINE JONES
DC # 241-912
RIVERS CORRECTIONAL INSTITUTION
POB 630
WINTON, N.C. 27986

US POSTAGE

ANTOINE JONES
DC-DA 912
RIVERS CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 630

RIVERS CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 630
Winton, NC 27986



Antoine Jones
18600-016
12221 Brandywine Rd
Brandywine, MD 20613

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES
    (Plaintiff)

                    V                    Civil Action No. 07-1027(RJL)

RACHEL LIEBER, NORMA HORNE,
DENNIS HARRISON
            (Defendants)

~~Plaintiff Jones' Response to Document 8 (Norma Horne Motion to Dismiss &~~
Document 9 (Dennis Harrison Motion to Dismiss)

Response to Document 8, Norma Horne's motion to dismiss, the Honorable Judge

Leon denied Norma Horne's motion without prejudice and further ordered that the clerk

shall provide the summons and a copy of the complaints to the United States Marshall

who shall effect personal service of same upon Norma Horne.  Filed 7/31/2007

Document 10.

Response to Document 9, Dennis Harrison's motion to dismiss for lack of

jurisdiction pursuant to Fed Rule Civ.P.12(B) and plaintiff failed to effectuate proper

service against defendant Harrison pursuant to Fed R. Civ. 4(c) and therefore, this court

lacks personal jurisdiction over the defendant.

Additionally, defendant Harrison, moves this court, pursuant to Fed. R.Civ.

P12(B)(6) order dismissing plaintiff's complaint with prejudice because plaintiff has

failed to state claim against him for which he is entitled to relief.   Defendant Harrison

claims, the suit against Defendant Harrison is an official-capacity suit, and plaintiff must

name the District of Columbia as the proper party defendant for his requested relief.

Defendant Harrison states he is entitled to the defense of qualified immunity.

Lastly, plaintiff's fourteenth Amendment claim fails as a matter of law since it is inapplicable to District employees.

Response to Dennis Harrison's motion.  <u>Time Limit for service.</u>  If serviced of the summons and complaint is not made upon a defendant within <u>120 days</u> after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time.

Defendant Jones has been incarcerated since October 24, 2005, and has no funds or resources to present summons to defendants.  Mr. Jones is relying on the Courts to assist him with the service to the named defendants.  Further, Jones has no information regarding defendants' places of residence or any physical address.  Jones only has the place of business where defendants are employed; Norma Horne: DC Metropolitan Police Department, Dennis Harrison: DC Department of Corrections, DC Jail, and Rachel Lieber: US Department of Justice, US Attorney's Office.


## FACTS

On August 5, 2007, Jones sent summons to the Clerk of the United States District Court requesting the service of the U.S. Marshal Service.  In addition, Jones also sent "Notice of Intent" to the U.S. Attorney General, Alberto Gonzales and to Mayor Adrian Fenty.

Conclusion:  Jones has taken months to follow the policy and guidelines of the Department of Corrections by exhausting all grievance remedies up to, and including

writing the Mayor's office. During this process, Jones was under the mercy of Acting

Warden, Dennis Harrison. Jones' complaints were neglected and Mr. Harrison and his

administration displayed unprofessional conduct in this matter. Mr. Harrison should have

recognized the communication from Rachel Lieber to put Mr. Jones in Total Separation

was not a court order. Jones further interjects that the tactic was a ploy by Ms. Lieber to

spy on Jones' defense in order to leverage a technical advantage for the prosecutors,

albeit out or order and out of line.

I submit as an exhibit, a copy of the memorandum to Antoine Jones from Dennis

Harrison, Acting Warden, dated March 1, 2006, subject: Inmate Grievance Procedure.

Acting Warden Harrison stated, "In response to your grievance the Housing Board

conducted a housing hearing on December 15, 2005 to determine your housing status.

Per the US Attorney's Office request you are to be placed on Total Separation from

general population, also phone restriction and mail privileges. Therefore, you were

placed on status total separation, which was explained during your initial review and the

unit case manager conducted all follow-up reviews. Your case was shared with chief unit

case manager, Ms. Leona Bennett for further resolution.

Therefore, this matter is considered resolved."

Based on the statements made in this memorandum signed by Acting Warden

Harrison, Jones claims that the Acting Warden Harrison was therefore responsible for his

actions, his decision and the actions of the unit case manager, chief unit case manager,

and his administration. Jones was a minimum security detainee who was subjected to a

maximum security environment as well as unsafe and unhealthy environment without any

provocation on behalf of Jones. Acting Warden Harrison, Department of Corrections,

District of Columbia Government; Assistant US Attorney Rachel Lieber, U.S.

Department of Justice; Detective Norma Horne, DC Metropolitan Police Department are

responsible for professional misconduct, foul play and lack of professionalism.

Respectfully submitted,

ANTOINE JONES, pro se

*Antoine J ones*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES
  (Plaintiff)

        V                    Civil Action No. 07-1027(RJL)

RACHEL LIEBER, NORMA HORNE,
DENNIS HARRISON
      (Defendants)

## PLAINTIFF ANTOINE JONES MOTION TO REQUEST LEGAL ASSISTANCE

      Plaintiff Antoine Jones, pro se, respectfully requests through and by this motion to be appointed the assistance of an attorney. Jones has been incarcerated since October 24, 2005, and doesn't have the access to court nor the proper resources, financial or otherwise to properly litigate this matter. Jones is a detainee at DC Jail and does not have the ability to access legal case law. Further, Jones cannot pull up the cases the Government cited in Documents 8 and 9, Motions to Dismiss. As a lay person, Jones does not understand the legal terminology. Jones filed the action pro se, however, it has become apparent that the lack of legal knowledge, experience and/or training has put Jones at a disadvantage.

                          Respectfully submitted,

                          ANTOINE JONES, pro se

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,                            )
                                          )   **Civil Action No.: 1:07-CV-01027**
        **Plaintiff,**              )   **Judge Richard J. Leon**
                                          )
v.                                        )
                                          )
RACHEL LIEBER, NORMA HORNE                )
and DENNIS HARRISON,                      )
                                          )
        **Defendants.**             )

### DEFENDANT NORMA HORNE'S MOTION TO DISMISS

Defendant Norma Horne (hereafter "Defendant Horne") respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1) for an Order dismissing plaintiff's Complaint in its entirety. Plaintiff has failed to satisfy the requirements of Fed. R. Civ. P. 9. Additionally, Defendant Horne is entitled to the defense of qualified immunity. Lastly, plaintiff's Fourteenth Amendment claim fails as a matter of law since it is inapplicable to District employees.

In support of her motion, Defendant Horne refers the Court to her attached memorandum of points and authorities.

        Respectfully submitted,

        LINDA SINGER
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General, Civil Litigation Division

        /s/ Patricia A. Jones
        PATRICIA A. JONES [428132]
        Chief, General Litigation, Section IV

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY [974458]
Assistant Attorney General
441 4th Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2007, I caused a copy of the foregoing

Defendant Norma Horne's Motion to Dismiss, Memorandum of Points and Authorities in

Support Thereof, and Proposed Order to be served via first class mail, postage prepaid to the

following pro se plaintiff:  Mr. Antoine Jones, DC #241-912, Rivers Correctional Institute,

Inmate Mail/Parcels, P.O. Box 630, Winton, NC 27986.

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY
Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTOINE JONES, | ) | |
| | ) | Civil Action No.: 1:07-CV-01027 |
| Plaintiff, | ) | Judge Richard J. Leon |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL LIEBER, NORMA HORNE | ) | |
| and DENNIS HARRISON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NORMA HORNE'S MOTION TO DISMISS

Defendant Norma Horne (hereafter "Defendant Horne") respectfully submits this Memorandum of Points and Authorities in support of her motion to dismiss.

### I.    PRELIMINARY STATEMENT

Plaintiff filed the instant action on June 8, 2007, against Rachel Leiber, Norma Horne and Dennis Harrison. *See* Docket Entry #1. Plaintiff alleges that on or about November 22, 2005, Metropolitan Police Detective, Defendant Norma Horne, falsely filed a probable cause affidavit for a search warrant for a jail cell that he occupied. Plaintiff further alleges that Assistant U.S. Attorney Rachel Lieber issued an order on November 23, 2005, to place him in lockdown without a court order. Lastly, plaintiff avers that Acting Warden Dennis Harrison placed him in lockdown without a court order. *See* Complaint, Section V. Plaintiff claims that the alleged foregoing actions violated his civil rights. *Id.*

Plaintiff seeks both compensatory and punitive damages pursuant to 42 U.S.C. §1983, for these alleged violations of his rights under the First, Eighth and Fourteenth Amendments. *See*

Complaint, generally. For the following reasons, Defendant Horne is entitled to dismissal of the Complaint against her as a matter of law.

## II.    **ARGUMENT**

### A.    Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6).

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate when a moving party has failed to set forth a claim for which he/she is entitled to relief. A plaintiff is required to plead enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007). In order to survive a motion to dismiss, a plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.,* 127 S.Ct. at 1964-65. "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966.

### B.    Plaintiff's Complaint Does Not Satisfy Rule 9 and Dismissal is Appropriate.

According to Fed. R. Civ. P. 9, "in all averments of fraud …, the circumstances constituting fraud…shall be stated with particularity." In this case, plaintiff avers that Defendant Horne deceived and misled Judge Alan Kay by fabricating the existence of probable cause in her affidavit for a search warrant for his jail cell. *See* Complaint, generally. These conclusory allegations without any factual support are insufficient to maintain this cause of action against this defendant. *See Bell Atlantic Corp., supra,* holding that a plaintiff must provide more than mere conclusions in his complaint, and must aver sufficient facts to state a claim for relief. Plaintiff's failure to recite specific facts to support his entitlement to relief from this defendant precludes his ability to maintain this action against Defendant Horne.

2

C.    **Defendant Horne is entitled to qualified immunity.**

Defendant Horne is entitled to qualified immunity in this case. The purpose of qualified immunity is to protect governmental officials against insubstantial lawsuits which have the following societal costs: 1) expenses of litigation; 2) diversion of official energy from pressing public issues; 3) deterrence of able citizens from acceptance of public office; and 4) the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals. *Harlow v. Fitzgerald,* 457 U.S. 800, 814 (1982). *See also, Procunier v. Navarette,* 434 U.S. 555 (1978) (state prison officials possess qualified immunity for their discretionary acts). Qualified immunity shields a government official from liability as long as his action could reasonably have been thought to be consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). After an assertion of qualified immunity, these persons are protected from suit if their officials acts were "objectively reasonable" as assessed in light of the legal rules that were "clearly established" at the time of the alleged illegal action. *Id.*

A government official should prevail on the qualified immunity defense even if he is mistaken, if a reasonable government official could have believed that the action taken was not in violation of clearly established constitutional law. *Anderson,* 483 U.S. at 641. Qualified immunity thus protects all but the plainly incompetent or those who knowingly violate the law.

To prevail against Defendant Horne, plaintiff must show that her conduct violated plaintiff's constitutional rights. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). If a right has been violated, then the court must assess ". . . whether it would be clear [or foreseeable] to a government official that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202. Plaintiff avers that Defendant Horne submitted a false affidavit in support of a search warrant of his jail cell. There is no information contained in his complaint as to what

3

the false statement was, and/or that this defendant knew or should have known that the statements were false. *See* Complaint, generally. In fact, plaintiff has failed to plead any facts to show that Defendant Horne's actions violated his constitutional rights, that she was deliberately indifferent and/or that she knowingly failed to take action that she reasonably believed would alleviate serious risks of harm to him. Based on the allegations set forth in the Complaint against Defendant Horne, she is entitled to qualified immunity as a matter of law.

### D.    The Fourteenth Amendment Is Inapplicable to District Employees.

Plaintiff seeks to proceed against this defendant under the Fourteenth Amendment for his 42 U.S.C. §1983 claims. *See* Complaint, pg 1. Plaintiff's claims under the Fourteenth Amendment are untenable against Defendant Horne because the Fourteenth Amendment does not apply to the actions of the District of Columbia or its officials/employees. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1953). Rather, the Fifth Amendment provides protection against the District and/or its officials/employees. *Id*. As such, plaintiff's claims filed under the Fourteenth Amendment must be dismissed as a matter of law.

### III.    CONCLUSION

As set forth above, this lawsuit against Defendant Horne must be dismissed in its entirety because plaintiff has failed to satisfy the requirements of Rule 9, Ddefendant Horne is entitled to qualified immunity and the Fourteenth Amendment is inapplicable to District employees. Thus, Defendant Horne is entitled to dismissal of plaintiff's lawsuit against her as a matter of law.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

4

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY [974458]
Assistant Attorney General
441 4th Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,                        )
                                      )      Civil Action No.: 1:07-CV-01027
                   Plaintiff,         )      Judge Richard J. Leon
                                      )
v.                                    )
                                      )
RACHEL LIEBER, NORMA HORNE            )
and DENNIS HARRISON,                  )
                                      )
                   Defendants.        )

## ORDER

Upon consideration of defendant Norma Horne's Motion to Dismiss Plaintiff's

Complaint, plaintiff's response thereto, if any, and the record herein, it is this _____ day of

_____, 2007,

ORDERED: that Norma Horne's Motion to Dismiss is hereby GRANTED for the reasons

set forth in his motion, and it is,

FURTHER ORDERED: that plaintiff's action shall be dismissed against Norma Horne

with prejudice.

_____
Judge Richard J. Leon
U.S. District Court for the District of Columbia

## Orders on Motions
<u>1:07-cv-01027-RJL JONES v. LIEBER</u>
JURY, PROSE-PR, TYPE-F

### U.S. District Court

### District of Columbia

## Notice of Electronic Filing

The following transaction was entered on 7/31/2007 at 11:11 AM and filed on 7/31/2007
**Case Name:**        JONES v. LIEBER
**Case Number:**     <u>1:07-cv-1027</u>
**Filer:**
**Document Number:** <u>10</u>

**Docket Text:**
ORDER denying [8] Motion to Dismiss for Lack of Jurisdiction, by Norma Horne. The clerk shall provide the summons and a copy of the complaint to the United States Marshall who shall effect personal service of same upon Norma Horne. Signed by Judge Richard J. Leon on 7/27/07. (whb)

**1:07-cv-1027 Notice has been electronically mailed to:**
Rachel R. Hranitzky rachel.hranitzky@dc.gov
Kenneth Adebonojo kenneth.adebonojo@usdoj.gov,
tammatha.l.dawkins@usdoj.gov

**1:07-cv-1027 Notice will be delivered by other means to::**

ANTOINE JONES
DC 241-912
DISTRICT OF COLUMBIA JAIL
Inmate Mail/Parcels
1901 D Street SE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTOINE JONES, | ) | |
| | ) | Civil Action No.: 1:07-CV-01027 |
| Plaintiff, | ) | Judge Richard J. Leon |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL LIEBER, NORMA HORNE | ) | |
| and DENNIS HARRISON, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DENNIS HARRISON'S MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT

Defendant Dennis Harrison (hereafter "Harrison"), by and through counsel, respectfully

moves this Court, pursuant to Fed. R. Civ. P. 12(b), for an Order dismissing Plaintiff's complaint

against him. Plaintiff failed to effectuate proper service against Defendant Harrison pursuant to

Fed. R. Civ. P. 4(c) and (e), and therefore, this Court lacks personal jurisdiction over this

Defendant. Additionally, defendant Harrison, respectfully moves this Court, pursuant to Fed. R.

Civ. P. 12(b)(6), for an Order dismissing plaintiff's complaint with prejudice because plaintiff

has failed to state a claim against him for which he is entitled to relief. The suit against

Defendant Harrison is an official-capacity suit, and plaintiff must look to the District of

Columbia as the proper party defendant for his requested relief. Moreover, Defendant Harrison

is entitled to the defense of qualified immunity. Lastly, plaintiff's Fourteenth Amendment claim

fails as a matter of law since it is inapplicable to District employees.

In support of his motion, Defendant Harrison refers this Court to the attached

memorandum of points and authorities.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/ Rachel R. Hranitzky_____
RACHEL R. HRANITZKY [974458]
Assistant Attorney General
441 4th Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov


## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2007, I caused a copy of the foregoing

Defendant Dennis Harrison's Motion to Dismiss Plaintiff's Complaint, Memorandum of Points

and Authorities in Support Thereof, and Proposed Order to be served via first class mail, postage

prepaid to the following pro se plaintiff: Antoine Jones, DC #241-912, 1901 D Street, S.E.,

Washington, D.C. 20003.

/s/ Rachel R. Hranitzky_____
RACHEL R. HRANITZKY
Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTOINE JONES, | ) | |
| | ) | Civil Action No.: 1:07-CV-01027 |
| Plaintiff, | ) | Judge Richard J. Leon |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL LIEBER, NORMA HORNE | ) | |
| and DENNIS HARRISON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DENNIS HARRISON'S MOTION TO DISMISS

### I.    PRELIMINARY STATEMENT

Plaintiff filed the instant action on June 8, 2007, against Rachel Leiber, Norma Horne and

Dennis Harrison. *See* Docket Entry #1.  Plaintiff alleges that on or about November 22, 2005,

Metropolitan Police Detective Norma Horne, falsely filed a probable cause affidavit for a search

warrant for a jail cell that he occupied.  Plaintiff further alleges that Assistant U.S. Attorney

Rachel Lieber issued an order on November 23, 2005, to place him in lockdown without a court

order.  Lastly, plaintiff avers that Acting Warden Dennis Harrison (hereafter "Harrison"), placed

him in lockdown without a court order.  *See* Complaint, Section V.  Plaintiff claims that the

alleged foregoing actions violated his civil rights.  *Id.*

Plaintiff seeks both compensatory and punitive damages pursuant to 42 U.S.C. § 1983,

for these alleged violations of his rights under the First, Eighth and Fourteenth Amendments.

*See* Complaint, generally.  For the following reasons, Defendant Harrison is entitled to dismissal

of the Complaint against him as a matter of law.

## II.    ARGUMENT

### A.    Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b).

Fed. R. Civ. P. 12(b) provides that the following defense may be made at the option of

the pleader by motion: (2) lack of jurisdiction over the person. Therefore, dismissal is

appropriate if the evidence shows that the Court lacks jurisdiction over the person. Before a

court may exercise personal jurisdiction over a defendant, the procedural requirement of proper

service of summons must be satisfied to assure notice to the defendant. *See Omni Capital Int'l v.*

*Rudolph Wolff & Co.,* 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987). *See also,*

*Nikbin v. Islamic Republic of Iran,* 2007 U.S. Dist. LEXIS 1903 (D.D.C. Jan. 11, 2007)

### B.    Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(5).

A party can move the court to dismiss a complaint under Fed. R. Civ. P. 12(b)(5) for

insufficient service of process. "The party on whose behalf service is made has the burden of

establishing its validity when challenged; to do so, he must demonstrate that the procedure

employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable

provision of law." *Light v. Wolf,* 259 U.S. App. D.C. 442, 816 F.2d 746, 751 (D.C. Cir. 1987)

(internal quotations omitted); *Hilska v. Jones,* 217 F.R.D. 16, 20 (D.D.C. 2003). Fed. R. Civ. P.

12(b)(5) provides that dismissal is proper where there is insufficiency of service of process.

### C.    Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6).

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate when a moving party has

failed to set forth a claim for which he/she is entitled to relief. A plaintiff is required to plead

enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v.*

*Twombly,* 127 S.Ct. 1955, 1974 (2007). In order to survive a motion to dismiss, a plaintiff's

complaint must contain "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atlantic Corp.,* 127 S.Ct. at 1964-65. "When the

4

allegations in a complaint, however true, could not raise a claim of entitlement to relief, this

basic deficiency should be exposed at the point of minimum expenditure of time and money by

the parties and the court." *Id.* at 1966.

**D.    Plaintiff Failed to Effectuate Proper Service against Defendant Harrison, and Therefore, This Court Lacks Personal Jurisdiction Over Him.**

Fed. R. Civ. P. 4(c) provides that "[a] summons shall be served together with a copy of

the complaint. The plaintiff is responsible for service of a summons and complaint within the

time allowed...." Plaintiff's Process Receipt and Return evidences that on July 12, 2007,

Sergeant Aden Bushee was served with a summons and complaint for Defendant Harrison at

Defendant Harrison's former place of employment. While Defendant Harrison has ultimately

received a copy of the summons and complaint, service was improper. *See McLaughlin v.*

*Fidelity Sec. Life Ins.,* 667 A.2d 105 (D.C. 1995), holding whether defendant received actual

notice of the action is immaterial to the sufficiency of service of process.

Service is improper where a person other than the named party to the lawsuit who is not

an agent authorized by appointment or by law receives the service of process. *See, Cheng v.*

*Cheung,* 710 A.2d 877 (D.C. 1998) (service upon the defendant's wife at the place of business

rather than the residence was improper); *Morfessis v. Marvins Credit, Inc.,* 77 A.2d 178 (D.C.

1950) (service by certified mail on defendant at place of business where papers were signed by

secretary is improper without showing that secretary was agent authorized to receive service of

process). Plaintiff has failed to provide any information that shows that Sergeant Bushee was

authorized by appointment or by law to receive service of process on behalf of Defendant

Harrison. *See* Process Receipt and Return for Dennis Harrison, Docket Entry #6. Because

Defendant Harrison has not given authorization to Sergeant Bushee to accept service of process

4

on his behalf, plaintiff has not properly effected upon Defendant Harrison, and this lawsuit must

be dismissed against him.

### E.    Plaintiffs' action against defendant Dennis Harrison is an official-capacity suit and must be dismissed.

A review of plaintiffs' Complaint demonstrates that he has sued Defendant Harrison in

his official-capacity only. There are no specific allegations set forth in plaintiff's Complaint that

Defendant Harrison had any personal knowledge about or involvement in any of plaintiff's

claims. *See* Complaint, generally. The U.S. Supreme Court has ruled upon the issue of official-

capacity suits. The Supreme Court has held that,

> Official-capacity suits . . ."generally represent only another way of pleading
> an action against an entity of which an officer is an agent." [Citation
> omitted.]  As long as the government entity receives notice and an
> opportunity to respond, an official-capacity suit is, in all respects other than
> name, to be treated as a suit against the entity. [Citation omitted.] . . . the
> real party in interest is the entity. Thus, . . . a plaintiff seeking to recover
> on a damages judgment in an official-capacity suit must look to the
> government entity itself.

*Kentucky v. Graham,* 473 U.S. 159 (1985).  The District of Columbia is the true party

defendant in this action. Consequently, Defendant Harrison should be dismissed because the

District of Columbia is the proper party defendant, and plaintiff must look to the District for any

requested relief.

### F.    Defendant Harrison is entitled to qualified immunity.

Defendant Harrison is entitled to qualified immunity in this case.  The purpose of qualified

immunity is to protect governmental officials against insubstantial lawsuits which have the following

societal costs: l) expenses of litigation; 2) diversion of official energy from pressing public issues;

3) deterrence of able citizens from acceptance of public office; and 4) the possibility that the fear of

being sued will dampen the ardor of all but the most resolute individuals. *Harlow v. Fitzgerald,*

457 U.S. 800, 814 (1982). *See also, Procunier v. Navarette,* 434 U.S. 555 (1978) (state prison

4

officials possess qualified immunity for their discretionary acts). Qualified immunity shields a

government official from liability as long as his action could reasonably have been thought to be

consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S.

635, 638 (1987). After an assertion of qualified immunity, these persons are protected from suit if

their officials acts were "objectively reasonable" as assessed in light of the legal rules that were

"clearly established" at the time of the alleged illegal action. *Id.*

A government official should prevail on the qualified immunity defense even if he is

mistaken, if a reasonable government official could have believed that the action taken was not in

violation of clearly established constitutional law. *Anderson,* 483 U.S. at 641. Qualified immunity

thus protects all but the plainly incompetent or those who knowingly violate the law.

To prevail against Defendant Harrison, plaintiff must show that his conduct violated

plaintiff's constitutional rights. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). If a right has

been violated, then the court must access ". . . whether it would be clear [or foreseeable] to a

government official that his conduct was unlawful in the situation he confronted." *Saucier,* 533

U.S. at 202. Plaintiff has failed to plead any facts to show that defendant Harrison's actions

violated his constitutional rights, that he was deliberately indifferent and/or that he knowingly

failed to take action that he reasonably believed would alleviate serious risks of harm to the

plaintiff. Based on the allegations set forth in the Complaint against Defendant Harrison, he is

entitled to qualified immunity as a matter of law.

### G.     The Fourteenth Amendment Is Inapplicable to District Employees.

Plaintiff seeks to use the Fourteenth Amendment as a theory for liability for his 42

U.S.C. §1983 claims against Defendant Harrison in this lawsuit. *See* Complaint, pg 1, ¶1 of

type written complaint of Antoine Jones which is a part of Docket Entry #1. Plaintiff's claims

under the Fourteenth Amendment are untenable against Defendant Harrison because the

4

Fourteenth Amendment does not apply to the actions of the District of Columbia or its

officials/employees. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1953). Rather, the Fifth

Amendment provides protection against the District and/or its officials/employees. *Id.* As

such, plaintiff's claims filed under the Fourteenth Amendment must be dismissed as a matter of

law.

### III.    CONCLUSION

As set forth above, plaintiff has failed to effectuate proper service against defendant

Horne, and therefore this Court lacks personal jurisdiction over defendant Horne. Accordingly,

the lawsuit against defendant Harrison must be dismissed. Additionally, Plaintiff's action against

Defendant Harrison is an official-capacity suit and must be dismissed. Moreover, Defendant

Harrison is entitled to qualified immunity and the Fourteenth Amendment is inapplicable to

District employees. This defendant is entitled to dismissal of plaintiff's lawsuit against him as a

matter of law.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY [974458]
Assistant Attorney General
441 4th Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,                              )
                                            )     Civil Action No.: 1:07-CV-01027
                    Plaintiff,              )     Judge Richard J. Leon
                                            )
v.                                          )
                                            )
RACHEL LIEBER, NORMA HORNE                  )
and DENNIS HARRISON,                        )
                                            )
                    Defendants.             )

## ORDER

Upon consideration of defendant Dennis Harrison's Motion to Dismiss Plaintiff's

Complaint, plaintiff's response thereto, if any, and the record herein, it is this _____ day of

_____, 2007,

ORDERED: that Dennis Harrison's Motion to Dismiss is hereby GRANTED for the

reasons set forth in his motion, and it is,

FURTHER ORDERED: that plaintiff's action shall be dismissed against Dennis

Harrison with prejudice.

_____
Judge Richard J. Leon
U.S. District Court for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,                          )
                                        )    **Civil Action No.: 1:07-CV-01027**
    Plaintiff,      )    **Judge Richard J. Leon**
                                        )
v.                                      )
                                        )
RACHEL LIEBER, NORMA HORNE              )
and DENNIS HARRISON,                    )
                                        )
    Defendants.     )

### DEFENDANT NORMA HORNE'S MOTION TO DISMISS

Defendant Norma Horne (hereafter "Defendant Horne") respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1) for an Order dismissing plaintiff's Complaint in its entirety. Plaintiff has failed to satisfy the requirements of Fed. R. Civ. P. 9. Additionally, Defendant Horne is entitled to the defense of qualified immunity. Lastly, plaintiff's Fourteenth Amendment claim fails as a matter of law since it is inapplicable to District employees.

In support of her motion, Defendant Horne refers the Court to her attached memorandum of points and authorities.

      Respectfully submitted,

      LINDA SINGER
      Attorney General for the District of Columbia

      GEORGE C. VALENTINE
      Deputy Attorney General, Civil Litigation Division

      /s/ Patricia A. Jones
      PATRICIA A. JONES [428132]
      Chief, General Litigation, Section IV

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY [974458]
Assistant Attorney General
441 4th Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2007, I caused a copy of the foregoing

Defendant Norma Horne's Motion to Dismiss, Memorandum of Points and Authorities in

Support Thereof, and Proposed Order to be served via first class mail, postage prepaid to the

following pro se plaintiff:  Mr. Antoine Jones, DC #241-912, Rivers Correctional Institute,

Inmate Mail/Parcels, P.O. Box 630, Winton, NC 27986.

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY
Assistant Attorney General

2

WASHINGTON, DC 20003

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**O:\Scan Repository\Burwell\07-1027.pdf
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=7/31/2007] [FileNumber=151093
[102d96654df88da44d25d81e343b5c665059e1102ad32459bd20005d3188a7f6
14e169140c534a3724fe5c4c67d5bedcad453b2d679aefaa6917d40aaa36]]

**Other Orders/Judgments**
1:07-cv-01027-RJL JONES v. LIEBER
JURY, PROSE-PR, TYPE-F

## U.S. District Court

### District of Columbia

## Notice of Electronic Filing

The following transaction was entered on 7/31/2007 at 1:27 PM and filed on 7/31/2007

**Case Name:**      JONES v. LIEBER
**Case Number:**    1:07-cv-1027
**Filer:**
**Document Number:** 11

**Docket Text:**
Order advising plaintiff to respond or Court may deem matter as conceded re: [9] MOTION to Dismiss for Lack of Jurisdiction filed by DENNIS HARRISON. Signed by Judge Richard J. Leon on 7/31/07. (whb)

**1:07-cv-1027 Notice has been electronically mailed to:**
Rachel R. Hranitzky rachel.hranitzky@dc.gov
Kenneth Adebonojo kenneth.adebonojo@usdoj.gov,
tammatha.l.dawkins@usdoj.gov

**1:07-cv-1027 Notice will be delivered by other means to::**

ANTOINE JONES
DC 241-912
DISTRICT OF COLUMBIA JAIL
Inmate Mail/Parcels
1901 D Street SE
WASHINGTON, DC 20003

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**O:\Scan Repository\Burwell\07-1027.pdf
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=7/31/2007] [FileNumber=151135
0]
[5484baf3d937f0bf5c42c26987c2a79910955283b2a120f5259f0460bd742b543
df5706dde71fb934f8a8c01c805e557e540b194186586f927d6fe68c387a]]