UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

RECEIVED

MAR 25 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ANTOINE JONES
          PLANTIFF

V.

RACHEL LIEBER
          DEFENDANT


PLANTIFF REPLY TO DEFENDANT'S MOTION TO ENLARGE
TIME TO FILE REPLY TO PLANTIFF'S OPPOSITION TO
FEDERAL DEFENDANT'S MOTION TO DISMISS.


THE PLANTIFF WAS RECENTLY CONVICTED OF DRUG
RELATED CHARGE ALONG WITH HIS CO DEFENDANT
LAWRENCE MAYNARD. THE DEFENDANT WAS THE PROSECUTOR
IN THIS CASE, "CONGRADULATIONS ON THE GUILTY VERDICT,"
AND THE PLANTIFF IS NOT CHALLENGING OR DISAGREEING
THAT HE WAS FOUND GUILTY IN THE PLANTIFF'S CRIMINAL
CASE. HERE ON, I DON'T UNDERSTAND WHY THE DEFENDANT
EVEN MENTIONS THE VERDICT OR WASTE PAPER ON THAT
MATTER.

ALSO THE MATTER OF THE PLANTIFF'S FAMILY AND
LAWRENCE MAYNARD SUBMITTING CIVIL SUIT COMPLAINTS
VIOLATIONS OF THEIR OWN, HAS NO BEARING OR ANY
RELATIONSHIP WITH MY CIVIL COMPLAINTS AND MY

THE DEFENDANT'S THIRD REQUEST WAS DUE FEB 25, 2008 AND THE DEFENDANT ASKED FOR ENLARGEMENT TO MARCH 12, 2008. ONCE AGAIN THE DEFENDANT TO ADVINTAGE OF THE COURTS AND THE PLAINTIFF AND WENT PASS THE MARCH 12, 2008 DUE DATE, NOW THE DEFENDANT IS REQUESTING THE COURT FOR ENLARGEMENT TO MARCH 17, 2008, ONCE AGAIN NOT ONLY DID THE DEFENDANT VIOLATE THE FEBRUARY 25, 2008 DUE DATE, THEY VIOLATED THE MARCH 12, 2008 DUE DATE. THE DEFENDANT IS NOW REQUESTING THE COURT FOR A STAY, REASON BEING THE OUTCOME OF THE PLAINTIFF'S SENTENCING DATE.

THE PLAINTIFF IS ASKING THE COURT TO DENY THE DEFENDANT'S STAY REQUEST AND COURT ORDER THE DEFENDANT TO REPLY IN 30 DAYS OR CONCEED TO THIS CIVIL TRIAL AS SOON AS POSSIBLE. THE PLAINTIFF HAS SENT NUMEROUS EXIBITS AND FACTS, EVIDENCE AND ENFORMATIONS SUPPORTING THE PLAINTIFF'S ACCUSATIONS AND CONSTITUTIONAL VIOLATION BY THE DEFENDANT.

THE PLAINTIFF IS ENCLOSING THE DEFENDANT'S FOUR MOTIONS OF ENLARGEMENT TIME.

THE PLAINTIFF    ALSO WILL LIKE TO REMIND THE COURTS ON THE REPLY ON THE DEFENDANT'S MARCH 17, 2008 ENLARGEMENT TIME REQUEST    ALONGWITH THE PLAINTIFF'S SUPPLEMENT COMPLAINT WITH EXIBITS AND FACTS.

CONSTITUTIONAL RIGHTS VIOLATION. EACH CITIZEN HAS THEIR OWN CONSTITUTIONAL RIGHTS AND FREEDOMS TO SUBMIT A CIVIL COMPLAINT ON THEIR OWN MATTER. THE PLAINTIFF SEES NEITHER HIS CRIMINAL CASE OR HIS FAMILY OR MR MAYNARD'S COMPLAINT OF RELEVANT TO THIS CIVIL MATTER. MY CRIMINAL LAWYER CAN NOT GET INVOLVED IN THIS CIVIL MATTER. WHY IS MR KENNETH ADEBONOJO, ASSISTANT UNITED STATES ATTORNEY GETTING INVOLVED IN THE PLAINTIFF'S CRIMINAL MATTERS AND WHY IS THE CRIMINAL MATTER OF ANY HINDERANCE TO THE DEFENDANT AND MR KENNETH ADEBONOJO? THERE IS NO REASON WHY MR KENNETH ADEBONOJO AND THE DEFENDANT , AN EXPERIENCE LAWYER, CAN'T REPLY TO AN INEXPERIENCE PRO SE PLAINTIFF'S FIFTEEN PAGE MOTION, ALONG WITH SOME EXEBITS.

THE PLAINTIFF HAS NO PROFESSIONAL REPRESENTATION FROM AN ATTORNEY AND LACKS EXPERIENCE AND KNOWLEDGE AS AN ATTORNEY. WITHOUT THE COURTS APPOINTMENT OF AN ATTORNEY TO THE PLAINTIFF OR EXPLANATION OF HOW THE PLAINTIFF CAN RECEIVE AN ATTORNEY. I FEEL THE DEFENDANT'S WILL PROLONG THIS CIVIL MATTER FOR YEARS AVOIDING THE TRUTH OF THEIR MISCONDUCT AND CONSTITUTIONAL VIOLATIONS. I AM REQUESTING THE COURTS, TO PLEASE INTERVENE AND COURT ORDER THE DEFENDANT TO STOP PROLONGING AND AVOIDING THEIR REPLY AND VIOLATING THEIR EXTENSION DATES.

## DEFENDANTS VIOLATING DUE DATES ON ENLARGE TIME.

THE PLAINTIFF IS REQUESTING THE COURT TO INTERVENE WITH THE TARDENESS OF THE DEFENDANT VIOLATION ON HER DUE DATE ON HER MANY ENLARE TIME REQUEST.

THE PROSE PLAINTIFF IMMEDIATELY RESPONDED TO THE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT, WITHOUT PROFESSIONAL LEGAL COUNSEL, ACCESS TO PROPER LEGAL CIVIL CASE LAW, OR HAVING THE EXPERIENCE AND KNOWLEDGE OF CIVIL LAW.

THE DEFENDANT WHO IS AN EXPERIENCED HIGH POWER LAWYER IS REPRESENTED BY AN EXPERIENCED HIGH POWER LAWYER, HAS MADE UP EVERY EXCUSE AND JUSTIFICATION NOT TO REPLY ON THE PLAINTIFF'S PRO SE RESPONSE. THE DEFENDANT HAS ASKED FOR AN ENLARGEMENT OF TIME ON NOVEMBER 23, 2007, THE DAY THE DEFENDANT'S RESPONSE WAS DUE. THE DEFENDANT'S DUE TIME EXPIRED NOVEMBER 23, 2007, THE DEFENDANT WAS OVER DUE WITH THEIR REQUEST ED TIME TO ENLARGE NOVEMBER 23, 2007. NOT UNTIL JANUARY 22, 2008 DID THE DEFENDANT ASK FOR ENLARGEMENT OF TIME, [THE DEFENDANT MUST HAVE FORGOTTEN THEIR REPLY WAS DUE NOVEMBER 30, 2007] THE DEFENDANT ONCE AGAIN PAST THEIR REQUESTED TIME JANUARY 30, 2008.

THE PLAINTIFF IS ALSO WAITING ON THE
DEFENDANT' TO REPLY ON THAT ADDED SUPPLEMENTAL
COMPLAINT.

WHEREFORE BASED ON THE FOREGOING PRO SE PLAINTIFF
RESPECTFULLY REQUEST THAT THIS MOTION BE GRANTED


RESPECTFULLY SUBMITTED



CERTIFICATE OF SERVICE


I CERTIFY, I SENT THIS CIVIL COMPLAINT THROUGH
INSTITUTIONAL MAIL.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTOINE JONES, | ) |
|  | ) |
| Plaintiff | ) |
|  | ) |
|  | ) Civil Action No. 07-1027 (RJL) |
| v. | ) (ECF) |
|  | ) |
| RACHEL LIEBER, et al. | ) |
|  | ) |
| Defendants. | ) |

**FEDERAL DEFENDANT'S MOTION TO ENLARGE TIME TO FILE A RESPONSE
TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS DOCKET ENTRY 29**

Plaintiff, a *pro se* prisoner, brings this action against Rachel Lieber, the Assistant United States Attorney, prosecuting his criminal case. Federal Defendant respectfully requests an enlargement of time to respond to "Plaintiff Jones' Response to Defendant's (Rachel Lieber) Motion to Dismiss", Docket Entry 29. Defendant's response is currently due on March 12, 2008. Federal Defendant requests up to and including March 17, 2008, to file a response. In support of this request, Federal Defendant states as follows:

Plaintiff was recently convicted of drug-related conspiracy charges along with his co-defendant, Lawrence Maynard. Maynard filed a complaint against certain federal employees. Plaintiff's wife, mother and son have also attempted to file separate constitutional claims against various defendants including Federal Defendant. Plaintiff and Maynard are scheduled for sentencing in late April. The defendants in the actions brought by Plaintiff and Maynard, including Federal Defendant, will be seeking a stay of proceedings in these matters until after sentencing in order to maximize certain defenses. Accordingly, Federal Defendant seeks this brief extension in order to

file the motions to stay to preserve her rights to respond to Plaintiff's filing, Docket 29, which was filed without leave.

Because plaintiff is a prisoner, appearing here *pro se*, Local Rule 7(m) does not apply and the undersigned have not made efforts to contact him regarding this motion.[1]

WHEREFORE, based on the foregoing, Federal Defendant respectfully requests that this motion be granted. The Federal Defendant respectfully requests a minute order.

March 12, 2008                                        Respectfully submitted,

                                        ___/s/_____  _____
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney

                                        ___/s/_____
                                        RUDOLPH CONTRERAS, D.C. BAR # 434122
                                        Assistant United States Attorney

                                        ___/s/_____
                                        KENNETH ADEBONOJO
                                        Assistant United States Attorney
                                        Judiciary Center Building
                                        555 4th Street, N.W. – Civil Division
                                        Washington, D.C.  20530
                                        (202) 514-7157
                                        (202) 514-8780 (facsimile)

---

[1]     Local Civil Rule 7.1(m) requires "counsel" to discuss non-dispositive motions with "opposing *counsel*" and nonprisoner pro se parties.

## CERTIFICATE OF SERVICE

I certify I caused copies of the foregoing Defendant's Motion to Enlarge Time to File a Response to Plaintiff's Pleading Docket Entry 29 was served by first class mail upon *pro se* plaintiff at:

Antoine Jones
DC# 241-912
1901 D Street, S.E.
Washington, D.D. 20003

on this 12th day of March, 2008.    \_\_\_/s/_____

                                       KENNETH ADEBONOJO
                                       Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,

           Plaintiff

               v.

RACHEL LIEBER, et al.

           Defendants.

Civil Action No. 07-1027 (RJL)
(ECF)

## FEDERAL DEFENDANT'S MOTION TO ENLARGE TIME TO FILE A RESPONSE TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS DOCKET ENTRY 29

Plaintiff, a *pro se* prisoner, brings this action against Rachel Lieber, the Assistant United States Attorney, prosecuting his criminal case.

Federal Defendant respectfully requests an enlargement of time to respond to "Plaintiff Jones' Response to Defendant's (Rachel Lieber) Motion to Dismiss", Docket Entry 29. Defendant's response is currently due on February 25, 2008. Federal Defendant requests up to and including March 12, 2008, to file a response.

The undersigned requests the additional time due to the press of business and the fact that Plaintiff and his family members have filed several actions against various federal employees and a coordinated response to Plaintiff and his family members' actions is being developed.

Because plaintiff is a prisoner, appearing here *pro se*, Local Rule 7(m) does not apply and the undersigned have not made efforts to contact him regarding this motion.[1]

---

[1]     Local Civil Rule 7.1(m) requires "counsel" to discuss non-dispositive motions with "opposing *counsel*" and nonprisoner pro se parties.

WHEREFORE, based on the foregoing, Federal Defendant respectfully requests that this motion be granted.

The undersigned respectfully request a minute order.

February 25, 2008                          Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)

## CERTIFICATE OF SERVICE

I certify I caused copies of the foregoing Defendant's Motion to Enlarge Time to File a
Response to Plaintiff's Pleading Docket Entry 29 was served by first class mail upon *pro se*
plaintiff at:

Antoine Jones
DC# 241-912
1901 D Street. S.E.
Washington. D.C. 20003

on this 27th day of February. 2008.    ___ s _____

　　　　　　　　　　　　　　　　　　　　KENNETH ADEBONOJO
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTOINE JONES, | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) Civil Action No. 07-1027 (RJL) |
| v. | ) (ECF) |
| | ) |
| RACHEL LIEBER, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## FEDERAL DEFENDANT'S MOTION TO ENLARGE TIME TO FILE A RESPONSE TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS DOCKET ENTRY 29

Plaintiff, a *pro se* prisoner, brings this action against Rachel Lieber, the Assistant United States Attorney, prosecuting his criminal case.

Defendant respectfully requests an enlargement of time to respond to "Plaintiff Jones' Response to Defendant's (Rachel Lieber) Motion to Dismiss", Docket Entry 29. Defendant's response is currently due on January 22, 2008. Defendant requests up to and including January 30, 2008, to file a response.

The undersigned requests the additional time due to the press of business.

Because plaintiff is a prisoner, appearing here *pro se*, Local Rule 7(m) does not apply and the undersigned have not made efforts to contact him regarding this motion.[1]

WHEREFORE, based on the foregoing, Defendant respectfully requests that this motion be granted.

---

[1]    Local Civil Rule 7.1(m) requires "counsel" to discuss non-dispositive motions with "opposing *counsel*" and nonprisoner pro se parties.

The undersigned respectfully request a minute order.

January 18, 2008                          Respectfully submitted,


                                          ___/s/_____
                                          JEFFREY A. TAYLOR, D.C. BAR # 498610
                                          United States Attorney


                                          ___/s/_____
                                          RUDOLPH CONTRERAS, D.C. BAR # 434122
                                          Assistant United States Attorney


                                          ___/s/_____
                                          KENNETH ADEBONOJO
                                          Assistant United States Attorney
                                          Judiciary Center Building
                                          555 4th Street, N.W. – Civil Division
                                          Washington, D.C.  20530
                                          (202) 514-7157
                                          (202) 514-8780 (facsimile)

## CERTIFICATE OF SERVICE

I certify I caused copies of the foregoing Defendant's Motion to Enlarge Time to File Answer or Otherwise Respond to Complaint served by first class mail upon *pro se* plaintiff at:

Antoine Jones
DC# 241-912
1901 D Street, S.E.
Washington, D.D. 20003


on this 22nd day of January, 2008.     ___/s/_____

                                        KENNETH ADEBONOJO
                                        Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,                              )
                                           )
            Plaintiff                      )
                                           )
                                           ) Civil Action No. 07-1027 (RJL)
      v.                                   ) (ECF)
                                           )
RACHEL LIEBER, et al.                      )
                                           )
            Defendants.                    )
                                           )

## ORDER

UPON CONSIDERATION of the Defendant's Motion for Enlargement of Time, support

thereof, the grounds stated therefor and the entire record in this matter, it is by the Court

this ____ day of _____, 2008, hereby

ORDERED that the said motion be and hereby is granted; and it is

FURTHER ORDERED Defendant shall file an responsive pleading on or before January

30, 2008 .

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530

Antoine Jones
DC# 241-912
1901 D Street, S.E.
Washington, D.C. 20003

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,           )

          )

    Plaintiff       )

          )

          )   Civil Action No. 07-1027 (RJL)

    v.           )   (ECF)

          )

RACHEL LIEBER, et al.       )

          )

    Defendants.      )

          )

## DEFENDANT'S MOTION TO ENLARGE TIME TO FILE A REPLY TO PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANT'S MOTION TO DISMISS

Federal Defendant, Rachel Lieber, filed a Motion to Dismiss Plaintiff's complaint and Plaintiff has opposed said motion. Federal Defendant's reply brief is due on November 23, 2007.

Defendant respectfully requests an enlargement of time up to and including November 30, 2007, to file a reply brief.

The undersigned requests the additional time in light of a few emergent matters this week and the holidays.

Because plaintiff is a prisoner, appearing here *pro se*, Local Rule 7(m) does not apply and the undersigned have not made efforts to contact him regarding this motion.[1]

November 23, 2007           Respectfully submitted,

                   /s/_____

                   JEFFREY A. TAYLOR, D.C. BAR # 498610

                   United States Attorney

---

[1] Local Civil Rule 7.1(m) requires "counsel" to discuss non-dispositive motions with "opposing *counsel*" and nonprisoner pro se parties.

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)

2

### CERTIFICATE OF SERVICE

I certify I caused copies of the foregoing Defendant's Motion to Enlarge Time to File a a reply to Plaintiff's opposition to Defendant's Motion to Dismiss to be served by first class mail upon *pro se* plaintiff at:

Antoine Jones
DC# 241-912
1901 D Street, S.E.
Washington, D.D. 20003

on this 23rd day of November, 2007.        _/s/_____

                                           KENNETH ADEBONOJO
                                           Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES,                          )
                                        )
            Plaintiff                   )
                                        )
                                        ) Civil Action No. 07-1027 (RJL)
      v.                                ) (ECF)
                                        )
RACHEL LIEBER, et al.                   )
                                        )
            Defendants.                 )
_____)

## ORDER

UPON CONSIDERATION of the Defendant's Motion for Enlargement of Time, support

thereof, the grounds stated therefor and the entire record in this matter, it is by the Court

this _____ day of _____, 2007, hereby

ORDERED that the said motion be and hereby is granted; and it is

FURTHER ORDERED Defendant shall file a reply brief on or before November 30,

2007.


_____
UNITED STATES DISTRICT JUDGE

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530

Antoine Jones
DC# 241-912
1901 D Street, S.E.
Washington, D.C. 20003

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOINE JONES, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-1027 (RJL) |
| | ) |
| RACHEL LIEBER, *et al.*, | ) |
| Defendants. | ) |

## FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Antoine Jones, Register Number, DCDC 241-912, *pro se* in this action ("Plaintiff"), is a

pretrial detainee incarcerated at the District of Columbia Jail in Washington, D.C. On or about

June 8, 2007, Plaintiff commenced this action against Rachel Lieber ("Federal Defendant"), one

of two Assistant United States Attorneys prosecuting Plaintiff for Conspiracy to Distribute and

Possess with Intent to Distribute Controlled Dangerous Substances.[1] Using a form captioned

Complaint for Violation of Civil Rights under 42 U.S.C. 1983 with an attached document titled

"complaint," Plaintiff alleges that Federal Defendant violated his First, Eighth and Fourteenth

amendment constitutional rights by "giv[ing] the order...to place [him] in S-1, maximum

security, under total separation" with no mail, phone or visiting privileges. *Pl. Compl.* at 5.

---

[1]    In another matter captioned *Jones v. Yanta*, 07-1172 (HHK), Plaintiff alleges civil
rights violations against John Giese, the other United States Attorney prosecuting him. Federal
Defendant is also named in that matter along with Federal Bureau of Investigation Special Agent,
Stephanie E. Yanta. In the *Yanta* matter, Plaintiff raises claims that have twice been rejected in
his criminal prosecution. The issues raised in the *Yanta* matter are related but not identical to
those raised here.

Specifically, Plaintiff alleges that his placement in total separation violated his due process rights because he was not permitted a hearing beforehand. Furthermore, he alleges vaguely that "prosecutorial interference" has affected his ability to prepare for his upcoming trial and prevented access to religious services. Although Plaintiff appears to allege a violation of his Eighth amendment rights arising from his alleged placement in a holding cell for four hours, he makes no specific allegations against the Federal Defendant. Also named as defendants in this matter are Norma Horne, a Narcotics Detective with the District of Columbia Police Department and Dennis Harrison, who is sued in his capacity as the Acting Warden of the District of Columbia Jail. Plaintiff alleges without factual support that Detective Horne's affidavit, dated November 22, 2005, in support of a search warrant of his cell was fabricated and that Warden Harrison was in charge when he was put in protective custody. *Id.*

Plaintiff is requesting relief in the form of a jury trial and money damages in the sum of $1,000,000. He does not specify from whom he seeks monetary damages nor does he specify that he is suing defendants in their individual capacities. *Id.* The only specific relief Plaintiff seeks against Federal Defendant is "disbarment or suspension."

## I. FACTUAL BACKGROUND

### A.    Investigation Into Plaintiff's Illicit Activities

In late 2004, Investigators obtained information from confidential sources that Plaintiff was operating a narcotics trafficking organization in the greater Metropolitan Washington, D.C. area and elsewhere with his trusted associate Lawrence Maynard. *See* attached to Pl. Compl. Affidavit of Norma Horne in Support of Application for Search Warrant, dated November 22, 2005 ("Horne Aff."). Plaintiff is the sole proprietor of "LEVELS," a nightclub located at 1960

Montana Avenue, N.E., Washington, D.C. *Id.* Sources told Investigators that Plaintiff used the nightclub as a location where he often conducted his drug-trafficking activities, distributing kilogram quantities of cocaine and collecting substantial amounts of money, as well as that he laundered drug trafficking proceeds through the nightclub.[2] *Horne Aff. at 5.* The sources also revealed that Plaintiff maintained a discreet operation, and limited his contacts to individuals known to him personally, or introduced to him by trusted, well known associates. *Id.* at 6.

Accordingly, Law Enforcement commenced an investigation into Plaintiff's illicit activities. As part of the investigation, on September 2, 2005, Investigators obtained an order to intercept Plaintiff's cellular telephone conversations authorized by the Honorable Paul L. Friedman. *Id.* at 9. As a result of the intercepts, Investigators were able to identify a core group of individuals including Plaintiff who engaged in short encrypted conversations of a suspicious nature involving "tickets, VIP tickets, flyers and math homework." *Id.* Shortly after many such calls, surveillance revealed Plaintiff meeting with individuals to exchange suspicious packages believed to be money and drugs. *Id.* at 9-10. Also, after many such telephone calls, surveillance revealed Plaintiff meeting individuals in, Fort Washington, Maryland exchanging suspicious packages and then meeting other individuals believed to be Plaintiff's customers in rapid succession immediately thereafter. *Id.* at 10.

During the investigation, on or about April 5, 2005, a Highway Interdiction Unit of Durham, North Carolina Police Department conducted a traffic stop of a 1997 Honda Odyssey mini-van operated by Maynard. *Id.* at 7 A check revealed the vehicle was registered to the

---

[2]      According to records on file with the District of Columbia Alcoholic Beverage Regulatory Agency (ABRA), Lawrence Maynard is listed as the "A.B.C. Manager" of the nightclub. *Horne Aff.* at 5-6.

3

Plaintiff, with a birth date of February 25, 1960, and to one of his two residences, 12221

Brandywine Road, Brandywine, Maryland. *Id.* The interdiction canine unit alerted to the right

rear passenger area of the mini-van which revealed a hidden compartment containing six white

Target shopping bags containing a total of $67,115.00 in U.S. currency. *Id.* at 7-8. Maynard and

a passenger in the vehicle possessed approximately $5,000.00 between them. *Id.*

On October 24, 2005, a number of sealed search warrants were executed at various

locations throughout the Washington, D.C. area. *Id.* at 11. As a result, nine individuals were

arrested including one individual who was photographed in Plaintiff's vehicle. *Id.* Investigators

recovered from the Fort Washington stash house where Plaintiff was often seen, ninety-seven

kilograms of cocaine powder, three kilograms of crack cocaine and $834,520. *Id.* Additionally,

investigators recovered a gun from Plaintiff's nightclub and $69,000 was recovered from the

Plaintiff's vehicle. *Id.*

**B.    Plaintiff's Prohibited Conduct Since Incarceration**

Since his arrest, Investigators have uncovered Plaintiff's attempts to remain in contact

with associates in the community. *Id.* On November 3, 2005, Plaintiff called Deborah O'Neal,

one of his many romantic interests, to inform her that he had sent her letters with other peoples'

names on them and to give same to Maynard upon receipt or hold them pending further

instructions. *Id.* On November 6, 2005, Plaintiff again called Deborah O'Neal to tell her to

notify "[Maynard] to write to him and let him know what was going on because he doesn't want

to be "in the blind." Also, Plaintiff was overheard telling his wife, Deniece, to contact Maynard

on his behalf or to call Maynard on her cell phone while Plaintiff was on the land line with her.

*Id.* at 12. Investigators believed that these were efforts to conceal his communications with

4

members of his illegal narcotics-trafficking operation. *Id.*

When Plaintiff's cell was searched on November 23, 2005, Investigators uncovered

letters from Beverly Johnson, another romantic interest, indicating the whereabouts of an

unindicted co-conspirator and that another unindicted co-conspirator had reportedly "been

snitching." *See* attached to Plaintiff's complaint, Government's Supplemental Filing Concerning

Conditions of Confinement at 2. A list of suspected cooperators with the Government was also

discovered. *Id.* ███████████████████████████████████████████████ the

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. *See*

attached to Plaintiff's Complaint, Memorandum Request dated December 22, 2005. Nine days

later, on December 2, 2005, Federal Defendant learned that Plaintiff continued to make telephone

calls and confirmed that Plaintiff somehow had not been placed in protective custody. *Id.*

Federal Defendant therefore renewed her request. *Id.* Even after Plaintiff was placed in

protective custody, he continued to have telephone privileges. *Id.* Therefore, ███████████

██████████████████████████████████████████████████████████████████

███████. *See* Attached to Plaintiff's Complaint, Memorandum dated December 22, 2005.

On ████████████ the Court entered an order returning Plaintiff to population but with the

caveat that Plaintiff's ████ and ████████████████████████████████████████

███████████ investigator and wife, Deniece. *See* attached to Plaintiff's Complaint, Order

entered April 24, 2006.

5

## II. STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matter of which the court may take judicial notice, and matters of public record. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).[3] Here, Plaintiff has pled no facts in support of this action that would entitle him to relief.

## III. ARGUMENT

### A. Plaintiff Cannot Maintain a 42 U.S.C. 1983 Action Against Federal Defendant

Plaintiff's complaint is on a form captioned "...Complaint by a Prisoner Under the Civil Rights Act, 42 U.S.C. §1983," with documents attached. To the extent he raises claims under §1983 against Federal Defendant, Plaintiff fails to state a claim. Although Plaintiff seeks relief in the form of $1,000,000, he does not state specifically against which of the named defendants

---

[3]     Generally speaking, the Court should not consider matters beyond the pleadings without converting the motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6). Nonetheless, there are important exceptions to this general principle. The Court may properly take judicial notice of court records without converting a motion to dismiss into a motion for summary judgment. *Baker v. Henderson*, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001)("in determining whether a complaint fails to state a claim, the court may. . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); *Himmelman v. MCI Communications*,104 F. Supp. 2d 1, 3 (D.D.C. 2000)("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.")

6



he seeks such damages. Regardless, because section 1983 does not apply to federal officials acting under federal, rather than state authority, the Circuit's law is clear, Plaintiff fails to state a 1983 claim against Federal Defendant. *Williams v. U.S.A.*, 396 F.3d 412 (D.C. Cir. 2005) (upholding the lower court's refusal to construe a 1983 claim as a *Bivens* claim).

### B.  Plaintiff's Claim is Barred by the Heck Rule

Plaintiff's claims is barred by the rule pronounced in *Heck*.[4] Since Plaintiff's claim is based on an alleged illegal placement in protective custody, he must first invalidate the legality of that placement before bringing a constitutional claim against Federal Defendant. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). Alternatively, the court could grant a stay of this action pending conclusion of Plaintiff's upcoming trial. *Wallace v. Cato*, 127 S. Ct. 1091, 1098 (2007).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a prisoner may not bring a civil rights action for money damages alleging unconstitutional conviction or imprisonment unless the conviction had first been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court applied *Heck* to a prisoner's civil rights suit attacking an internal prison disciplinary sanction that affected the overall length of confinement, where good time had been taken from the inmate, holding that a claim for damages, based on procedural defects in the prison disciplinary hearing, necessarily implied the invalidity of the punishment imposed and was therefore not cognizable under § 1983. *Id.* at 647 (reiterating

---

[4]    Nothing requires Plaintiff to wait until the conclusion of his criminal trial to bring a civil challenge to any alleged unlawful conduct. However, the *Heck* rule also bars such actions until the alleged unlawful conduct has been invalidated. *See Wilson v. Barcella*, 2007 U.S. Dist. 22934, 2-23 (S.D. Tex. 2007)(applying the *Heck* bar to plaintiff's challenge to alleged unlawful conduct prior to trial).

*Heck's* holding as applicable to other harms caused by actions whose unlawfulness could render

a conviction or sentence invalid). In *Williams v. Hill*, this Court extended the holding of these

cases to *Bivens* actions brought against federal officials. 74 F.3d 1339, 1340 (D.C. Cir.1996).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████ Therefore, since Plaintiff's placement in

protective custody has not been successfully challenged, this constitutional challenge is barred

under the *Heck* rule. In addition to the *Heck* rationale, it is noteworthy that Plaintiff has several

*Bivens* actions pending against individuals who are investigating or are prosecuting him.

Arguably, Plaintiff is attempting to use these constitutional claims to intimidate the prosecutors,

FBI Special Agents, ICE Agents, MPD Detectives etc. Application of the *Heck* Rule here to

prevent *Bivens* abuse will prevent Plaintiff from achieving his objective.

## C. Plaintiff's First and Sixth Amendment Claims Fail[5]

Plaintiff fails to state a claim for a First and Sixth Amendment violation of his rights of

access to court and religious services. ███████████████████████████████████████████

████████████████████████████████████████. On the contrary, the facts show

that Plaintiff was represented by counsel during his placement in protective custody.

The Sixth Amendment states:

---

[5]     Plaintiff's Eighth Amendment Claim fails also because the Eighth Amendment
does not apply to pretrial detainees. *Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C. Cir.
1991)(noting that a pretrial detainees recourse is under the Fifth Amendment while a convict's is
under the Eighth). Plaintiff's Fourteenth Amendment claims against Federal Defendant are
clearly barred, as the Fourteenth Amendment applies only to states and not to the federal
government. *Bolling v. Sharpe*, 397 U.S. 497, 499 (1954).

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that the right of access to the courts requires that inmates are assisted in preparing and filing meaningful legal papers by providing inmates with adequate libraries and assistance. *Id.* at 828. Bounds did not confer inmates with any specific means of access to the courts. Lewis v. Casey, 518 U.S. 343 (1996) (holding that inmates alleging a *Bounds* violation must show that the inadequacy of the right of access provided impaired his or her ability to vindicate their rights). In *Lewis*, the Court dissolved an injunction that required prison authorities to provide specific means of access because, inter alia, it failed to accord adequate deference to the judgment of prison officials about inmates' access to courts including inmates on lockdown. *Id.* at 361-62. Furthermore, the Court noted that, as long as an inmate is placed on lockdown for legitimate penological reasons, delays in receiving mail were not unconstitutional. *Id.* at 362.

The same principle applies with regard to Plaintiff's First Amendment claims. "A prisoner's First Amendment right to free exercise of his religion may be circumscribed to some extent when the restriction is reasonably related to a legitimate penological interest." *Caldwell v. Caesar*, 150 F.Supp.2d 50, 56 (D.D.C. 2001)(citing *O'Lone v. State of Shabazz*, 482 U.S. 342, 348 (1987)). Plaintiff was placed in protective custody because of concern that he was attempting to identify potential witnesses against him and possibly do harm to them as well as

9

~~attempting to contact his associate, Maynard, to destroy evidence~~. Therefore, Plaintiff ~~was placed in protective custody for legitimate~~ penological reason. Plaintiff has not pled any facts that establish that he was denied access to court or religious services any more than any other inmate in protective custody. Plaintiff's access corresponded to his status as a high risk inmate with the resources to attempt to influence the outcome of his trial through illegal means. Accordingly, Plaintiff fails to state a claim for violation of his First or Sixth Amendment rights.

### D. Plaintiff's Placement In Protective Custody was Related to Legitimate Government Goals

~~Due process requires that a pretrial detainee not be punished prior to lawful conviction~~. ~~Bell v. Wolfish~~, 441 U.S. 520, 535 (1979). However, the government may detain individuals to ensure their presence at trial and may subject them to the conditions and restrictions of the detention facility as long as those conditions and restriction do not amount to punishment. *Id.* at 536-37. The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose. *Id.* at 538. Further, "if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment[.]" *Id.* at 539.

Based on the *Wolfish* test, because Federal Defendant acted ~~solely to effect a legitimate government interest~~, Plaintiff's claims should be dismissed. At the time of his placement in protective custody, Plaintiff was awaiting trial for conspiracy to distribute drugs and the use of electronic means to further the conspiracy. Plaintiff is accused of being the leader of said conspiracy involving individuals who were not incarcerated at the time of Plaintiff's transfer to

10

protective custody, including Plaintiff's trusted associate, Maynard.  It is undisputed and Plaintiff

has not alleged any facts to contradict the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉  In addition, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ labeled snitches

▉▉▉▉▉▉[16]

Accordingly, based on the collective experience of those involved in Plaintiff's

investigation, Federal Defendant requested that the Warden place Plaintiff in protective custody

in order to protect the judicial process and ▉▉▉▉▉▉▉▉▉▉▉.  Memorandum from Federal

Defendant to the Warden, dated December 22, 2005 attached to complaint.  Plaintiff has since

been returned to general prison population with restrictions on visits and telephone calls.

Plaintiff fails to present sufficient facts to withstand Federal Defendant's motion because he was

placed in protective custody for legitimate government reasons.  Accordingly, ▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉.

**E.  Federal Defendant is Entitled to Immunity**

<u>Absolute Immunity</u>

Although it does not appear from his complaint, to the extent that Plaintiff may be

attempting to sue Federal Defendant personally, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  Few areas

of the law draw a brighter line than the doctrine of absolute immunity for prosecutors and their

---

[6]     Hot means working with law enforcement.  *United States v. White*, 116 F.3d 903, 909 (D.C. Cir. 1997)(permitting out of court statements by a cooperating witness who was murdered by the defendant).

11

actions within the prosecutorial function. *Epps v. Howe*, 2007 U.S. Dist. 55093 at 6-7 (D.D.C. 2007) (citing *Sloan v. HUD*, 231 F.3d 10, 19 (D.D.C. Cir. 2000)).[7] When prosecutors act in their roles as advocates, absolute immunity applies. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (noting that a prosecutor is absolutely immune from liability for presenting false statements in a probable cause hearing); *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (noting that a prosecutor is absolutely immune from liability for using false testimony at trial). Absolute immunity applies even when the plaintiff establishes that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, or ▓▓▓ ▓▓▓▓▓. *Kalina v. Fletcher*, 522 U.S. 118 (1997). The rationale for absolute immunity is the need to protect prosecutors from frivolous and unfounded claims and keep them focused on serving the public trust. *Imbler*, *supra*, 424 U.S. at 424-28. (affirming dismissal of a complaint on immunity grounds where the prosecutor knowingly used false evidence and suppressed exculpatory evidence); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993) (concluding that qualified rather than absolute immunity applied where the alleged misconduct occurred before probably cause was established and anyone was arrested).

Under the functional approach, absolute immunity shields adversary functions such as "initiating judicial proceedings, evaluating evidence, and preparing presentations before a grand jury or trial." *Buckley*, *supra*, 509 U.S. at 272-73. Here, Federal Defendant is entitled to absolute immunity because she was performing her a▓▓▓▓▓▓▓▓▓▓▓▓▓when she requested that Plaintiff be placed in protective custody in order to preserve the integrity of preparations for trial. Indeed, the search of his cell confirmed that Plaintiff was attempting to gather the names of

---

[7]    Plaintiff also requests relief in the form of disbarment or suspension. This court lacks the authority to grant that relief. Authority to grant that relief is conferred upon the Disciplinary Panel. LCvR 57.24.

possible cooperating witnesses possibly to harm them. Plaintiff was also actively attempting to

contact his associate Maynard for reasons that could have included the ~~destruction of evidence~~

~~that could be used against them at trial~~. Plaintiff has not pled any facts that refute the fact that

Federal Defendant was ~~functioning in her role as an advocate when the decision was made to~~

~~place him in protective custody~~. The documents attached to Plaintiff's complaint actually

support the fact that Federal Defendant was functioning as the peoples' advocate. Accordingly,

these claims should be dismissed.

Qualified Immunity

Alternatively, Federal Defendant is entitled to qualified immunity because, taking

Plaintiff's allegations as true, they do not state a constitutional violation and, even if they did, her

actions did not violate any ~~clearly~~ established statutory constitutional rights of which a

reasonable persons should have been aware . *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather

than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is

erroneously permitted to go to trial." *Id.* The D.C. Circuit, in *Farmer v. Moritsugu*, 163 F.3d

610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on
> qualified immunity grounds] unless '[t]he contours of the right
> [were] sufficiently clear that a reasonable official would [have]
> underst[ood] that what he [was] doing violate[d] that right.' "
> *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *aff'd*
> 922 F.2d 443 (8th Cir. 1990)).

13

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages," *Anderson*, 483 U.S. at 646, the doctrine of qualified immunity strikes a balance between compensating those injured by official conduct and protecting the Government's basic ability to function. *See Harlow*, 457 U.S. at 813-14. In other words, qualified immunity is designed to mitigate the social costs of exposing government officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 816; *see also Harris*, 932 F.2d at 13. To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Court found that defendant's conduct in handcuffing plaintiff, a prisoner, to a hitching post, with his arms above his head, shirtless, in the blazing sun, without water or bathroom breaks for seven hours violated clearly established constitutional rights of which defendant should have been aware. The plaintiff pled sufficient facts to preclude qualified immunity because there was precedent condemning the hitching post practice beyond what was necessary to quell a threat or restore order and there had already been a Department of Justice report condemning the hitching post practice as improper corporal punishment. 536 U.S. at 736-37. These same facts established that a reasonable person should have been aware that the hitching post practice particularly in the circumstance plaintiff was placed was a violation of his rights. *Id.* at 741. Plaintiff has not pled anything remotely

14

resembling the pleading in *Hope*.

By contrast, in this case, Plaintiff fails to allege facts that could defeat a valid defense of qualified immunity. Plaintiff does not have any liberty interest to remain in general population that is protected by due process. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Sandin* at 472.    Therefore, Plaintiff did not have a clearly established right to a hearing. Regardless, P██████████████████████████████████████████████████████████████████

███████████████████████████████████

Notably, though, ████████████████████████████████████████████████████████ ████████ on his illicit drug enterprise fr████████ attempting to find potential witnesses ████████. Specifically, P████████used his wife's cell phone to contact his trusted associate, ████████ and used his various love interests to try and communicate with his associates outside the prison. The search of Plaintiff's cell turned up notes with certain individuals noted as "hot." These are the legitimate government concerns that resulted in Plaintiff's placement in protective custody in the first place.

Assuming arguendo the complaint could be interpreted to sufficiently state that Federal Defendant committed unconstitutional acts, as discussed above, plaintiff failed to articulate how his constitutional rights were clearly established. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Accordingly, even under the facts as alleged in the complaint, Federal Defendant is entitled to qualified immunity, and should be dismissed from this lawsuit.

15

## CONCLUSION

Upon the foregoing, Federal Defendant respectfully requests that Plaintiff's complaint be dismissed or, in the alternative, stayed pending the conclusion of the upcoming trial.

October 5, 2007                    Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4210
Washington, D.C. 20530
(202) 514-7157

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTOINE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RACHEL LIEBER, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No.: 07-1027 (RJL)

## ORDER

UPON CONSIDERATION of the Federal Defendant's Motion To Dismiss Plaintiff's

Complaint, support thereof, the grounds stated therefore and the entire record in this matter, it is

by the Court this _____ day of _____, 2007, hereby

ORDERED that the said motion be and hereby is granted, and

FURTHER ORDERED that this case is dismissed with prejudice.

This is a final and appealable order.

_____
HON. RICHARD J. LEON, U.S.D.J.

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
555 4th Street, N.W
Washington, D.C. 20530

Antoine Jones
Register Number, DCDC 241-912
1901 D Street, S.E.
Washington, D.C. 20003

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Federal Defendant's Motion to Dismiss was mailed by

depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Antoine Jones
Register Number, DCDC 241-912
1901 D Street, S.E.
Washington, D.C. 20003

on this 5th day of October, 2007

_____/s/_____
KENNETH ADEBONOJO

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTOINE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 07-1027 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL LIEBER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FEDERAL DEFENDANT'S MOTION TO DISMISS PLAINTIFF COMPLAINT

The Federal Defendant, by and through their attorney, the United States Attorney for the

District of Columbia, hereby moves to dismiss this case for Failure to State a Claim under Fed.

R. Civ. P. 12(b)(6). This motion is accompanied by Memorandum and Proposed Order

consistent with LcvR 7(a) and (c).

*Pro se* Plaintiff will take note that if he fails to respond to this motion to dismiss, the

Court may grant this motion and dismiss his case because of his failure to respond. *See Fox v.*

*Strickland*, 837 F.2d 507 (D.C. Cir. 1988).

October 5, 2007                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

```
_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4210
Washington, D.C. 20530
(202) 514-7157
```

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANTOINE JONES                          )
                                       )
    **Plaintiff**                   )
                                       )
v.                                     )          **Civil Action No: 07-1027 (RJL)**
                                       )
RACHEL LIEBER, et al.                  )
                                       )
    **Defendant**                   )

## RESPONSE TO FEDERAL DEFENDANT'S MEMORANDUM
## SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

    The Plaintiff argues that the government's fifteen page Motion to Dismiss is not only off target, it lacks the point. The point isn't the factual background why the Plaintiff was accused or why the probable cause of the arrest of the Plaintiff, or why the Plaintiff's prohibited conduct since incarceration, nor why the Plaintiff cannot maintain a 412 U.S.C. 1983 Action Civil suit against federal defendants, or whatever the heck    rule is? [This is all an illusion to take the focus off the point and Rachel Lieber's action from the facts.]

    The facts and point is that Rachel Lieber stepped out of her capacity of a U.S. Attorney, into the role of an over zealous, vindictive investigator, without the authority and protection from the courts. The facts and point, John Adams lied to the government and told the government, Mr. Jones was telling his co-defendants we could beat this case [which we did, the three co-defendants received acquittals and Mr. Jones received not guilty on the majority of his counts, two dismissals and the rest deadlocked].

I like to also add that Mr. Jones also saw Donald Hunter, a government witness, and a close friend, whom I spoke to at the law library. (At this time I didn't know that he was a government witness.)

The facts and the point, with these chains of events, Rachel Lieber took it upon herself, without the authority of the courts to send a memorandum on November 23, 2005 for Mr. Jones to be placed in total separation from the inmate population and separation from his co-defendants. Also on November 23, 2005, the government was busy, Mr. Jones D.C. jail cell search was searched by the FBI, approximately 6:00 a.m.    the FBI and Safe Street Task Force searched and seized Lawrence Maynard resident and arrested him.

The government, Rachel Lieber, John Geise and Norma Horne goal and objective was to fabricate a story to get a search warrant, listen to Mr. Jones, with the hope to hear anything they can use to support their fabrication, hope to find something in the cell search by the FBI that will support their case which was spying on my defense and violating attorney-client privilege. Yes this entire plot was a "divide and conquer" strategy, lock up Lawrence Maynard and prevent him from helping me and opening up the club, get Mr. Jones away from potential government witnesses and find some supporting evidence to send Mr. Jones far away from his co-defendants, family, friends, loved ones, business associates, attorney, investigator and anybody who was willing to give him support and help. This is the government's traditional procedures in getting a technical advantage over the defense. I refer the court to Mr. Lawrence Maynard Grand Jury testimony of Stephanie Yanta on November 22, 2005, the Application and Affidavit for Search Warrant of Mr. Jones' D.C. jail cell, U.S. Attorney Office memorandum by Rachel Lieber to the warden of DC jail to be placed in total separation, the subpoena of all Mr. Jones' DC jail recorded phone calls, the government of the District of Columbia Department of Corrections

2

Alert Form – Separation Between Co-Defendants, Lawrence Maynard Detention Hearing, November 30, 2005 – Document #4, Document 50-1, filed December 19, 2005, Document 61-1 filed January 3, 2006, Document 76, filed February 26, 2006, Document 111filed April 24, 2006, DC Department Office of the Warden memorandum  - subject Inmate Grievance Procedures, Document 85 filed March 16, 2006, Document 93 filed March 23, 2006, Document 94 filed March 23, 2006, Document 96 filed March 19, 2006 all relating to Mr. Jones criminal case and has been submitted to this court.

I want to specifically refer the court to Mr. Jones "Government's Response to Defendant Jones Motion for Modification of Condition of Detention," Factual Background, the government states "After Jones arrest and detention, a confidential source unrelated to this investigation reported that it was "rumored" that the guys from Levels thought they figured out that a particular person was cooperating and that they were trying to find "someone" to "kill" the suspected cooperator witness.

The fact is the government went on hearsay and rumors, no facts at all. The fact the government stated "guys from Levels" they never mention the name of these guys, they only selected me to be placed in total separation and punish me by subjecting me to the mental and physical abuse of the maximum security segregation unit.

I want to conclude my point, by referring to Mr. Jones' Modification of Condition Hearing on April 24, 2006 where the government tried to deceive the courts to transfer Mr. Jones out of his jurisdiction to once again get a technical advantage on the defense and separate Mr. Jones from his co-defendants and potential government witnesses.  In this hearing the government's main objective was to place me back into total separation, this time, its hundreds of miles away from my attorney, my investigator, my loved ones, business associates and anyone

who will support or help me. Rachel Lieber admitted that there goals were to keep me away from potential government witnesses. Rachel Lieber also went ex-parte with Judge Huvelle on this matter. I am requesting the courts to provide the Plaintiff with the April 24, 2006 hearing transcript and Rachel Lieber's ex-parte conference with Judge Huvelle. I am also requesting the November 23, 2005 US Attorney memorandum when Rachel Lieber requested to place me in segregation. Plaintiff is also requesting all information and affidavit on the government search of Mr. Jones cell on December 2, 2005 the day Mr. Jones got place in total separation.

Mr. Jones wants to admit to the courts that he can't go blow to blow with the government's high powered attorneys who have all the resources, have access to high tech case law, have the legal knowledge and legal experience in the law. [This is my second request for the courts to appoint me a civil attorney who can help me prepare and argue these civil matters.] To further respond to the Defendant Motion to Dismiss, I refer the courts to criminal case no. US-386(i) (ESH) Defendant's Motion to Suppress Tangible Evidence from Mr. Jones Jail Cell... The Plaintiff doesn't have the resources to look up all the Defendant's case law; my criminal attorney in this motion, took the words out of my mouth, can the court please accept this Motion and case law as part of my response.

To the response on the government statement about the $1,000,000.00 in monetary damage, the Plaintiff is seeking $ ,000,000.00 in monetary damages for relief. The Plaintiff is suing the Defendants in their individual capacities and their employers (United States Attorney Office and D.C. Government). The $ ,000,000.00 can be divided by whomever the jury or courts finds liable, as long as Mr. Jones receives compensation and relief from his mental anguish, depressing long nights of stress, mental and physical abuse. I refer you back to Mr, Jones' complaint while in S-1, maximum security on total separation with all his due process

4

stripped away for no reason.  If possible, I am requesting the courts to place a lien on all the Defendant's financial assets (bank accounts and property) until this matter is resolved.


_____

Antoine Jones
Plaintiff


_____

Date

# CERTIFICATE OF SERVICE

I hereby certify and declare that a true and accurate copy of the foregoing Civil Suit Response (Response to Federal Defendant's Memorandum Support of Motion to Dismiss Plaintiff's Complaint) was placed into this institution's mail receptacle on this __ day of _____, 2007.


_____

Antoine Jones

241912
DC Department of Corrections
1901 D Street, SE
Washington, DC  20003

Metropolitan Police Detective Norma Horne swore out an Application and Affidavit for Search Warrant. (*See* Exh. 1). Detective Horne sought a warrant to search the "entire jail cell and personal property of Antoine Jones, D.C. Jail, 1901 D. Street, Southeast, Washington, D.C." (*Id.*). Magistrate Judge Kay issued the warrant that same date. Agent Horne and other agents carried out the search on November 23, 2005, and seized several items from Jones' cell. (*See* Exh. 2). The inventory list of the search indicates that the items seized were "Miscellaneous documents to include – Washington Post article, 9 [10 is crossed out and initialed JCB] pieces of paper with names and/or numbers + 3 envelopes that each contain a letter." (*Id.*) The government has informed Jones that it intends to introduce several of the items recovered from Jones' cell at trial.

## ARGUMENT

### I.    JONES HAD AN EXPECTATION OF PRIVACY IN HIS JAIL CELL

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized ..." U.S. Const. amend. IV. Prisoners do not have an expectation of privacy with respect to searches motivated by institutional security concerns and performed by prison officials. *See Hudson v. Palmer,* 468 U.S. 517, 527 (1984); *United States v. Cohen,* 796 F.2d 20, 22-23 (2d Cir.1986). However, when a search is performed or initiated by law enforcement officials other than those in charge of a prison and is unrelated to institutional security concerns, a prisoner has a reasonable expectation of privacy with respect to that search. *Cohen,* 796 F.2d at 23-24.

In this case, it is clear that the search of his cell was motivated not by institutional

2

concerns of the D.C. Jail, but rather initiated by law enforcement officers.  Thus, Jones had an

expectation of privacy pursuant to the Fourth Amendment.

## II. THE AFFIDAVIT IS UTTERLY LACKING IN INDICIA OF PROBABLE CAUSE

It is established law, see *Nathanson v. United States*, 290 U.S. 41, 47(1933);

*Giordenello v. United States*, 357 U.S. 480, 485-86 (1958); *Aguilar v. Texas*, 378 U.S. 108, 114-

115 (1964), that a warrant affidavit must set forth particular facts and circumstances underlying

the existence of probable cause, so as to allow the magistrate to make an independent evaluation

of the matter.  If the warrant is "facially deficient," for example, in failing to particularize the

place to be searched or the things to be seized, suppression is appropriate despite a magistrate's

stamp of approval. *See United States v. Leon*, 468 U.S.897, 923 (1984).  Or, if the warrant is

based on an affidavit "so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable," suppression is available. *Id.* (citing *Brown v. Illinois*, 422 U.S.

590, 610-11 (1975).

If a magistrate abandons his neutral and detached role, good faith reliance on the

warrant will not prevent suppression. *See Leon*, 468 U.S. at 923.  Furthermore, "if the magistrate

or judge in issuing the warrant was misled by information in an affidavit that the affiant knew

was false or would have known was false except for his disregard of the truth," suppression is

appropriate. *See Id.* at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).  And finally, if "it

is plainly evident that a magistrate or judge had no business issuing a warrant," the exclusionary

rule will still be applicable. *See Massachusetts v. Sheppard, supra*, 468 U.S. at 990 n. 7, 104

S.Ct. at 3429 n. 7 (quoting *Illinois v. Gates*, 462 U.S. 213, 264, 103 S.Ct. 2317, 2346, 76 L.Ed.2d

527 (1983) (White, J., concurring in judgment)).

The government will likely argue that Magistrate Judge Kay issued a proper warrant and that the law enforcements agents who carried out the search of the cell did so in good faith reliance of the warrant.  Explicit in *Leon*, however, is the view that not every act of reliance on the intervention of a judge or magistrate will automatically eliminate exclusion as the appropriate remedy for constitutional or statutory violations.

In this case, Detective Horne's Application for the search warrant indicates that the items to be seized as:

### ATTACHMENT A

1.    Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;
2.    Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;
3.    Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and
4.    Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, photographs, personal telephone books, diaries, and identification documents.

(*See* Exh. 1 at 2).

Her fourteen page Affidavit contains the following:

a.    four pages of a boilerplate and non-specific description of her experience, training and education;

b.    eight pages of the allegations made against Jones, including evidence obtained prior to the wiretap, during the wiretap, during the takedown, and through the use of intercepted jail calls.  An overwhelming part of these eight pages is devoted to Lawrence Maynard allegedly being Jones' "right hand man." ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

Horne avers, "Specifically, <u>investigators believe that JONES has sent letters to</u> <u>MAYNARD via O'NEAL</u>, which speak of the details of ongoing narcotics trafficking, including the possible concealment of evidence, and the continuation of the business, and <u>that MAYNARD has kept these letters in his possession</u>, as is common in the illegal narcotics trade."  Further, Horne avers that, "Based on these calls, and on MAYNARD's identified role in JONES's [sic] narcotics' trafficking operation, <u>investigators believe</u> <u>that MAYNARD has evidence pertaining to narcotics-trafficking in his possession</u>, to include letters from ANTOINE JONES."  (See Exh. 1 at 12)(emphasis added).

c.    one paragraph with the heading "Probable Cause for Individual Location," which states nothing more than the location to be searched and a description of Jones as an inmate at the D.C. Jail. (See Exh. 1 at 13).

d.    one paragraph with the heading "Offenses," which lists "Attempted obstruction of justice and witness tampering, in violation of 18 U.S.C. §§ 1510, 1512, and 1513, and violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et seq., including: (a) the possession with intent to distribute and distribution of controlled substances, in violation of Title 21 United States Code (USC) § 841(a)(1); and (b) conspiracy to commit such offense, in violation of 21 U.S.C. § 846." (See Exh. 1 at 13).

On its face, the Affidavit fails to allege any set of facts that Jones in any manner attempted to obstruct justice or tamper with witnesses or engage in narcotics-related activities from his jail cell.  In fact, the entire factual portion of the affidavit focuses on Maynard and notes that investigators believe that Maynard, <u>not</u> Jones, had kept letters from Jones in his possession and that Maynard, <u>not</u> Jones, had evidence pertaining to narcotics-trafficking in his possession.

used to establish probable cause, *are* admissible to establish good faith, the constitutional and prudential standards for showing probable cause will be undermined. In effect, the good faith exception would swallow the Fourth Amendment rule. *See United States v. Luong*, 470 F.3d 898, 905 (9th Cir. 2006).

### III.    THE SEARCH VIOLATED THE ATTORNEY-CLIENT PRIVILEGE

Federal courts recognize the attorney-client and work product privileges as doctrines that serve to protect confidential communications between attorneys and their clients, as well as the mental impressions and legal strategies developed by attorneys in anticipation of litigation. *See Fisher v. United States,* 425 U.S. 391, 403 (1976); *Upjohn Company v. United States,* 449 U.S. 383, 389  (1981); (noting that the attorney-client privilege covers a wide range of communications with a purpose of encouraging "clients to make full disclosure to their attorneys."). While both privileges are virtually inviolable, this is only true if the proponent of the privilege can establish that the privilege exists in the first instance, and that it has not been waived. *See United States v. Bump,* 605 F.2d 548, 551 (10th Cir.1979).

To determine the existence of either an attorney-client or work product privilege, courts focuses on whether the client who communicates the information or the attorney who creates the work product has a "justifiable expectation" that the information will remain secret. *In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007 , 1015-16 (1st Cir.1988). A waiver can be express or implied by conduct. "Implied waiver occurs when a party claiming the privilege has *voluntarily* disclosed confidential information on a given subject matter *to a party not covered by the privilege." Hanson v. U.S. Agency for International Development,* 372 F.3d 286, 293-94 (4th Cir. 2004). A client waives the privilege "by deliberately injecting into the case

7

the advice which he received from his attorney." *Smith v. Alyeska Pipeline Service Co.,* 538 F. Supp. 977, 979 (D. Del. 1982).

Materials may be covered under both the attorney-client privilege and work product doctrine. *Upjohn Company v. United States,* 499 U.S. at 398. Thus, documents prepared with the purpose of being sent to counsel for legal advice, legal opinions, legal services, or assistance in a legal proceeding are held to be privileged. *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800 (Fed. Cir.2000).

The government has informed Jones that it intends to use at trial several pages seized from Jones' cell that contain lists of names. These pages (*See* Exh. 2 at 10 & 17), were made by Jones at the direction of counsel. At the beginning of this case, counsel asked Jones to make a list of all the individuals who may have information regarding this case (possible witnesses) and all the individuals who may be in a position to testify against him (cooperators). Jones did so, but before he could provide the lists to counsel, the government searched his cell and seized the lists. The government cannot seriously argue that Jones somehow waived the privilege. When documents are secured through the execution of a search warrant, the production cannot be said to be voluntary. *See Transamerica Computer v. International Business Machines,* 573 F.2d 646, 651 (9th Cir.1978).

Additionally, upon information and belief, the items seized from Jones' cell were not kept by a "taint team." Rather, they were kept by the very prosecutors and law enforcement officers that are part of this case. Counsel concludes this by the fact that AUSA Lieber faxed to counsel copies of the seized documents. Accordingly, Jones requests that the Court conduct an evidentiary hearing to explore whether the government improperly intruded on Jones' attorney-

8

client privilege through the abuse of its "taint team" procedures, and, if so, to determine the

extent to which sanctions should be imposed against the government or its counsel.



DEC 02 2005 16:26 FR USAU                    2023534898 TO ███████████          P.01/02



**U.S. Department of Justice**
**United States Attorney**
**District of Columbia**

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20530*



# FAX

| | | | |
|---|---|---|---|
| **To:** | ~~DC Jail~~ | **From:** | USAO/DC |
| | (202) ~~████~~ | | (202) ~~████~~ |
| **Fax:** | | **Phone:** | |
| **Date:** | December 2, 2005 | | |
| **Re:** | Request for Lockdown: Antoine Jones | | |
| **Page(s):** | 2 including cover | | |

**COMMENTS:**

Please ~~████████████████████████~~ if you have any questions,
please call me on the telephone number listed above.

Thanks

---

## U.S. ATTORNEY FACSIMILE COMMUNICATION

*WARNING: Information attached to this cover sheet is U.S. Government Property.
If you are not the intended recipient of this information, disclosure, reproduction,
distribution, or use of this information is prohibited. Please notify the originator
immediately to arrange for proper disposition.*

DEC 02 2005 04:27PM    From: ███████           ID:              Page:001  R=97%



DEC 02 2005 15:28 FR UWAU                    TO

# Memorandum

*United States Attorney*
*District of Columbia*

**Subject**
Request for Lockdown
Antoine Jones
DCDC 241912

**Date**
December 2, 2005

**To**

**From**
USAO/DC

DC Jail

AUSA ██████████ has indicated in a previous request, dated November 23, 2005, that inmate Antoine Jones, DCDC 241912, should be placed in a lockdown at the DC Jail. Please ensure that Mr Jones is locked down until further notice.

If you have any questions, please call me at (2) ████████ or check with ████ at (2) ████████

Thanks

DEC 22 2005 12:42 FR UWAU ███████ TO ████████ P.02/11

# Memorandum

United States Attorney
District of Columbia

| Subject: | Date: |
|---|---|
| Continuing Problems with Prisoner Antoine Jones, DCDC 241-912 | December 22, 2005 |

| To: | From: |
|---|---|
| Warden, District of Columbia Jail | ████████████ Assistant United States Attorney |

On ██████ ███████, the United States Attorney's Office made a ███████ █████ ████████, that the aforementioned prisoner, Antoine Jones (DCDC 241-912) ████████ ███████, based on growing concerns that Mr. Jones was ████████ ████████ ████████ ███████ in his narcotics conspiracy case being prosecuted in United States District Court for the District of Columbia. ████████████, on ████████████ ████████ ████████████ while █████████████████████████ that he was ████████ ████████ █████████ ████ █████████████ which led ██████████████ ████████████████ With the aid of members of ██████████████████████████ I learned that Jones did, indeed, remain in population. Thus, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

████████████████████████████████████████████, █████████████████████ and ████████████████████████████████████████████████████████████ continue to ████████████████████████████████████████████████the purpose of his being in that ███████ ‑ ████████████████████ Indeed, some of the basis for the government's concern regarding Jones' ████████████████████████████████████████████ ████████████████████████████

I have attached copies of the most recent Department of Corrections call logs. ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████

The U.S. Attorney's Office and the F.B.I. are very concerned that Antoine Jones ███████ ███████ ████████ ████████ ██████ Please consider this memorandum a formal request for an immediate investigation into this situation, to include an examination of how these clear violations occurred, and more importantly, an immediate correction of the problem.

Please feel free to contact me at (202) ███████ (office) or (202) ███████ (cell), if you have any questions.

2

I should have the right to call witnesses and face my accuser. I have been denied both a 60-day and 90-day review with the Unit Housing Board to update my status, voice my concerns, complaints, questions, requests and my fears. I have spoken with Associate Warden Dubois, Acting Associate Warden, Major Waldren, Captain Tyler, Lieutenant Diaz, Unit Lieutenant in Charge of S-1 Unit, Lt. Brinson on numerous occasions, Sargent Garner, Sargent Dent in charge of the Unit Housing Board. I have given complaint forms and request forms to Case Manager Simpson, Case Manager Hilcrest, Case Manager Miller, and Head of Case Management Ms. Teamoney on numerous occasions requesting an explanation and documentation showing why I have been placed in segregation under Total Separation (T.S.) Status and why all of my rights and my right to due process are being denied. Ms. Simpson, Lt. Brinson, and Sgt. Garner replied verbally that they couldn't document it on paper or show me documentation on paper but that it was a "court order" which came from the prosecutor.

COMPLAINT #1 - Access to Court:

During the time I have been held in segregation under T.S. Status I have been deprived of my right to properly prepare my defense for my criminal case, and therefore, deprived of the right to a fair trial. On February 23, 2006, I attempted to call my attorney but I was put out of the Unit Office and denied the right to a legal phone call by Case Manager Reece. This incident was witnessed by C.O. Root and numerous of inmates watching and listening. Being housed in Segregation S-1 Unit, I have had no access to a mini-Library in unit, no access to writing materials, no access to a typewriter, no access to law books to research or gather legal case information, and no access to a copy machine.

On January 30, 2006, I gave important Legal Material to Case Manager Simpson to be photocopied for my attorney. As of today (March 22, 2006) I have not received the original materials nor the copies back. I have not been allowed proper access to the Law Library nor adequate assistance from the administration or the Law Library Clerk trained in law to provide inmates with help or assistance with questions, concerns and requested cases. The Law Clerk does not come in contact or communicate verbally with the inmates or detainees housed in Segregation S-1 Unit at all. The Law Library Clerk, Ms. Thomas does not come on this particular tier to respond to any questions, complaints or concerns. It has

ANTOINE JONES - PAGE 2

taken her two, three weeks, or sometimes over a month to respond to my requests for legal information.

Further, being in S-1 Segregation with my rights to due process stripped, I have no proper means to communicate with my attorney, investigator, or witnesses and no ability to properly prepare an effective defense.

In conclusion, placing me in Segregation under Total Separation status is a clear violation of my 8th and 14th Constitutional Amendment rights.

**COMPLAINT #2 - Access to Religious Services, Religious Programs, Religious Reading Materials:** Since being in S-1 Segregation under T.S. Status, I have been denied my right to freely exercise my religion, to attend bible study, to attend worship services in the Chapel, access to a bible or religious reading materials, communication and inspiration from a Chaplain, minister from the community as well as contact with any religious service personnel. The Latino detainees have been given access to Spanish speaking religious personnel and Spanish religious reading materials. My complaint here therefore being twofold, first the denial of access to religious activities and materials; and second, discrimination against me because other detainees were allowed access and were treated differently than I was treated.

In conclusion, this is discrimination and a violation of my 1st Constitutional Amendment which affords me access to any religious programs or religious reading materials preventing me to strengthen my faith, provide me with inspiration and spiritual guidance and the opportunity to serve my God Almighty.

**COMPLAINT #3 - Denial of my Due Process:** Being held in S-1 Unit Segregation, under Total Separation Status, the Prosecutor and the DCDC Administration conspired and stripped me of my pretrial detainee due process privileges: (1) telephone privilege, (2) social visit privilege, and (3) mail privilege. The absence of my due process privileges caused me to lose ties with my wife, my son, my family and business associates. In addition, I was also denied legal telephone call to my lawyer. The loss of ties and the non communication with loved ones caused me and my loved ones to constantly worry, caused nervousness in my stomach, caused constant diarrhea, mental and emotional stress, constant headaches, and when I heard my wife was in danger of hypertension and my son was too worried and too stressed to complete his first semester of college, this caused me to worry more and become more stressed out physically, emotionally and mentally.

ANTOINE JONES - PAGE 3

In conclusion, the Prosecutorial interference with the defendant's access to witness can require reversal because it denied the defendant the right to a fair trial. The improper procedure of denying me mail, intercepting my mail, copying and reading my mail without a warrant or violating and spying on my case is illegal and a violation against my prison rights and my constitutional rights. By me not being able to communicate with my wife, my family, and my business associates has cost me monetary damages from my business, physical and emotional and mental stress. My 1st, 8th, and 14th Amendment rights have been violated. I have been a victim of discrimination and prejudices from the Prosecutor and the DCDC Jail Administration.

**COMPLAINT #4 - <u>Sanitation & Health Hazard Risk</u>:** Being housed in S-1 Unit Segregation, I am subjected to a health hazard, to breathing, smelling and exposure to human feces and human urination in the air. The presence and the permanent smell of human feces on the bars and the walls caused me to have constant migraine headaches. The cell was filthy when I was placed in it. I constantly requested and was constantly denied sanitation and cleaning supplies, including cleaning rags, toilet brush and disinfectants. The only cleaning utensils afforded me were a mop which was soiled with human feces and urine and a broom which was soiled with human feces and urine as well. The cell is riddled with food stains on the walls, feces stains, stains from dead bugs and blood from bugs and insects, globs of spit, and some substance which resembles human mucus. The cell is infested with rodents and rodent droppings. I have had to chase mice out of my cell on numerous occasions, including coming out of the air vent, running across the table in the cell, and one jumped from under my legal papers on the table and jumped on me while I was attempting to organize my papers and clean the cell. The temperature in the cell is unbearably cold. The unbearably cold temperatures has caused me to suffer severe sleep disorder, excruciating backaches, ear aches and neck pain, constant numbness of my fingers, elbows, knees and toes, tendinitis, arthritis, and at times the pain and agony is so severe that I cannot write, read or study but resort to taking medication and getting under multiple covers and trying to sleep through the suffering. The only medication the medical officer prescribes is acetaminophen tablets or pseudoephedrine tablets for relief from colds, flu, allergies, pain or aches of any kind. As a result of the filth and unsanitary showers and cells within the unit, I have also acquired the following medical conditions: athlete's foot, body fungus, and dandruff.

In S-1 Unit Segregation, we do not have access to proper laundry facilities. The personal laundry goes sometimes weeks before laundry services are made available to us. When laundry pick-up service does come through it

ANTOINE JONES - PAGE 4

is usually after midnight and our laundry, including sheets and towels, is not returned until after 5 a.m. which means we go through the night in an unbearably cold cell without linen.

In conclusion, being housed in S-1 Unit caused me great health risks and distress both present and future. I have already acquired athlete's foot, body fungus, and dandruff. Along with living and sleeping in a filthy cell, the build-up of dirt and dust causes me to have allergic reactions and further puts me at health risk on a daily basis.

COMPLAINT #5 - Discrimination and Degradation: Being removed from the general population and being subjected to the segregation of being housed in S-1 Unit has been degrading and has made me a victim of discrimination by the Prosecutor and the DCDC Jail Administration and staff. Unlike the co-defendants in my case and unlike the general population, I have to be in my cell 24 hours a day 4 days a week and 23 hours a day 3 days a week. During the break three times a week, I have to fit in recreation, shower and, if granted the privilege, a phone call. I am subjected to a strip search, handcuffs, shackle and belly chain and my cell searched each time I go to the shower, or to recreation, and each time I leave the unit.

In conclusion, I feel humiliated and sexually harassed and degraded on a daily basis. For recreation, I am placed alone in a cage that looks like it was built to house an animal. The constant nakedness in front of grinning C.O.'s, constant handcuffs, shackles and belly chain sexual harassment, and all of the other torture outlined here is humiliating, degrading, and cruel punishment especially since I should not be subjected to this prejudicial discrimination. I have not had any sanctions, no shots, no charges and there has been no proper investigation. T.S. status should not be used as a pretext for punishment, torture, to discriminate or for indefinite confinement of a detainee nor should it be instituted without the prison officials engaging in periodic review.

I have been placed in S-1 Unit Segregation under T.S. status under false pretense. In the process, I have been subjected to invasion of my privacy, prevention of a fair trial, violation of my 1st, 8th and 14th Constitutional Amendment rights by a prejudice and vindictive Prosecutor. I have been subjected to daily discrimination by the DCDC Jail administration and staff. I have suffered monetary damages and with the numerous wrong doings and actual fraud, I hereby file these five complaints. The Prosecutor is aware of and has participated in fabricating evidence throughout the investigation and has grossly violated the standard of due process resulting in loss of liberty and a denial of my constitutional rights.

ANTOINE JONES - PAGE 5

Also noted here, prosecutorial interference with the defendant's access to witness can require reversal because it denies the defendant (myself) a fair trial.

I am asking to obtain the relief and monetary damage of $5,000,000.00 (five million dollars) disbarment or suspension of the Prosecutor(s) for willfully depriving me of my Constitutional rights, therefore rendering me unable to have a fair trial, and I am also requesting the demotion or suspension of the DCDC Jail Administration responsible for carrying out the prejudice and discrimination orders towards me. On March 17, 2006, in open court, the judge stated that she never signed any order to place me in S-1 Unit Segregation under Total Separation (T.S.) Status. Therefore, the Prosecutor(s) acted outside their realm of jurisdiction in instructing the DCDC Jail Administration to place me in the T.S. Status and the DCDC Jail Administration acted outside their realm of jurisdiction by carrying out such an order without a properly signed court order from the judge.

---

**Antoine Jones**                          **Date**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOINE JONES, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) Civil Action No. 07-1172 (RJL) |
| v. | ) (ECF) |
| | ) |
| STEPHANIE E. YANTA, et al. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO ENLARGE TIME
## TO FILE ANSWER OR OTHERWISE RESPOND TO COMPLAINT

Plaintiff, a *pro se* prisoner, brings this action against Stephanie E. Yanta, Rachel Lieber and Jack Geise.[1] Defendants' answer is due September 24, 2007.

Defendants respectfully request an enlargement of time to file an answer or otherwise respond to the complaint in this case. Defendants request up to and including October 31, 2007, to file an answer or otherwise respond to the complaint.

When federal employees are named individually in a lawsuit, they may request legal representation by the Department of Justice ("DOJ"), pursuant to 28 C.F.R. § 50.15. The decision whether to grant such representation is made by the Torts Branch of DOJ Headquarters and, if the request is approved, this Office is usually appointed as counsel. Representation was only recently approved for one of the Defendants and that process is being finalized. Also, additional time is needed to review and consult with Agency Counsel to resolve certain factual matters necessary to

---

[1] By way of this motion for an extension of time, the individual federal defendants submit that they have not waived any defense or defenses available to them under Fed. R. Civ. P. 12 or otherwise, including immunity from suit.

complete Defendants' motion.

Also, Defendants request the additional time until the end of October because the undersigned will be away in training for two weeks during the month of October.

Because plaintiff is a prisoner, appearing here *pro se*, Local Rule 7(m) does not apply and the undersigned have not made efforts to contact him regarding this motion.[2]

September 24, 2007                         Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)

---

[2] Local Civil Rule 7.1(m) requires "counsel" to discuss non-dispositive motions with "opposing *counsel*." It does not require counsel to discuss those motions with pro se parties. Nonetheless, it has been the general practice of this office to attempt to discuss such motions with nonprisoner pro se parties. This practice is informed by, and consistent with, Local Civil Rule 16.3(a). Local Civil Rule 16.3(a) excludes prisoner pro se parties from the Court's meet-and-confer requirements. Specifically, that Rule requires "[c]ounsel (including any *nonprisoner* pro se party)" to meet and confer prior to a scheduling conference. LCvR 16.3(a) (emphasis added).

2

## CERTIFICATE OF SERVICE

I certify I caused copies of the foregoing Defendants' Motion to Enlarge Time to File Answer or Otherwise Respond to Complaint served by first class mail upon *pro se* plaintiff at:

Antoine Jones
DC# 241-912
1901 D Street, S.E.
Washington, D.D. 20003

on this 24th day of September, 2007.    ___/s/_____

　　　　　　　　　　　　　　　　　　　　KENNETH ADEBONOJO
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTOINE JONES, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| | ) Civil Action No. 07-1172 (RJL) |
| v. | ) (ECF) |
| | ) |
| STEPHANIE E. YANTA, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

UPON CONSIDERATION of the Defendants' Motion for Enlargement of Time, support thereof, the grounds stated therefor and the entire record in this matter, it is by the Court this _____ day of _____, 2007, hereby

ORDERED that the said motion be and hereby is granted; and it is

FURTHER ORDERED Defendants shall file an answer or dispositive motion on or before October 31, 2007.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530

Antoine Jones
DC# 241-912
1901 D Street, S.E.
Washington, D.C. 20003

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTOINE JONES<br>DC#241-912<br>1901 D Street, S.E.<br>Washington, D.C. 20003 | )<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 07-1172 (HHK) |
| Plaintiff | )<br>) | |
| v. | )<br>) | |
| STEPHANIE YANTA,<br>Special Agent, FBI, et al. | )<br>)<br>) | |
| Defendant. | )<br>) | |

## NOTICE OF APPEARANCE

The Clerk of the Court will please enter the appearance of Assistant United States

Attorney Kenneth Adebonojo as counsel for Defendant in the above-captioned case.

_/s/_

KENNETH ADEBONOJO
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7157
kenneth.adebonojo@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2007, I caused the foregoing Praecipe to

be served on Pro Se Plaintiff, **Antoine Jones**, postage pre-paid and addressed as follows:

ANTOINE JONES
DC# 241-912
1901 D Street, S.E.
Washington, D.C.  20003


_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7157
kenneth.adebonojo@usdoj.gov

**Certificate of Service**

I certify I caused copies of the foregoing Notice of Related Case to be served by first class mail upon *pro se* plaintiff at:

      Antoine Jones
      D.C. # 241912
      D.C. Jail
      1901 D Street, SE
      Washington, DC 20003

on this 29th Day of August 2007.

                                         /s/
                              KENNETH ADEBONOJO
                              Assistant United States Attorney
                              555 4th St. NW
                              Washington, DC 20530
                              (202) 514-7157
                              kenneth.adebonojo@usdoj.gov