UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

ANTOINE JONES
    PLAINTIFF
V.
RACHEL LIEBER
    DEFENDANT

CIVIL ACTION NO. 07-1027 (RJL)

## REPLY TO FEDERAL DEFENDANT'S OPPOSITION TO RESPONSE TO DEFENDANTS' MOTION TO DISMISS

PLAINTIFF RECEIVED THIS MOTION ON FRIDAY MARCH 21, 2008, FOUR DAY PAST DUE DATE TO COURT.

THE DEFENSE'S MOTION TO DISMISS IS AN EFFORT TO DOUBLE TALK THE COURTS AND, GET SELF PITY AND TAKE THE FOCUS OFF OF THE ISSUES AT HAND, WHICH IS THE PLAINTIFF'S CONSTITUTIONAL RIGHTS BEING VIOLATED!

THE DEFENDANT WOULD LIKE THE COURTS TO FOCUS ON THE PLAINTIFF'S CRIMINAL TRIAL AND NOT ON THE CONSTITUTIONAL VIOLATION AND THE VIOLATION OF PROFESSIONAL RULES OF CONDUCT FOR LAWYERS.

THE DEFENDANT ONCE AGAIN TRIES TO DECEIVE THE COURTS WITH THIS HECK RULE (HECK V. HUMPHREY 512 US 477 (1994).

ONCE AGAIN SHE'S OFF THE MARK, THIS RULE FOCUS ON AN UNCONSTITUTIONAL CONVICTION, OR MAYBE UNCONSTITUTIONAL SENTENCE. I AM COMPLAINING NEITHER IN THIS

ISSUE [ONLY AN UNCONSTITUTIONAL PLACEMENT IN SEGREGATION.

THE PLAINTIFF WILL BRING THE GOVERNMENT BACK ON TARGET AND BRING THE ATTENTION AND FOCUS OF THE COURTS TO THE FACTS, EVIDENCE AND THE TRUTH!

THE PLAINTIFF HAS SHOWN, AND CAN PROVE THE DEFENDANT RACHEL LIEBER FROM THE UNITED STATES ATTORNEYS OFFICE ON NOV 23, 2005 AND DEC 2, 2005, REQUESTED BY FAX THE PLAINTIFF TO BE LOCKED DOWN AND PLACED IN SEGREGATION.

THE PLAINTIFF HAS SHOWN AND CAN PROVE THE DEFENDANT ONLY SELECTIVE THE PLAINTIFF TO BE PLACED IN SEGREGATION AND IN TOTAL SEPERATION STATUS.

THE PLAINTIFF HAS EXPOSED THE GOVERNMENT ON THE ILLEGAL SEARCH OF THE PLAINTIFF'S CELL IN DC JAIL. THE HONORABLE JUDGE HUVELLE DIDN'T LET RACHEL LIEBER OR THE PLAINTIFF ARGUE THE ILLEGAL ISSUE, SHE ORDERED RACHEL LIEBER TO SUPPRESS AND NOT USE THE INFORMATION IN THE CRIMINAL TRIAL.

THE PLAINTIFF HAS WITNESS THAT UNKNOWN SOURCES WHO WERE NOT DEPARTMENT OF CORRECTION. CORRECTIONAL OFFICERS, SEARCH THE PLAINTIFF'S CELL WITHOUT HIS PRESENCE, AND THEY NEVER PRESENTED A SEARCH WARRANT OR LEFT A SEARCH WARRANT. THE WITNESSES VERIFIED THE UNKNOWN SOURCE WHO THEY BELIEVE WAS THE FBI, MENTIONING THE FEDS TOOK THE PROPERTY FROM THE CELL IN JAIL. THIS WAS ON DEC 22, 2005 THE DAY

I WAS PLACED IN SEGREGATION OF TOTAL SEPERATION.

THE PLAINTIFF HAS SHOWN AND CAN PROVE THE DEFENDANT ILLEGALLY OBTAINED THE PLAINTIFF'S DC JAIL CALLS, ILLEGALLY LISTENED TO THE PLAINTIFF'S DC JAIL CALLS, ALL ON HER OWN, WITHOUT THE POWERS OF THE COURT, HAD NO SUBPOENA, NO WARRANT, NO COURT ORDER, SHE TOOK IT UPON HERSELF, A GOVERNMENT LAWYER, THE PROSECUTOR WHO IS ON THE PLAINTIFF'S CRIMINAL CASE, TO ILLEGALLY LISTEN AND SPY ON THE PLAINTIFF'S DEFENSE AND USING ILLEGAL CALL TO FABRICATE A STORY, AND TO MISLEAD THE COURTS AND DC JAIL ADMINISTRATION. SHE EVEN USED THE CALLS AND MENTIONED THE CALL IN THE GRAND JURY AND THE DETENTION HEARINGS, AND WENT AS FAR AS TO LET GRAND JURY WITNESSES LISTEN TO THEM. THIS OVERZEALOUS CONDUCT BY RACHEL LIEBER AND OUTRAGEOUS CONDUCT VIOLATED MY CONSTITUTIONAL RIGHTS, HUSBAND AND WIFE PRIVILEGE ON THE PHONE, AND EXPECTATION OF PRIVACY FOR EVERYBODY CONVERSATION SHE LISTENED TO ILLEGALLY.

THE PLAINTIFF HAS SHOWN AND CAN PROVE ATTORNEY CLIENT PRIVILEGE VIOLATIONS. THE PLAINTIFF'S LAWYER HAS MENTIONED IN ORAL AND IN WRITTEN MOTION OF THIS ATTORNEY CLIENT PRIVILEGE VIOLATION.

THE PLAINTIFF CAN GO ON AND ON, I BELIEVE THE GOVERNMENT GETS THE POINT AND NOW THE COURTS CAN FOCUS ON THE CIVIL ISSUES NOT THE CRIMINAL MATTER.

IN PARAGRAPH THREE OF THE DEFENDANT'S MOTION, SHE MENTIONS THE PLAINTIFF STATED <u>JUDGE HUVELLE CONSPIRED WITH THE GOVERNMENT TO HIDE THE TRUTH, AND</u>

P6 4

IN THE PLAINTIFF'S VERY NEXT BREATH, HE SAID <u>SHE DID NOT ORDER PLAINTIFF PLACEMENT IN ISOLATION</u>. THE PLAINTIFF WILL CLARIFY THE GOVERNMENT'S RESPONSE. THE PLAINTIFF IS NOT SAYING JUDGE HUVELLE HAS CONSPIRED WITH <u>THE GOVERNMENT</u> [WHO'S THE DEFENDANT IN THIS CIVIL MATTER]. THE PLAINTIFF IS SAYING THAT JUDGE HUVELLE WAS BIAS AND PREJUDICE BY SIDING WITH THE GOVERNMENT AND COACHING THE GOVERNMENT IN HIS CRIMINAL CASE, BEFORE THE TESTIMONY OF FBI AGENTS, STEPHANIE YANTA TESTIMONY, PG 5 THRU PG 10 (EXIBIT #1)

I LIKE TO REFER THE COURTS TO THE CONDITION OF CONFINEMENT HEARING ON APRIL 24, 2006. I GUARANTEE THE COURT SEES EVIDENCE SUPPORTING THE PLAINTIFF'S COMPLAINT AND ACCUSATION OF RACHEL LIEBER'S OVER ZEALOUS AND OUTRAGEOUS CONDUCT. THE FACT IS JUDGE HUVELLE NEVER GAVE COURT ORDER FOR THE PLAINTIFF TO BE PLACED IN SEGREGATION, WITH NO ACCESS TO COURT OR FOR THE PLAINTIFF TO GET HIS DUE PROCESS PRIVILEGES STRIPPED (NO SOCIAL VISITS, NO MAIL PRIVILEGES, NO PHONE PRIVILEGES) TO SHOW THAT SHE AGREED WITH THE PLAINTIFF SHE GRANTED THE PLAINTIFF A COURT ORDER TO GET OUT OF SEGREGATION AND DENIED THE GOVERNMENT TO HAVE THE COURT TO PLACE THE PLAINTIFF

MILES AWAY IN SOME JAIL IN ORANGE COUNTY, VA. [THE PLAINTIFF IS REQUESTING THIS APRIL 24, 2006 CONDITION HEARING, ESPECIALLY THE EXPARTE CONFERENCE WITH DEFENDANT RACHEL LIEBER AND JUDGE HUVELLE. [THIS CONDITION HEARING WILL PROVE MY CASE]

THE GOVERNMENT DESPERATE ATTEMPT TO BRING IN THE PLAINTIFF'S CRIMINAL CASE AND JUDGE HUVELLE'S BIAS AND PREJUDICE DECISION IS HE DESPERATE EFFORT TO AVOID THE FACTS, GET PITY AND AVOID THE TRUTH BY THE PLAINTIFF IN FRONT OF A JURY TRIAL.

THE DEFENDANT WILL NOT HAVE THE COACHING AND SUPPORT FROM FROM HONORABLE JUDGE HUVELLE, SHE WILL HAVE TO RELY ON THE <u>TRUTH</u> AND <u>FACTS</u>. THE PLAINTIFF IS READY TO SHOW AND PROVE THE DEFENDANTS WRONG DOING.

THE PLAINTIFF WILL LIKE TO RESPOND TO PARAGRAPH FIVE OF THE DEFENDANT'S MOTION TO DISMISS. YES THE PLAINTIFF HAS REPEATEDLY PROVEN, SHOWN AND MADE ALLEGATIONS THE FEDERAL DEFENDANT VIOLATED THE PLAINTIFF'S CONSTITUTIONAL RIGHTS, STEPPED OUT OF THE REALM OF A UNITED STATES ATTORNEY INTO A VINDICTIVE INVESTIGATION, AND VIOLATED NUMEROUS CODES OF PROFESSIONAL CONDUCT.

THE SECOND PART OF PARAGRAPH FIVE, THE DEFENDANT IS AT HER BEST, DOUBLE TALKING AND DECEIVING THE JUDGE.

THE PLAINTIFF WILL BREAK DOWN THE DEFENDANT'S DECEPTION AND HER DOUBLE TALK.

THE DEFENDANT STATED THE PLAINTIFF'S <u>ATTEMPTS TO CONTACT HIS AT LARGE CO-CONSPIRATOR IN DRUG ACTIVITY TO FIND OUT THE WHERE ABOUTS OF POTENTIAL GOVERNMENT WITNESSES</u>. THIS STATEMENT IS A BOLD FACE LIE. THE DEFENDANT CAN NOT SHOW ONE INCIDENT OR

PHONE CALL THAT HAVE THE PLAINTIFF STATEMENT TO ANY ONE OF MY CO-CONSPIRATORS TO FIND OUT A WHERE ABOUTS OF POTENTIAL GOVERNMENT WITNESS, A SNITCHING INFORMER OR CONFIDENTIAL SOURCE. THE DEFENDANT WHO IS AN EXPERIENCED HIGH POWERED ATTORNEY, MUST HAVE MISSED THAT DAY IN SCHOOL.

A POTENTIAL WITNESS, MEANS PERSON IS AVAILABLE AND SHOULD BE AVAILABLE TO THE GOVERNMENT OR THE DEFENSE. THE PLAINTIFF AND THE AGENTS VIOLATED, INTERROGATE, INTIMIDATED, AND HARRASSED THE DEFENSE'S POTENTIAL WITNESSES, NEVER ONCE WAS CHARGED WITH OBSTRUCTION OF JUSTICE OR THROWN IN JAIL FOR THEIR CONSTITUTIONAL VIOLATION. THE LAW STATES IF AVAILABLE THE PLAINTIFF HAS THE RIGHT TO INTERVIEW, SUBPOENA ANY POTENTIAL WITNESS, GOVERNMENT OR DEFENSE. THE PLAINTIFF SHOULDN'T HAVE BEEN PUNISHED AND SUBJECTED TO SEGREGATION FOR ABIDING BY THE LAW AND PREPARING FOR HIS CRIMINAL CASE.

THE DEFENDANT FURTHER ON STATES - LETTERS TO FRIENDS WHEN HE REQUESTED THAT SOME BE FORWARDED TO HIS ALLEGED DRUG CO-CONSPIRATORS. THIS IS ANOTHER BOLD FACE LIE. THE DEFENDANT HAD NO PROOF OF ANY LETTERS TO ANYONE BEING OF OBSTRUCTION OF JUSTICE, OR THREAT TO KILL ANYONE. THIS CAME FROM THE DEFENDANT AND AGENTS IMAGINATION AND FABRICATED LIES. THIS EXPERIENCED LAWYER (RACHEL WEBER) KNOWS BETTER AND WAS TAUGHT IN LAW SCHOOL THAT IT'S NOT ILLEGAL TO WRITE OR SEND A LETTER TO ANYONE. SHE HAS NO PROOF, JUST DECEPTION. THE BOTTOM LINE IS THAT THE

DEFENDANT AND THE AGENTS WERE DESPERATE, THOUGHT THEY WERE ABOVE THE LAW BY USING THEIR AUTHORITY TO ABUSE THE PLAINTIFF'S CONSTITUTIONAL RIGHTS. TO WIN AT ANY AND AT ALL COST, THE DEFENDANT SEPERATED THE PLAINTIFF FROM CO-DEFENDANTS, ASSOCIATES, FAMILY OR ANYONE WHO COULD HELP THE PLAINTIFF, WIN OR PREPARE FOR HIS DEFENSE.

NONE OF THE GOVERNMENT WITNESSES, INFORMANTS, OR CONFIDENTIAL SOURCES, "ONCE" STATED IN THE GRAND JURY, IN ANY INTERVIEW BY THE GOVERNMENT IN THE PLAINTIFF'S CRIMINAL TRIAL, IN ANY PROCEEDING OR IN ANY 302'S FROM ANY GOVERNMENT WITNESSES, MENTIONS VIOLENCE. JOHN ADAMS, THE GOVERNMENT'S KEY WITNESS TESTIFIED THAT THE PLAINTIFF WAS NOT VIOLENT. THE DEFENDANT CAN NOT PRODUCE ONE WITNESS THAT CAN SHOW, PROVE, WITNESS OR TESTIFY THAT THE PLAINTIFF IS VIOLENT, WAS VIOLENT OR TRY TO OBSTRUCT JUSTICE AND TRY TO KILL SOMEONE OR TRIED TO GET SOME POTENTIAL GOVERNMENT WITNESSES KILLED. ONCE THE COURTS AND THE JURY READS ALL THE DEFENDANT'S MOTIONS THAT WAS PRESENTED IN THE PLAINTIFF'S CRIMINAL TRIAL, IT WAS ONLY AN ATTEMPT TO GET A TECHNICAL ADVANTAGE IN THE CRIMINAL TRIAL AND DENIED THE PLAINTIFF ACCESS TO COURT SO THE PLAINTIFF COULDN'T PREPARE AND LEARN THE LAW. RACHEL LIEBER WENT AS FAR AS TO SPY ON THE PLAINTIFF'S DEFENSE BY SEARCHING THE PLAINTIFF'S JAIL CELL, "TWICE", READING AND TAKING THE PLAINTIFF'S ATTORNEY-CLIENT PRIVILEGE AND

p 6·8

HUSBAND-WIFE PRIVILEGE PAPERWORK AND LETTERS, ~~also~~ LISTENING TO THE PLAINTIFF'S CALLS IS A CLEAR CONSTITUTIONAL VIOLATION, BEING THE DEFENDANT NEVER GOT A COURT ORDER, A SUBPOENA OR ANY KIND OF WARRANT.

IN MY CONCLUSION - THE PLAINTIFF IS REQUESTING THE COURT TO ORDER THE DEFENDANT TO RESPOND ON ALL OF THE PLAINTIFF'S REPLY MOTIONS AND SUPPLEMENTAL MOTIONS DENY ANY MORE ENLARGEMENT TIME OR STAY REQUEST AND CONTINUE THIS MATTER TO A JURY TRIAL AS SOON AS POSSIBLE. THE PLAINTIFF WOULD LIKE TO CORRECT THE AMOUNT OF MONETARY DAMAGE, I BELIEVE I ASKED FOR 5,000,000.00 IN MONETARY DAMAGE. GOING BACK TO THE ORIGINAL COMPLAINT RECORDS, I REALIZE ITS 1,000,000.00 DIVIDED BY WHOM THE COURTS FIND LIABLE.

Antoine Jones
241-912

**Page 9**

1  Strategy is not his call. It's yours, and you know what she
2  wants to do and that's fine. If you don't object to it, I
3  don't have any problem. The stuff isn't really relevant to
4  your guy at this moment, right?
5       MR. McDANIEL: It's not, but just for the record,
6  Your Honor, any continued questioning of Detective Yanta
7  which may lead to any instruction from this Court as it
8  relates to the authenticity, if you will, of the search
9  warrants and/or any further consideration by the jury of the
10 substance of the affidavits we would object to.
11      THE COURT: Well, I know. So far you haven't
12 opened the doors as to your fellow anyway since there is very
13 little. I don't remember anything specific other than some
14 phone calls. But we're on the wrong witness for attacking
15 credibility. Why don't you wait until the C 1 and CS's 1, 2,
16 3 come? But I understand your point.
17      MR. McDANIEL: We're in a joint trial, Your Honor,
18 so certainly the fact that --
19      THE COURT: Ms. Lieber will be careful in that
20 regard. They're not all joining in this approach. Don't
21 forget, Mr. Jones. You've got a lawyer here. You're not for
22 strategy decisions. It's not your call.
23      Okay. I don't know what else to say. We'll have
24 to take it up when he finishes. You're going to do your
25 redirect at the end of all these gentlemen, frankly. So we

**Page 10**

1  have a ways to go. I mean you've given them fair notice.
2       I understand your points, and I think that the way
3  she testified in direct, I reread it last night, you know, if
4  I were anybody, frankly, and I don't mean to be giving
5  advice, get her off the stand. She's got nothing to add
6  here. Okay. But if you want her to stay on the stand, then
7  they get to have her stay on the stand, too.
8       MS. LIEBER: Your Honor, just on that note, if I
9  could step out and actually get the witness?
10      THE COURT: Oh, yeah, but are we finished talking?
11      MS. LIEBER: I'm sorry.
12      THE COURT: Fine. If I hadn't reviewed these
13 affidavits so thoroughly once before, I would be less
14 adamant, but I have reviewed them. Okay. We're ready? Good
15 morning.
16      THE WITNESS: Good morning.
17      THE COURT: If you take the stand, we can bring in
18 the jury.
19      The witness is still on the stand. And Mr.
20 Balarezo is resuming cross examination.
21      STEPHANIE YANTA, GOVERNMENT WITNESS, PREVIOUSLY SWORN
22      (Jury Present)
23      CROSS EXAMINATION resumed
24 BY MR. BALAREZO:
25 Q    Good morning, Agent Yanta.

BIAS AND PREJUDICE - example by the courts

**Page 11**

1  A    Good morning.
2  Q    How are you?
3  A    Good.
4  Q    When we left off on Friday, we were talking about
5  some affidavits that you had completed in relation to this
6  case, do you remember that?
7  A    Yes, sir.
8  Q    And I asked you about the August 10th affidavit and
9  where you were trying to get an order to get text messages
10 from Maynard and Jones?
11 A    Yes.
12 Q    Do you recall also doing an affidavit on August the
13 18th of '05?
14 A    I believe that was the extension for the text
15 messages?
16 Q    Right. And that's another affidavit that you
17 yourself completed, correct?
18 A    Correct.
19 Q    Let me show you what I'll mark as Exhibit Number 2.
20      THE COURT: This is Jones 2 for identification
21 only.
22 BY MR. BALAREZO:
23 Q    Take a look at it and let me know when you're done
24 please. Was that the affidavit for the extension?
25 A    Yes, sir.

**Page 12**

1  Q    You swore out that affidavit to a judge in this
2  courthouse, correct?
3  A    Yes, I did.
4  Q    Now, once you swore out this particular affidavit,
5  you had already obtained some text messages from the previous
6  order, right?
7  A    Yes.
8  Q    Or as a result of the previous order?
9  A    Yes.
10 Q    When you went to the judge to try to get an
11 extension, you wanted to provide him information that you had
12 obtained from the previous affidavit plus what other
13 investigations you had done before that, right, in order to
14 get the extension?
15 A    I believe that's what I put in the affidavit, yes.
16 Q    Now, let me point you specifically to Page 28 of
17 that affidavit, the first full paragraph in the middle. Do
18 you see that?
19 A    Yes, sir.
20 Q    Now, in that affidavit you include two specific
21 text messages which at some point you indicated, and I'll
22 point you to the last sentence of that paragraph, that it is
23 your affiant's conclusion that the aforementioned text
24 messages are in fact encrypted messages relating to narcotics
25 trafficking. Do you see that?

Exhibit #1

**Page 5**

1  there is probable cause to issue the warrant whatever it's
2  for.
3           So, the more -- you can do as you wish. But to
4  then expect that Ms. Lieber in some fashion is not entitled
5  to paint the bigger picture to resurrect her credibility, so
6  to speak, the fact that there is a text message that can be
7  interpreted two ways is irrelevant really and only hurts you.
8           I'm not going to stop you because she has the
9  right, and at some point in time I will also entertain a
10 request to explain to the jury the legality of this. You're
11 in some way, I mean, I've gone back to the cross, trying to
12 insinuate that this agent tried to sort of skew things.
13          And the law, it's just like any other proceeding,
14 it's one-sided. She's entitled to rely on what she relies
15 on. No Court has been mislead here. And the fact that, she
16 has a wealth of information to bring to bear in this. And if
17 you want to open up the wealth of information, you can't pick
18 and choose and suggest that one telephone conversation
19 doesn't really help her.
20          So, therefore, including it in there is really
21 misleading. Then she can include 50 other telephone
22 conversations if she wants, anything else she knew that made
23 that conversation look lousy from her point of view,
24 suspicious.
25          There is nothing wrong with putting things in

**Page 6**

1  there, picking and choosing what is suspicious. It's not her
2  obligation, short of not misleading an officer or lying, to
3  pick and choose what she wants to put in there. I'm baffled
4  by your approach. But if your client wants to open doors,
5  don't sit here and tell me that you're not opening doors by
6  picking one conversation or the other. Her points here are
7  largely, you know, I don't know what you can say.
8           MR. BALAREZO: Well, with respect to Ms. Lieber's
9  points, Your Honor, all of this for the most part is going to
10 come in anyway.
11          THE COURT: I know. So why would you want to do it
12 through this person who is going to get in all this hearsay,
13 which wouldn't otherwise come in? What's in her mind will be
14 relevant not for the truth of it but to show that her
15 affidavit is fair, complete to the extent it needs to be
16 complete.
17          MR. BALAREZO: But, Your Honor, again, I'm not
18 seeking to relitigate anything. The only thing is I have a
19 witness on the stand. I have a case agent on the stand, and
20 I think her credibility is fair game. And that's all we're
21 trying to do.
22          THE COURT: Of course her credibility is fair game.
23          MR. BALAREZO: Well, when that's all we have to go
24 on, I mean --
25          THE COURT: No, but you're forgetting something.

**Page 7**

1  She has very little to add to this. You're attacking
2  someone's credibility whose credibility is barely at issue,
3  barely. They don't read these affidavits unless you keep at
4  it. Then they could read it. So they don't know what she
5  says to the judges at all.
6           Her credibility, what you're interested in is what
7  she, the sources she had. She's not the person to be
8  attacking here. She didn't hurt you for a bit on direct as
9  far as -- you may disagree with me. She got a bunch of
10 warrants. We wouldn't be here if she hadn't gotten the
11 warrants, but they're all approved by a judicial officer.
12          MR. BALAREZO: And I think that's obviously true.
13 They got the warrants. They were approved.
14          THE COURT: So what are you accomplishing here by
15 attacking this woman's credibility. What purpose do you
16 serve by showing that she could have added a detail that was
17 maybe helpful? Or one detail that she added was skewed
18 against your client? They don't have the details in front of
19 them if they don't have at the moment the affidavit.
20          So the purpose to be served here is attacking the
21 credibility of somebody who so far hasn't testified to
22 anything as far as I can tell. You're just making her into
23 something that allows the Government to talk about all that
24 she knows. So, understand the consequences. I don't know
25 what else to say.

Received
Mail Room
MAY 28 2008
Nancy Mayer Whittington, Clerk
US District Court, District of Columbia

Exhibit #1

**Page 8**

1           MR. BALAREZO: Yeah, I fully understand the
2  consequences.
3           THE COURT: I don't see her credibility being
4  important to anything here.
5           MR. BALAREZO: Well, I guess we'll let the jury
6  decide that, but the thing that I --
7           THE COURT: Not if you keep this up, because at
8  some point in time they're going to be told that this is
9  legally sufficient and that it's not their job to question
10 whether or not there was a proper affidavit. That's already
11 way off, you know, that's water over the dam.
12          MR. BALAREZO: Right. And, again, Mr. Jones is
13 aware of this. He approves of it.
14          THE COURT: Mr. Jones is not --
15          MR. BALAREZO: Although it's my decision, Mr. Jones
16 approves of it, and I just want to let the Court know that.
17          THE COURT: Right. But for strategy purposes,
18 don't forget you've got to tell him what's in his interest.
19 And it may not be in his interest to hang out dirty laundry
20 through hearsay.
21          MR. BALAREZO: It's a roomful of dirty laundry,
22 Your Honor. So I think in his mind he does not mind
23 additional dirty laundry coming in. And if the Court wants
24 to voir dire him, I would be more than happy to put him --
25          THE COURT: I'm not going to voir dire him

## Judgement of Default

In viewing of civil case <u>07-1027 (RJL)</u>, the record reflects that defendant has not file a reply or opposed the plaintif complaint motion. Consequently the clerk of the court is requested to enter default judgment for the plaintiff.

Plaintiff moves for an entry of default judgement. Defendants have failed to answer or otherwise defend this action. The plaintiff is requesting the courts to order an evidentiary hearing or grant plaintiff's petition.

In entering of judgement of default, the default establishes a defendant liability, the court is requested to make an independent determination of sum to be awarded in the amount of $<u>1,000,000.00</u>. Ackin V Tecu, 180 F supp. 2d 15, 17 D.DC 2001, plaintiff is suing the defendant in their individual capacity, and their employers, to be paid monetary compensation, punitive damages, whom found liable.