UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTOINE JONES, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 07-1027 (RJL) |
| RACHEL LIEBER *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Antoine Jones filed this *pro se* complaint under 42 U.S.C. § 1983 against Assistant United States Attorney Rachel Lieber and others, alleging that certain of his constitutional protections were violated when he was placed in administrative segregation.[1] Lieber has filed a motion to dismiss, asserting, among other things, a defense of qualified immunity. Because the complaint fails to allege facts to support an inference that Lieber's conduct violated Jones' constitutional rights, Lieber's motion to dismiss will be granted.

BACKGROUND

In late October 2005, Jones was taken into custody awaiting his trial on federal drug charges for conspiracy to distribute and possess five kilograms or more of cocaine and fifty

---

[1] Jones' complaint also names as a defendant Norma Horne, a detective with the Metropolitan Police Department in Washington, D.C., and then-acting Warden of the District of Columbia's Dennis Harrison  Horne and Harrison each filed a motion to dismiss. Horne's motion was granted and she was dismissed as a party by Order dated January 3, 2008. Harrison's motion is pending, and will be considered in a separate memorandum opinion.

grams or more of cocaine base.[2] The complaint alleges that in November that year, Lieber, one of the federal prosecutors on the case, "telephoned the DCDC Jail and verbally told the [Jail] Administration to remove me [Jones] from general population and place me in segregation under Total Separation (T.S.) Status. The prosecutors also demanded that I not be allowed social visits, telephone calls and that my mail be withheld from me." (Compl. at 6.)[3]

The complaint alleges that Jones' First, Eighth, and Fourteenth Amendment protections were violated, in addition to his substantive rights as a pretrial detainee and his right of access to his lawyer and the courts. (*Id.*) The complaint offers factual details of the conditions of confinement that Jones alleges to be violations of his constitutional rights. (*Id.* at 6-12.) For example, Jones describes disgusting and potentially harmful physical conditions in his cell in the segregated housing unit (*id.* at 9-10), alleges that he was denied access to a Bible and other religious reading materials (*id.* at 8), and alleges that he was denied permission on one occasion to place a telephone call to his court-appointed lawyer (*id.* at 7). However, nothing in the complaint alleges or even suggests that Lieber dictated or requested the imposition of these specific conditions or deprivations. Rather, the extent of the allegations against Lieber are that she made the request to restrict his social visits, his telephone privileges, his mail, and his contact with other inmates.

Stating that he has "not been provided any documentation to state why I am being subjected to mistreatment," (*id.* at 6), Jones asserts that he was placed in T.S. status "under false

---

[2] Jones has since been convicted and sentenced to life in prison for his cocaine trafficking. His appeal from that conviction and sentence is pending.

[3] The page numbers cited refer to the ECF page numbering system, not the numbers on the hard copy of the documents, because the latter are not unique identifiers.

2

pretense" (*id.* at 12). The complaint, however, offers no facts to support this bald inference, or to connect it with Lieber. The complaint reflects an operating premise that the change in his confinement status was illegal if it were not authorized by a court order. "Ms. Rachel Lieber . . . [acted] without the court order from the judge." (*Id.* at 5). "On March 17, 2006, in open court, the judge stated that she never signed any order to place me . . . under . . . T.S. Status. Therefore, the Prosecutor(s) acted outside their realm of jurisdiction in instructing the DCDC Jail Administration to place me in the T.S. Status . . . . without a properly signed court order from the judge." (*Id.* at 12.) This theme is repeated in the Jones' opposition to Lieber's motion to dismiss, as well. "The facts and the point, with these chains of events, [is that] Rachel Lieber took it upon herself, without the authority of the courts to send a memorandum on November 23, 2005 for [plaintiff] to be placed in total separation from the inmate population and separation from his co-defendants." (Pl.'s Response to Federal Defendant's Mem. in Supp. of Mot. to Dismiss Pl.'s Compl. ("Pl.'s Reponse") at 2.)

## DISCUSSION

A court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering a Rule 12(b)(6) motion to dismiss assumes all factual allegations to be true, even if they are doubtful. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged"). A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must [a] court accept legal conclusions

cast in the form of factual allegations." *Kowal,* 16 F.3d at 1276. In deciding a 12(b)(6) motion, a court is limited to considering "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted). A court may take judicial notice of public records from other proceedings. *Covad Communications Co. v. Bell Atlantic Corp.,* 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts in public records of other proceedings).

Here, Jones sues under 42 U.S.C. § 1983. That statute provides a right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, . . . ." 42 U.S.C. § 1983. By its own terms, § 1983 does not apply to officials acting under color of federal law, that is, it does not apply to a federal prosecutor acting within the scope of her duties. However, the United States Supreme Court has recognized an equivalent right of action for money damages against persons acting under color of federal law. *See Bivens v. Six Unknown Agents of the Federal Bureau of Investigation,* 403 U.S. 388 (1971). Because a *pro se* complaint is entitled to a liberal construction, *Haines v. Kerner,* 404 U.S. 519 (1972), this complaint will be construed as one brought under *Bivens* with respect to Lieber.

Government officials performing discretionary functions, that is, exercising their judgment in carrying out their official duties, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

4

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is a presumption that qualified immunity "is sufficient to protect government officials in the exercise of their duties," *Burns v. Reed*, 500 U.S. 478, 486-87 (1991), and qualified immunity "represents the norm" for executive officials in general. *Harlow*, 547 U.S. at 807. A prosecutor enjoys qualified immunity for a wide range of acts she might perform in the course of her duties, including administrative and investigatory functions.[4] Such acts include giving legal advice to law enforcement officials, *Burns*, 500 U.S. at 496, making statements to the press, *Buckley v. Fitzsimmons*, 509 U.S. at 278, preparation of search and arrest warrants, participation in searches, *McSurely*, 697 F.2d at 319-20, and other functions related to the investigative function such as questioning witnesses, collecting evidence, and unauthorized disclosure of grand jury testimony, *Moore v. Valder*, 65 F.3d 189, 214-15 (D.C. Cir. 1995).

The very purpose of qualified immunity is to "shield [public officials] from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806. In particular, qualified immunity is designed to dispose of "insubstantial lawsuits" on a motion to dismiss, before the point at which the defendant is required to engage in substantial litigation. *Id.* at 808. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from

---

[4] For some activities, those that might be describes as "quasi-judicial,"prosecutors enjoy ever greater immunity. *McSurely v. McClellan*, 697 F.2d 309, 318 (D.C. Cir. 1982). Absolute immunity extends to initiating a prosecution and presenting the state's case, including a prosecutor's presentation to a judge in a probable cause hearing, all duties that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 270-71 (1993) (discussing the line that divides activities of a prosecutor that are entitled to absolute immunity from those entitled to qualified immunity). Absolute immunity does not, however, extend to administrative or investigative functions a prosecutor might perform, or to giving legal advice to law enforcement officials. *Burns*, 500 U.S. at 483 n.2, 496; *McSurely*, 697 F.2d at 318.

suit rather than a mere defense to liability; and . . . is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (*per curiam*).

By definition, qualified immunity is not absolute. However, "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Sherer,* 468 U.S. 183, 197 (1984). In short, a "court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show [that] the [defendant's] conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If the question is answered in the negative, no further analysis is necessary. *Id.* at 207. The issue of qualified immunity is reached only if the facts alleged show a constitutional violation. *Id.* at 201, 207.

As a pretrial detainee, Jones had a substantive due process right against restrictions that amount to punishment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *U.S. v. Salerno,* 481 U.S. 739, 746 (1987). However, conditions of confinement that are imposed for and reasonably related to a legitimate government interest do not amount to punishment. *Id.* at 538-39. Furthermore, conditions of confinement for pretrial detainees are not limited to those "that are, strictly speaking, necessary to ensure that the detainee shows up at trial." *Id.* at 540. Rather, "prison officials are entitled to impose upon a detainee whatever restrictions or disabilities are reasonably necessary to ensure the internal security of the institution." *Brogsdale v. Barry,* 926 F.2d 1184,

1190 (D.C. Cir. 1991). Indeed, "prison officials have a corresponding duty to exercise reasonable care to prevent prisoners from intentionally inflicting harm or creating unreasonable risks of harm to other prisoners." *Id.* at 1190 n. 7 (internal quotation marks, emphasis in the original and citations omitted).

Here, the complaint alleges no factual allegations supporting a reasonable inference that Lieber acted to punish the plaintiff or for any other illegitimate reason. Rather, the complaint asserts that Jones had not been provided with an explanation for the change in his conditions of confinement at the time of filing this complaint on June 8, 2007. (Compl. at 6.) The Court takes judicial notice of the fact that the alleged absence of an explanation for Jones' segregated housing and other restrictions cannot be reconciled with the facts in other public proceedings before this Court. The reasons for the government actions taken were disclosed to Jones in public filings and hearings conducted in connection with Jones' criminal trial in March and April 2007, just a few weeks before he filed this lawsuit. (*See* Gov't's Response to Jones' Mot. for Modification of Conditions of Detention [Dkt. 85] and Gov't's Suppl. Filing Concerning Conditions of Confinement [Dkt. 93] in Criminal Action No. 05-386 in the United States Court for the District of Columbia). Those public disclosures establish that on the basis of information from confidential sources subsequently supported by intercepted telephone calls made by Jones and mail intended for Jones, the federal prosecutors in Jones' criminal case concluded that he was attempting to continue to operate his illegal drug operation from jail, and that he may have been attempting to identify and locate persons cooperating with government officials in his prosecution, one of whom was housed in the same detention facility with Jones. Based on a concern that Jones may have been attempting to tamper with or harm material witnesses, the

prosecutors made a request to the jail authorities that Jones' be restricted in his ability to contact and communicate with individuals other than his counsel. (*See generally, id.*) The representations in the public filings in the criminal matter are consistent with the memoranda from November and December 2005, written by the prosecutors involved, which Jones attached to his opposition to Lieber's motion to dismiss. (*See* Pl.'s Response, Attachment at 1-4.) Here then, the complaint alleges no facts to support a reasonable inference that Lieber acted for punitive or otherwise illegitimate reasons. Thus, the complaint fails to state a claim against Lieber for violation of Jones' substantive due process rights as a pretrial detainee.

The remaining factual allegations in the complaint relate directly to Jones' living conditions in the segregated housing unit, such as a lack of sanitation, cold temperatures, denial of religious reading materials, and denial of access to counsel and the Court. The complaint contains no factual allegations sufficient to support a reasonable inference that Lieber requested these specific conditions or was responsible for them. Rather, as to Lieber, the complaint alleges only that, without obtaining a court order, she made a request that Jones be removed from the general population, placed in total separation status, and not be allowed social visits, telephone calls, or mail. (Compl. at 6.) Thus, as to Lieber, the complaint states no violations of Jones First, Sixth, or Eighth Amendments.

## CONCLUSION AND ORDER

Because the complaint does not allege factual allegations sufficient to state a constitutional violation against defendant Lieber, it is this 30th day of September, 2008 hereby

ORDERED that defendant Lieber's motion to dismiss is GRANTED, and defendant Lieber is dismissed as a party to this action.

9/30/08

_____
RICHARD J. LEON
United States District Judge