UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTOINE JONES, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 07-1027 (RJL) |
| RACHEL LIEBER, *et al.*, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Antoine Jones filed this *pro se* complaint under 42 U.S.C. § 1983 against Dennis Harrison, then the Acting Warden of the District of Columbia's Central Detention Facility ("D.C. Jail"), and others,[1] alleging violations of plaintiff's rights under the First, Eighth, and Fourteenth Amendments. Harrison has filed a motion to dismiss the complaint on multiple grounds, including a failure to state a claim upon which relief may be granted. The plaintiff has filed an opposition. Because the complaint fails to state a claim against Harrison, the claims against him will be dismissed and the complaint will be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## BACKGROUND

In late October 2005, Jones was taken into custody awaiting his trial along with several codefendants on federal charges of cocaine trafficking.[2] In November, and again in December,

---

[1] Jones' claims against other defendants named in this action have already been dismissed. *See* Order, Jan. 3, 2008 (dismissing claims against defendant Norma Horne), Mem. Op. & Order, Sept. 30, 2008 (dismissing claims against defendant Rachel Lieber).

[2] Jones has since been convicted by a jury and, on May 2, 2008, sentenced to life in prison for his cocaine trafficking. *See* Criminal Case No. 05-386 (ESH) (D.D.C.). His appeal from that conviction and sentence is pending. *See* Case No. 08-3034 (D.C. Cir.).

that year, the United States Attorney's Office, concerned about Jones engaging in improper communications with cooperating witnesses and/or unindicted codefendants, requested that Jones be segregated from the general population and that his telephone, mail, and social contacts be restricted. (*See* Compl., Appendix at 3,[3] Mem. from Assistant United States Attorney to Warden, District of Columbia Jail, Dec. 22, 2005.) The complaint alleges that

> Mr. Dennis Harrison was the Acting Warden at the time when the D.C. Jail Administration place[d] me in S-1 [a segregated housing unit in the jail]. D.C. Jail Administration [increased] my security level from a minimum to maximum security, and subjected me to segregation without a proper hearing, and denied me re-entry into the prison population without a court order from the judge.

(Compl. at 5.) The complaint appends a memorandum, dated March 1, 2006, from Harrison to the plaintiff, which, in its entirety, states:

> In response to your grievance the Housing Board conducted a housing hearing on December 15, 2005 to determine your housing status. Per the U.S. Attorney's Office request you are to be placed on Total Separation from the general population, also phone restriction and mail privileges. Therefore, you were placed on status total separation, which was explained during your initial review and the unit case manager conducted all follow-up reviews. Your case was shared with chief unit case manager, Ms. Leona Bennett for further resolution. Therefore, this matter is considered resolved.

(Compl., Appendix at 36.) In his opposition, the plaintiff further articulates his claim against Harrison.

> Jones' complaints were neglected and Mr. Harrison and his administration displayed unprofessional conduct in this matter. Mr. Harrison should have recognized the communication from [Assistant United States Attorney] Rachel Lieber to put Mr. Jones in Total Separation was not a court order.

\* \* \* \*

---

[3] The page numbers cited refer to the page numbers assigned by the Clerk's ECF system, not the numbers on the hard copy of the documents, because the latter are either missing or not unique.

> Based on the statements made in this memorandum signed by Acting Warden Harrison, Jones claims that the Acting Warden was therefore responsible for his action, his decision and the actions of the unit case manager, chief unit case manager, and his administration. . . . Acting Warden Harrison, Department of Corrections, District of Columbia Government, . . . are responsible for professional misconduct, foul play and lack of professionalism.

(Opp'n at 3-4.)

The complaint further alleges that plaintiff's First, Eighth, and Fourteenth Amendment protections were violated as a result of his placement in S-1. (Compl. at 6.) The complaint offers factual details of the conditions of confinement that Jones alleges to be violations of his constitutional rights. (*Id.* at 6-12.) For example, it describes disgusting and potentially harmful physical conditions in his cell in the segregated housing unit (*id.* at 9-10), alleges that Jones was denied access to a Bible and other religious reading materials (*id.* at 8), and alleges that one occasion Jones was denied permission to place a telephone call to his court-appointed lawyer (*id.* at 7).

## DISCUSSION

A court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering a Rule 12(b)(6) motion to dismiss assumes all factual allegations to be true, even if they are doubtful. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged"). A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must [a] court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276. In deciding a 12(b)(6) motion, a

court is limited to considering "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted). A court may take judicial notice of public records from other proceedings. *Covad Commc'ns Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts in public records of other proceedings).

To state a claim under 42 U.S.C. § 1983, a complaint must allege facts sufficient to show that (1) a person (2) acting under color of state, territorial, or District of Columbia law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985). A municipal corporation is a "person" for purposes of § 1983 liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The third requirement — that the person must be alleged to have *caused* the plaintiff's deprivation of rights — means that § 1983 liability cannot rest on *respondeat superior* theory, whether the person sued is a municipality, *Monell*, 436 U.S. at 691, or is a person sued in his personal capacity, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right"). *See also Arnold v. Moore*, 890 F. Supp. 28, 35-36 (D.D.C. 1997) ("High level public officials are not employers of their subordinates, but rather are fellow governmental servants and thus cannot be held liable on the basis of *respondeat superior*."); *Price v. Kelly*, 847 F. Supp. 163, 169 (D.D.C. 1994) (stating that a *respondeat superior* theory of liability against a defendant sued in his personal capacity is "not a sufficient basis for a valid [§ 1983] claim"); *Nowlin v.*

*Director, Dist. of Columbia Dep't of Corr.*, 689 F. Supp. 26, 27 (D.D.C. 1988) (stating that personal-capacity liability under § 1983 can be premised only on a "showing of direct responsibility for the improper action").

The complaint does not explicitly state that the suit is brought against Harrison in his official capacity. The complaint repeatedly refers to "the Jail Administration" as an actor (*see* Compl. at 5, 6, 9, 11, and 12), but does not name the D.C. Jail, the D.C. Department of Corrections (neither of which is *sui juris*) or the District of Columbia as a defendant. The plaintiff's opposition suggests that Harrison is sued in his official capacity, as supervisor of "his administration" and the case managers. (Opp'n at 3.) If Harrison is sued in his official capacity, then the suit is one against the governmental entity that stands behind Harrison, the District of Columbia, a municipal corporation. *Graham*, 473 U.S. at 165-66. In a § 1983 suit against a municipality, liability attaches "only when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (internal quotation marks and citation omitted). The policy or custom itself must be the moving force behind the constitutional violation. *Id.* Here, the complaint does not allege that any District of Columbia custom or policy caused the alleged violations of plaintiff's rights. Therefore, the complaint fails to state a claim upon which relief may be granted under § 1983 against Harrison in his official capacity, that is, against the District of Columbia.

Although Harrison is individually named as a defendant (*see* Compl. at 3, 4, and 5), the complaint does not explicitly state that Harrison is sued in his personal capacity. To state a claim against a person in his personal capacity, the complaint must allege conduct caused by the defendant that deprived the plaintiff of a constitutional protection. The complaint does not allege

any conduct by Harrison except his authorship of the March 1, 2006 memorandum in response to plaintiff's grievance. That memorandum does not constitute evidence that Harrison personally encroached on any of the plaintiff's federal rights. The implication that Harrison violated plaintiff's federal rights because he "should have recognized the communication from [the Assistant United States Attorney] to put Mr. Jones in Total Separation was not a court order" (Opp'n at 3), is baseless. Even pretrial detainees are subject to conditions of confinement that are imposed in furtherance of, and are reasonably related to, a legitimate government interest. *See Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979). There is no rule that such measures require a court order. To the contrary, it is clear that prison officials are not only entitled to, but are sometimes required to, impose upon a pretrial detainee whatever restrictions or disabilities are reasonably necessary to ensure the internal security of the institution, and to prevent prisoners from intentionally inflicting harm or creating unreasonable risks of harm to others. *Brogsdale v. Barry*, 926 F.2d 1184, 1190 & n.7 (D.C. Cir. 1991).

The complaint is devoid of any other allegations of conduct by Harrison. For example, the complaint states that "[o]n February 23, 2006, I attempted to call my attorney but I was put out of the Unit Office and denied the right to a legal phone call by Case Manager Reece. This incident was witnessed by C.O. Root . . . ."[4] (Compl. at 7.) Putting aside for the moment that the conduct alleged does not, without much more, approach a violation of plaintiff's First Amendment right of access to the courts, the complaint does not allege that Harrison was involved in this incident or caused the result. Similarly, the complaint alleges that the plaintiff was denied his "right" to "attend bible [sic] study, to attend worship services in the Chapel,

---

[4] Throughout this time period, plaintiff was represented by a court-appointed defense attorney in his criminal case.

access to a bible [sic] or religious reading materials, communication and inspiration from a Chaplain, minister from the community as well as contact with any religious service personnel." (*Id.* at 8.) Again, there is nothing that indicates that these decisions were made by Harrison or directed by Harrison. The complaint identifies by name more than a dozen individuals who provided no satisfaction to plaintiff in his demands for what he believed was his due process in connection with being placed in administrative segregation, but Harrison is not among them. (*See id.* at 7 (identifying 13 persons).) Harrison is also not mentioned in connection with the conditions of confinement in S-1 that plaintiff alleges violated his constitutional rights. (*See id.* at 8-11.) Without reaching the question of whether the conduct alleged is actionable under § 1983, Harrison cannot be held liable under § 1983 for the conduct of others, and therefore the complaint fails to state a claim against him in his personal capacity for actions taken by others.

## CONCLUSION

Because the complaint does not allege factual allegations sufficient to state a claim under § 1983 for constitutional violations against defendant Harrison either in his official or personal capacity, Harrison's motion to dismiss will be granted and the claims against Harrison will be dismissed. Because no claims remain in this case, the complaint will be dismissed. A separate order accompanies this memorandum opinion.

Date: 3/27/09

RICHARD J. LEON
United States District Judge

7